

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| OLEG CASSINI, INC., <br><br> Plaintiff, <br><br> -vs- <br><br> ELECTROLUX HOME PRODUCTS, INC., <br><br> Defendant. | Civil Action No. <br><br> **COMPLAINT AND JURY DEMAND** <br><br> (ECF Case) |

Plaintiff Oleg Cassini, Inc. ("OCI" or "Plaintiff"), by and through its attorneys of record, and for its cause of action against Defendant Electrolux Home Products, Inc. ("Electrolux", "Defendant" or the "Company") by way of Complaint, alleges, and states as follows:

**PARTIES**

1. At all times relevant hereto, OCI, was, and is, a corporation organized, existing and operating under the laws of the State of New York, with its principal place of operation in the State of New York.

2. OCI has offices located at 1370 Broadway in the City of New York, State of New York.

3. At all times relevant hereto, Defendant was, and is, a corporation organized, existing and operating under the laws of the State of Delaware, with its principal place of operation in the State of Ohio.

4. Defendant is, upon information and belief, in the business of designing, manufacturing, assembling, selling, distributing and/or otherwise placing into the stream of commerce household appliances and appliances for professional use, including their components

and parts, selling more than 40 million products to customers in more than 150 markets every year, under a variety of brand names, including, but not limited to, "Frigidaire".

5. Defendant sells and advertises its products throughout the United States including New York.

6. At all times relevant hereto, OCI was, and is, the owner of a property consisting of over forty (40) acres on Long Island's North Shore with several large buildings including the main house, carriage house, large garage and office complex, several barns and accessory buildings as well as other buildings located at 313 McCouns Lane, Oyster Bay Cove, New York 11771 (the "Premises") and certain property contained therein, including, but not limited to, cabinetry, furniture, appliances, fine and unique artwork, one-of-a-kind historical sketches, original artwork, artifacts, fixtures, irreplaceable memorabilia, items on the Premises and other improvements (collectively the "Property").

7. The main house building (where the damages resulting from the fire described below occurred), was built circa 1901 by one of the founding families of Tiffany's, and contains many unique architectural details and craftsmanship. The construction of the main house building is brick, stone, cement, wire lath plaster; an extremely fire resistant type of construction. A true photograph of the main house building is attached hereto as Exhibit A.

## JURISDICTION AND VENUE

8. The court has jurisdiction over the parties to this action.

9. The court has jurisdiction over the subject matter of this action pursuant to the provisions of 28 U.S.C. § 1332 in that this action is between citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

10. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

11. In or about 2004 OCI purchased a Frigidaire Gallery Supreme Series GSEQ642AS under-the-counter dryer (the "Product") that was designed, manufactured, assembled, sold, distributed and/or otherwise placed into the stream of commerce by Defendant.

12. At the time the Product was designed, manufactured, assembled, sold, distributed and/or otherwise placed into the stream of commerce by Electrolux, the Product was in a defective condition, which defect rendered it unreasonably dangerous to persons and property.

13. The unreasonably dangerous and defective condition(s) of the Product and/or its components existed at the time it left the hands of Electrolux.

14. At all relevant times, up to and including August 3, 2008 the Product was used by Plaintiff for the purpose and in the manner for which it was designed and intended.

15. On or about Sunday, August 3, 2008, a fire ignited inside the Product causing substantial damage and destruction to the Premises.

16. The fire was caused by the dangerous and defective Product and/or its components.

17. At the time of the fire, the Product and/or its components had not been substantially altered from the condition they were in at the time they left the hands of Electrolux.

18. The fire resulted in substantial and significant damage to several rooms of the main house which included smoke and water damage along with the destruction of irreplaceable and important Property.

19. Damages were also incurred during the course of fighting the fire.

20. Immediately upon learning of the fire caused by the defective Product, OCI contacted Electrolux and informed it of the substantial and significant damages sustained as a direct result of the defective Product.

21. Electrolux repeatedly acknowledged its negligence and advised OCI that it would reimburse OCI for all damages sustained.

22. Despite Electrolux's repeated promises to reimburse OCI for the damages sustained, Electrolux failed to do so.

23. As a direct and proximate result of the Defendant's dangerous and defective Product and/or its components, the subject fire occurred and caused substantial damage to the Property and Premises of OCI.

## COUNT I
### *(Strict Liability)*

24. Plaintiff repeats the Facts Common to All Counts as if set forth more fully herein.

25. The subject fire and resulting damage to the Property and Premises were directly and proximately caused by the improperly, defectively and unreasonably dangerous design and/or manufacture of the Product and/or its components, which were distributed and sold by Electrolux, and which created a severely dangerous condition in that the Product and/or its components posed an unreasonable risk of harm to persons and the OCI Property.

26. Electrolux failed to timely and adequately warn OCI of the dangers associated with, and inherent in, the Product.

27. Plaintiff had purchased the same model under-the-counter Frigidaire dryer that resulted in a fire at the main house on the Premises in or about 2004.

28. The dryer involved in the 2004 fire was approximately one year old.

29. Electrolux adjusted the claim arising from the 2004 fire and paid Plaintiff for the damages in connection therewith. The fire in 2004 was less devastating than the August 2008 fire.

30. Plaintiff was assured that the defect was corrected and that Plaintiff could safely repurchase another under-the-counter Frigidaire of the same model so as to fit in the same space.

31. Based upon these representations, and in reliance therewith, Plaintiff repurchased the same Frigidaire under-the-counter model to its detriment.

32. This same model resulted in the within fire on or about Sunday, August 3, 2008.

33. Defendant falsely represented that all defects with this model had been corrected.

34. Defendant knew that said representations and omissions were false and misleading at the time they were made and/or concealed.

35. Plaintiff relied on the false and misleading representations and omissions made by the Defendant to its detriment.

36. Unbeknownst to the Plaintiff, Defendant was aware of several fires associated with this under-the-counter model dryer.

37. Defendant was conducting studies in foreign countries to determine the source of the dryer fires yet intentionally concealed this information from the purchasing public including OCI.

38. Defendant negligently and/or intentionally failed to warn the Plaintiff or to recall this model dryer notwithstanding the known inherent risk to life and property.

39. The Company has previously acknowledged that there were prior problems with this particular model of dryer and that there was an inherent risk of fire associated with such Product, yet it continued to market the product as safe.

40. As a direct and proximate result of the Defendant's actions, the dangerous and defective Product and/or its components caused a fire which resulted in substantial and irreplaceable damage to the main house on the Premises and the Property.

41. The Defendant acted recklessly and with wanton disregard for persons violated through affirmative material misrepresentations and omissions regarding the Product, including but not limited to the following:

    (a)    At the time the Product was designed, manufactured, distributed, placed in the stream of commerce and sold by Electrolux, the Product was in a defective condition which rendered it unreasonably dangerous to persons and property. Electrolux knowingly concealed said information from the Plaintiff.

    (b)    Defendant was aware of several fires associated with and/or caused by the Product and Defendant knowingly concealed said information from the Plaintiff.

    (c)    Defendant affirmatively represented to the Plaintiff that the Product was safe and fit for its intended use when it knew that it was unreasonably dangerous and not fit for its intended use.

    (d)    Failed to have proper thermostat controls such that it failed to shut off when the unit overheated.

42. As a result of Electrolux's failure to warn and/or the dangerously, improperly and defectively designed and/or manufactured Product and/or its components, which were designed, manufactured, distributed, sold or otherwise placed into the stream of commerce by Electrolux, Defendant is strictly liable to OCI under the applicable statutory and common laws.

43. The Company demonstrated a complete and utter lack of indifference to the severe risk of harm that its defective Product posed to its consumers.

44. Defendant knowingly put a dangerous and defective product into the stream of commerce.

45. The activities associated with Electrolux's placement of the defective product into the stream of commerce given its knowledge of its inherent problems and defects constitutes egregious, outrageous and reprehensible conduct.

46. The public as well as the Plaintiff has been harmed and placed at risk due to this reckless conduct.

47. A public wrong would be vindicated by the award of punitive damages against Defendant.

48. OCI has incurred significant costs, expenses and losses as a consequence of Defendant's egregious and unlawful conduct.

**WHEREFORE**, Plaintiff, OCI, demands judgment against Defendant Electrolux for damages and punitive damages, together with pre-judgment and post-judgment interest, attorney's fees, the costs of suit, and such other relief as this Court may order and deem just and equitable.

### COUNT II
### (Negligence)

49. Plaintiff repeats the Facts Common to All Counts and the allegations contained in the First Count as if set forth more fully herein.

50. Electrolux owed OCI a duty to provide it with a Product and/or that its components that were safe and that such Product would not cause harm to it or its Property, and to timely and adequately warn OCI of the existence of any dangers associated with the Product.

51. Electrolux breached its duty to OCI by providing it with an unreasonably dangerous and defective Product and/or its components, and by failing to timely and adequately warn OCI of the existence of any dangers associated with the Product, which caused damage to its Property.

52. The fire and resulting damage and destruction to the OCI Property was directly and proximately caused by the negligence, recklessness, carelessness and/or negligent acts and/or omissions of Electrolux, its agents, servants and/or employees, in failing to warn of the Product's dangers and/or its failure to properly design, manufacture, distribute, sell, install, inspect, maintain and/or test the Product and/or its components, prior to placing same into the stream of commerce for purchase.

53. As a direct and proximate result of the foregoing negligent acts and/or omissions, the Product and/or its components was dangerously defective and caused the subject fire and resulting damage to OCI.

**WHEREFORE**, Plaintiff, OCI, demands judgment against Defendant Electrolux for damages, together with pre-judgment and post-judgment interest, attorney's fees, the costs of suit, and such other relief as this Court may order and deem just and equitable.

## COUNT III
### *(Breach of Express and/or Implied Warranty)*

54. Plaintiff repeats the Facts Common to All Counts and the allegations contained in the First and Second Counts as if set forth more fully herein.

55. At all times relevant hereto, Defendant Electrolux impliedly and expressly warranted that the Product and/or its components were of good and merchantable quality, fit for their particular purpose and free from defects.

56. At all times relevant hereto, Defendant Electrolux dangerously, improperly and/or defectively designed and/or manufactured the Product and/or its components, which created a dangerous condition that exposed OCI and its Property to an unreasonable risk of harm.

57. Defendant was fully aware of the dangers associated with this model but nevertheless elected not to warn the Plaintiff of the dangers associated with this Product.

58.     Defendant took no action to recall this Product despite having knowledge of numerous claims of fire resulting therefrom.

59.     The first Electrolux/Frigidaire authorized person, (Above All Appliance Repair), who appeared on behalf of the Defendant shortly after the fire occurred in order to inspect the defective Product noted that Plaintiff had sustained "the worst dryer fire" he had seen in his forty-five (45) years in the business; that the dryer was properly installed and vented; and that the dryer was burned beyond anything he had ever seen. A true photograph of the burnt out dryer is attached hereto as Exhibit B.

60.     As a result of its actions, Electrolux has breached its express and implied warranties described herein, including, but not limited to, its warranties of merchantability and fitness for a particular purpose.

61.     As a direct and proximate result of Defendant Electrolux's breach of the expressed and implied warranties described herein, OCI has suffered damages.

**WHEREFORE**, Plaintiff, OCI, demands judgment against Defendant Electrolux for damages, together with pre-judgment and post-judgment interest, attorney's fees, the costs of suit, and such other relief as this Court may order and deem just and equitable.

### COUNT IV
*(Violation of the New York Consumer Protection From Deceptive Acts and Practices Statute)*

62.     Plaintiff repeats the Facts Common to All Counts and the allegations contained in the First, Second, Third and Fourth Counts as if set forth more fully herein.

63.     The Defendant violated the New York Consumer Protection From Deceptive Practices Statute, <u>New York General Business Law</u> §349 (the "Statute") in its dealings with the

Plaintiff and the consuming public through affirmative material misrepresentations and omissions regarding the Product, including but not limited to the following:

    a.    At the time the Product was designed, manufactured, distributed, placed in the stream of commerce and sold by Electrolux, the Product was in a defective condition which rendered it unreasonably dangerous to persons and property. Electrolux knowingly concealed said information from the Plaintiff and consumers.

    b.    Defendant was aware of several fires associated with and/or caused by the Product and Defendant knowingly concealed said information from the Plaintiff and consumers.

    c.    Defendant affirmatively represented to the Plaintiff that the Product was safe and fit for its intended use when it knew that it was unreasonably dangerous and not fit for its intended use.

64. Defendant knew that said representations and omissions were false and misleading at the time they were made and/or concealed.

65. The misrepresentations and omissions of the Defendant were deceptive and directed at the Plaintiff, a consumer.

66. The misrepresentations and omissions of the Defendant were materially misleading to Plaintiff and other consumers.

67. As a result of the above deceptive acts and omissions on the part of the Defendant, Electrolux has violated the Statute.

**WHEREFORE**, Plaintiff demands judgment against Electrolux for damages, along with treble damages and attorneys' fees pursuant to the Statute, together with pre-judgment and post-judgment interest, costs of suit and such other relief as this Court may order just and equitable.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by a jury.

Dated: New York, New York
       February 22, 2011

REPPERT KELLY, LLC

By: _____
Christopher P. Kelly, Esq. (CK-0195)
J. Vincent Reppert, Esq. (JR-1984)
120 Mountain View Boulevard
Post Office Box 509
Basking Ridge, New Jersey 07920
(908) 605-2120
ckelly@reppertkelly.com
jvreppert@reppertkelly.com

570 Lexington Ave., 8th Floor
New York, New York 10022
(212) 490-0988

Co-Counsel for Plaintiff
Sean T. Burns, Esq.
CARROLL, MCNULTY & KULL, LLC
570 Lexington Ave., 8th Floor
New York, New York 10022
(646) 625-4000
sburns@cmk.com