**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLEG CASSINI, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ELECTROLUX HOME PRODUCTS, INC. d/b/a FRIGIDAIRE,<br><br>Defendant. | Civil Action No. 11-1237(AJN)(JCF)<br><br>**REPLY DECLARATION OF COUNSEL IN FURTHER SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY** |

NICHOLAS A. VYTELL, ESQ., pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.     I am an attorney at law, associated with the law firm of Carroll, McNulty & Kull LLC, and counsel for Plaintiff, Oleg Cassini, Inc. ("Plaintiff"), in the above-captioned action. As such, I have personal knowledge of the facts and matters set forth herein.  I submit this declaration in response to Defendant, Electrolux Home Products, Inc.'s ("Electrolux" or "Defendant") opposition and in further support of Plaintiff's motion to compel essential discovery.

2.     It is patently clear that Defendant has failed to produce basic discovery in this action and that it will only produce complete and accurate responses when compelled by this Court.  Instead, Defendant has attempted to avoid its discovery obligations at every turn. Defendant has entirely ignored its obligations under Local Civ. R. 26.4(b), which mandates that "[d]iscovery requests shall be read reasonably and in recognition that the attorney serving them generally does not have the information being sought and the attorney receiving them generally does have such information or can obtain it from the client."  Defendant has further refused to

1

engage in the cooperative effort required by the Federal and Local Rules of Civil Procedure to define a reasonable scope to the discovery demands it deems as overly-broad or objectionable.

3.      Instead, Defendant has provided incomplete and evasive discovery responses and has engaged in bad-faith legal maneuvering in an attempt to prevent the production of relevant discovery and in an effort to frustrate Plaintiff's ability to prosecute its claims.  In fact, only in response to this motion has Defendant produced its Initial Rule 26 Disclosures and certain photographs (although incomplete) that should have, and could have, been produced long ago.

4.      In an apparent attempt to countenance its improper conduct, Defendant now incredibly argues that Plaintiff is at fault.  First, Defendant incredulously contends that its discovery responses are somehow "deemed acceptable" on the basis that Plaintiff did not file this motion earlier and, instead, attempted to engage in a good-faith effort to resolve the disputed discovery demands.  Defendant's contention that Plaintiff demanded more complete discovery responses only after Defendant made "numerous requests" for Plaintiff's deposition is false. Defendant first served its discovery demands on May 16, 2012, shortly after the parties failed to reach a settlement at private mediation.   Defendant's initial discovery demands included a deposition notice with a tentative date for June 27, 2012.  The initial conference in this matter was not conducted until June 5, 2012, at which time fact discovery was scheduled to end on November 30, 2012.  Without any objection by Defendant, Plaintiff produced its responses to written discovery on August 1, 2012, long before the scheduled fact discovery deadline, as such the original date noticed for Plaintiff's deposition was adjourned by Defendant.  It was not until October 15, 2012, that Defendant again raised the issue of deposition dates, long after we provided Defendant with a detailed letter outlining the deficiencies in its discovery responses and demanding supplemental responses (See Doc. 21-1).  Accordingly, Defendant's insinuation that

the within motion is somehow retaliatory or for purposes of delay is inaccurate and intentionally misleading. Rather, it is Defendant which has acted in bad-faith by stalling its production of essential discovery.

5.      Similarly, Defendant's contention that its failure to provide discovery in this action is acceptable because it has been forced to "endure" two litigations is equally misleading and, in any event, irrelevant. There was a prior action between the parties venued in the Eastern District of New York. While neither the undersigned nor Defendant's present counsel were involved in that action, it is correct that the Court denied a **joint** request to extend discovery. Notably, Defendant has not previously raised this issue or sought to dismiss the present action on that basis. There is good reason: the prior action was jointly withdrawn by both sides because neither party was in a position to move forward with trial. Defendant had not performed a damages evaluation or taken any depositions. Plaintiff had not completed expert discovery or obtained documents related to the issue of liability because Defendant's counsel had represented that liability was not being disputed, until the eve of trial when it reversed its position.

6.      Defendant has articulated absolutely no reason why the prior action would relieve it of its discovery obligations in this case. If there were a good-faith basis to object to this action, surely Defendant would have raised it. Instead, Defendant has attempted to delay discovery in an effort to again bring this matter to the brink of trial without allowing Plaintiff access to necessary discovery. Notably, Defendant does not contest the facts set forth at paragraphs 9 through 16 of the Certification of Counsel in Support of Plaintiff's Motion to Compel Discovery (Doc. 21), in which the facts regarding Plaintiff's efforts to obtain the requested discovery in this action are detailed. It is simply inexplicable that, after numerous demands, Defendant would represent that it would cooperate in discovery on October 25, 2012, only to turn around within a

3

few weeks and take the position that no further discovery would be produced. Unfortunately, it is consistent with Defendant's conduct throughout this litigation.

7.     Finally, Defendant's contention that it is "unable to fashion appropriate responses" to Plaintiff's discovery demands without effectively being served with a copy of Plaintiff's expert report is nonsensical and inconsistent with this Court's Scheduling Order. In essence, Defendant is claiming that it cannot provide meaningful discovery responses unless Plaintiff has identified the particular part of the product that failed. This is not an appropriate objection at this point, as discovery is ongoing and expert reports have not been exchanged.

8.     Moreover, Plaintiff's discovery demands all pertain to information in Defendant's possession regarding other fires involving its dryers (e.g. studies conducted by Defendant, other claims, etc.). This discovery is particularly relevant to this action, where Plaintiff has sustained two (2) fires as a result of products manufactured by Defendant.     Defendant's objections regarding the scope of these demands and its requests for limitations ignore the multiple attempts by Plaintiff to discuss these objections (Doc. 21-1). As noted, Defendant utterly refused to engage in this collaborative process and should not now be heard to argue that it would be unfair to require a response.

9.     Based upon the foregoing, Defendant should be compelled to produce full and complete discovery responses as set forth in Plaintiff's moving papers and as set forth more fully below.

## DEFENDANT'S DEFICIENT DISCOVERY RESPONSES

**I.     Initial Rule 26 Disclosures**

10.     After numerous demands and over seven months after the initial conference, Defendant finally filed and served its Initial Disclosures (Doc. 24) in this action on January 14,

2013. As such, Defendant contends that this portion of Plaintiff's motion is "moot."

11.     Defendant's reluctance to provide this most basic discovery is telling.  Moreover, although the Defendant's Initial Disclosures have now been produced, it reveals numerous documents that have not been demanded and not produced in this litigation.    Specifically, Defendant identified, among others, the following documents that it may use to support its defense in this action: Photographs taken of fire scene after the fire; Photographs taken of firs scene artifacts after the fire; Photographs taken of items contained in fire damaged structure following fire; Documents maintained regarding the structure where the fire at issue occurred; All product literature, plans, drawings, specifications, invoices and sales documents relating to the subject product; *All documents evidencing compliance with applicable standards*; *All documents evidencing quality control for the subject product*; *Documents reflecting testing of the subject product and any exemplar products, relative to claims to be asserted by plaintiff*; and Photographs and diagrams of the subject product and its components as designed and manufactured. (*emphasis added*).

12.     As set forth below, these fall squarely within Plaintiff's document requests; nevertheless, it is clear that Defendant has not produced these documents in response to discovery.    Accordingly, Plaintiff respectfully requests that the Court Order Defendant to produce all documents referenced in its Initial Disclosures within seven (7) days.

**II.     Interrogatory Deficiencies**

13.     Interrogatory 3: **Identify all persons with knowledge of Defendant's sales, revenues and profits from the sale of all under the counter dryers from the year 2000 to the present.**   Defendant continues to object on the scope of the request and suggests that the response could include "every store manager selling Electrolux dryer".  Defendant's response is

indicative of its position throughout this litigation and, as noted, fails to account for the reasonable limitations that Plaintiff was willing to discuss, but which Defendant refused to engage. Defendant is well aware as to the types of under the counter dryer models which it manufactures and which are mechanically essentially the same as the models at issue in this action. Electrolux manufactures a large number of dryers under various labels including, but not limited to, Kenmore, Frigidaire, and several others. Plaintiff clearly is not in a position to identify those models that contain the same mechanical components, as this is information solely in the possession of Defendant. If Defendant were willing to engage in discovery as required, the request could be limited to those models. However, since Defendant has elected not to provide any meaningful response, it should be compelled to produce all of the requested information.

14.    Interrogatory 6:  **Identify all persons with knowledge of all studies commissioned abroad and in the United States regarding safety testing or causation of dryer fires originating from units manufactured by the defendant.** Again, Defendant objects to the scope of the demand without having made any effort to work with Plaintiff to define an appropriate scope for the response. It is hard to imagine that Defendant has conducted so many tests regarding dryer fires in its products such that it cannot identify the persons with such information. However, if dryer fires have been such a prevalent problem with Defendant's products, it seems to favor of a full response to this demand, rather than none at all. Defendant's objection that "studies" could have been conducted by third-parties "which Defendant is not aware of" is baseless. Clearly Defendant cannot be expected to disclose information of which it is not aware, and a common-sense reading of Plaintiff's discovery demands cannot be interpreted to require same. Moreover, Defendant's blanket claim to privilege or work-product protection

where, as here, (1) the demand seeks the identity of persons with knowledge; and (2) Defendant has failed to identify such persons or the basis for the claim of privilege.

15.    Interrogatory 7: **Identify any and all changes made to the under the counter dryer model style involved in the first fire from 2004 to 2009.** Defendant has finally provided a clear response to this request. Although it, like of Defendant's interrogatories, has not been properly certified.

16.    Interrogatory 8: **Identify any and all changes, if any, as to the under the counter dryer model involved in the second fire.** Plaintiff rejects Defendant's characterization of the manner in which the dryer was maintained. However, it should be of no surprise to Defendant that when one of its dryers malfunctions, burning down a good portion of Plaintiff's home and destroying many of Plaintiff's personal effects, it is likely be "barely recognizable" after being removed from the premises by the fire department. Nevertheless, Defendant's response is still ambiguous, it is not clear whether it continues to sell the same model.

17.    Interrogatory 9: **Identify all documents reflecting all safety testing performed on the under the counter model dryers at issue, i.e. including those involved in the first and second fire.** After refusing to provide any response, Defendant has now produced a single document purportedly from URL Laboratories. Defendant has failed, however, to produce any supporting documents from that testing. If there are additional documents related to that testing, Defendant must produce them. If there are issues of confidentiality or copyright protections, they can be addressed by a Confidentiality Order, but are not a basis for withholding relevant information.

Even with this most recent production, it is clear that Defendant's response is evasive and incomplete. Defendant's response does not have anything to do with their knowledge of dryer

fires and what type of safety testing was conducted on dryers it manufactures after they have been placed into the marketplace.

Defendant has further ignored Plaintiff's demand for documents related to the testing conducted by the Lulea University of Technology at Defendant's plant in Australia. Attached as **Exhibit A**, is a publicly available title sheet from the study, which notes that the dryers manufactured at Defendant's dryer plant in Adelaide, Australia had "some issues with fire incidents which initiated this project." It further notes that due to these fires, a Common Platform Dryer would replace the old models beginning in 2006 (after Plaintiff's first fire and the purchase of the dryer involved in the second fire). We believe that this study is directly relevant to dryers involved in this case and, in light of the fact that it was conducted at Defendant's plant, believe that Defendant has information regarding same. Nevertheless, Defendant has refused to produce this information.

18.   Interrogatory 12: **With respect to any third-party examination of Defendant's under the counter model dryer involved in the first fire, please identify: a) their address and contact information; b) all communications with any parties identified herein; c) the dates on which any and all communications and inspections took place; and d) all documents that refer or relate thereto.** Defendant now identifies Pyrotech, Inc. and states that no correspondence was issued in connection with that request. This response is patently false and incomplete. The documents produced from the 2004 fire reflect a letter from Crawford & Co. dated May 17, 2004 noting that an inspection took place and was attended by Terry Beckham of Pyrotech, Inc., their senior investigator, and by Fred Paul, the product safety manager for Electrolux. The letter sent to Ms. Levy at Electrolux notes that "Mr. Paul and Mr. Beckham conducted an extensive scene investigation along with a product safety analysis, **and**

their report will be forwarded to your [Ms. Levy's] attention" (**emphasis added**; See **Exhibit E** to Declaration of Counsel in Support of Plaintiff's Motion (Doc. 21-1, p. 34-37). This report is not mentioned in Defendant's interrogatory response and has not been provided. As such, it is clear that Defendant has not fully responded to this demand.

19.   Interrogatory 13:   **State the identities and addresses of all experts and consultants used by Defendant to review and/or establish the safety of its under the counter dryers in any litigation, action or proceeding regarding the safety of its dryers.** Again, Defendant has identified only Carl King. This is clearly an incomplete response given the fact that Defendant has sent other engineers to Plaintiff's property in connection with both fires. This information is fully discoverable and any claim of privilege is unsupportable especially given the failure to identify the particular person and the basis for the claim of privilege. Moreover, Defendant's objections as to the scope of the demand are unfounded for the reasons set forth above.

20.   Interrogatory 16: **Please identify the names of all parties involved in any form of litigation or correspondence with Defendant relating to any product defect or damages arising out of a dryer fire from the period of January 1994 to the present.** Again, Defendant's unsupported objection to the scope of this demand is unfounded. If there are other claims and litigations involving dryer fires, Plaintiff is entitled to that discovery. If this information is so voluminous that it would be overly burdensome to produce, Defendant had an obligation to identify the extent of the responsive information and to discuss reasonable limitations with Plaintiff. It elected not to do so.

Furthermore, it is significantly more likely that this information is readily available to Defendant. Defendant is involved in numerous other litigations throughout the country relating

9

to fires caused by its dryers.  As such, it has no doubt tracks these claims and has information readily related to them available.  In fact, Defendant has previously been ordered to produce a list of other actions in which it was defending claims arising out of dryer fires and to produce the litigation filed related to same (See **Exhibit B**).  Accordingly, to claim that it does not have similar information in this case is, at best, disingenuous.

Accordingly, Defendant should be compelled to provide information regarding all claims arising out of dryer fires.

**III.     Document Request Deficiencies**

      **A.     First Request for Production of Documents**

21.     Request 1:  **A complete and true copy of any and all contracts or agreements entered into between Defendant and any other party to investigate and/or review the source of dryer fires on Defendant's behalf.**

22.     Request 2:  **A complete and true copy of any and all contracts or agreements entered into between Defendant and any other party hired to investigate the source of dryer fires as to units manufactured by Defendant or on Defendant's behalf.**

23.     Request 3:  **A complete and true copy of all memorandums, studies, reports and other related investigative materials addressing the source of dryer fires performed on Defendant's behalf.**

24.     Defendant's objections and continued failure to produce any documents responsive to requests 1, 2 and 3, are unfounded.  Clearly, studies that Defendant conducted or was aware of related to fires originating in its dryers are related to this action.  As noted, Defendant has no basis to now object to the scope of the demand when it failed to engage in any process to reasonably limit the scope of the production.

25.     Request 4:  **A complete and true copy of the entire claim and/or investigative file retained by Defendant or on Defendant's behalf by Defendant or any claims adjusting service concerning the 2004 dryer fire which occurred on the Oleg Cassini property.** Defendant has still failed to provide a full and complete copy of the file related to the first dryer fire. Any reports prepared by engineers or other representatives of Defendant in connection with that fire must be produced.  This fire is not at issue in this action, and there is no basis for claiming that these reports are privileged or were produced in anticipation of the within litigation.  Moreover, Defendant has not produced a privilege log and, therefore, it necessarily cannot carry its burden of demonstrating privilege.  As such, Defendant must produce the responsive documents that have been improperly withheld.

26.     Request 5:  **A complete and true copy of the entire claim and/or investigative file retained by Defendant or on Defendant's behalf by any claims adjusting service concerning the 2008 dryer fire which occurred on the Oleg Cassini property.**  Defendant has still failed to provide the full and complete copy of the file related to the 2008 dryer fire and has, in fact, entirely failed to address the fact that there are no reports or other documents from Tom Bajzek, Raymond Negron, and Jonathan P. Derow.  Unless each of these individuals are experts in this case (who have not been identified), there is no basis for withholding these documents.  In addition, if there are any photographs or other documents on which these individuals intend to rely (and which Defendant intends to rely), then the documentary evidence must be produced.

27.     Request 9:  **Copies of all photographs in Defendant's possession of the exterior and interior of Plaintiff's property and an indication of the date on which all photographs were taken and by whom.**  Defendant has finally produced some color

11

photographs of the scene of the fire; however, it is clear that these are not complete.  The photographs produced by Defendant appear to be their expert engineer at the time of his inspection in or about 2008.  However, despite numerous demands, Defendant has still not provided color copies or legible jpegs of the photos taken by its claims examiner, Crawford & Company, which were included in its responses to discovery at Bates stamped 00039 to 00154.  In addition, Defendant has still not produced photographs from the first fire or those taken by Jonathan P. Derow in connection with this litigation.

28.     With respect to Document Requests 13 through 15, Plaintiff is seeking discovery related to other claims and actions that have been asserted against Defendant as a result of fires caused by its dryers.  There is truly no more relevant evidence in this action.  Again, Defendant's objections as to scope and privilege are unfounded and unsupportable.  As noted in Plaintiff's moving papers, if Defendant will identify the other actions in which it has been involved related to electric dryer fires, we can limit this demand to only those cases.  Further limitations may also be possible.  However, Defendant's blanket refusal to provide any information regarding the numerous actions in which it has been sued as a result of dryer fires has precluded any such compromise.  If Defendant has documents related to other dryer fires, there is no basis for withholding them.

29.     Request 16: **Copies of all documentation supporting each and every defense asserted by Defendant.**   Plaintiff flatly rejects Defendant's baseless, unfounded, and inflammatory characterization of evidence having been spoliated in this action.  If Defendant truly had any basis for such a claim, the opportunity to raise such issues has long since passed.  Defendant had the opportunity to review the product at issue right after the fire, over four (4) years ago.  If there was an issue with respect to the condition of the product, it could have, and

12

would have, been raised at that time.   Rather, Defendant is again looking for any basis to withhold discovery.  If there are documents responsive to this demand, including the "laundry list" of documents in Defendant's long-overdue Initial Disclosures, they must be produced.

30.     Request 23:  **Copies of all claim books or other type of entries maintained to record all notices, notes and memoranda kept in the daily course of business concerning fires an/or malfunctions arising out of the use of dryers manufactured by Defendant.**

31.     Request 24:  **Copies of any and all recall notices for any dryers manufactured by Defendant.**

32.     As to requests 23 and 24, Defendant originally indicated that it was "undergoing a search to determine" if there were any responsive documents.  Defendant now takes the position that there are no responsive documents to be produced.  For the reasons set forth in Plaintiff's moving papers, these documents must be produced including documents related to substantially similar models.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date  January 23, 2013

*/s/ Nicholas A. Vytell*
Nicholas A. Vytell
**CARROLL, McNULTY & KULL LLC**
120 Mountain View Boulevard
Post Office Box 509
Basking Ridge, New Jersey 07920
(908) 605-2120

570 Lexington Avenue, 8th Floor
New York, New York, 10022
(212) 490-0988
nvytell@cmk.com
Attorneys for Plaintiff

Exhibit A

1/22/13
Case 1:11-cv-01237-LGS-JCF Document 26 Filed 01/23/13 Page 15 of 21
User-centred fire risk assessment of common platform dryer



LULEÅ
UNIVERSITY
OF TECHNOLOGY

## MSc Programmes in Engineering Ergonomic Design and Production

Engineering / 2006:139

This Publication is **confidential**

### TITLE
User-centred fire risk assessment of common platform dryer

### AUTHOR
Kogerfelt, Fredrik; Svensson, Emelie

### DEPARTMENT
Human Work Sciences / Product Design

### SUMMARY
At the Electrolux Dryer Plant in Adelaide, Australia dryers have been manufactured for the last 29 years under different brands. The dryers have always had a good reputation of being high quality and at the time of introduction, ahead of its time. However the dryers have had some issues with fire incidents which initiated this project. A new type of dryer called Common Platform Dryer (CPD) will replace the old models in the beginning of 2006. Among other things the new dryer has been developed to reduce the risk of catching fire comparing to its antecedents. The aim of this project was to establish if this was the case according to lint catching fire.

To obtain the goal of this project a strong experimental approach has been used influenced by a clear and well defined design philosophy which focuses on the user of the machine. A test plan of totally 9 individual experiments were carried out based on previous experience of dryers, user-studies, Australian standards, observations and similar existing products. The test period included planning, test conducting and analysis of the results obtained by each experiment. The analyses were evaluated together with experts at Beverly dryer plant and some ideas were further developed during the last months of the project.

ISSN 1402-1617 / ISRN LTU-EX--06/139--SE/ NR 2006:139

Home | Search | The University | The Library



LULEÅ UNIVERSITY LIBRARY

Exhibit B

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**MICHAEL A. SHIPP**<br>UNITED STATES MAGISTRATE JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.   ROOM 2042<br>NEWARK, NJ 07102<br>973-645-3827 |

<u>**Not for Publication**</u>

**LETTER OPINION AND ORDER**

August 22, 2011

<u>**VIA CM/ECF**</u>
All counsel of record

    Re: **Electric Insurance Co. v. Electrolux North America, Inc.**
       <u>**09-3792 (FSH) (MAS)**</u>

Dear Counsel:

  This matter comes before the Court upon a dispute regarding the discoverability of the non-privileged content of litigation files related to certain dryer fires.  Plaintiff Electric Insurance Company ("EIC" or "Plaintiff") asserts that the Court's previous orders covered the production of litigation files.  Defendant Electrolux North America, Inc. ("Electrolux" or "Defendant") strongly contests Plaintiff's position.  For the reasons set forth below, the Court orders Defendant to produce specific, clearly-defined categories of discovery from the litigation files, which were not produced from the claims files.

**I.**  <u>**Background**</u>

  The parties are well-versed in the facts surrounding this matter.  Therefore, the Court will address only those facts relevant to the instant dispute.  According to Plaintiff, the Defendant was ordered to produce:

    '[a]ll documents that concern, refer or relate to any other incidents involving fires
    allegedly caused by 5.7 cubic foot frontload gas dryers manufactured or sold by

> Electrolux.' (Request No. 10.) Further, Electrolux was ordered to identify all
> claims, <u>including cases in litigation</u>, involving fires 'allegedly occurring in 5.7
> cubic foot frontload gas dryers manufactured or sold' by Electrolux (Interrogatory
> No. 17), <u>and</u> to produce all documents that concern, refer or relate to those claims
> and cases. (Request No. 18.)

(Docket Entry No. ("Doc. No.") 122 ("Pl.'s 5/4/11 Ltr.") 3.)  Therefore, Plaintiff argues, Electrolux

cannot argue in good faith that the Court's July 15, 2010 and September 23, 2010 Orders do not

require the production of responsive, non-privileged documents contained in Electrolux's litigation

files.  (*Id.*)

Defendant disputes Plaintiff's assertion that Electrolux has not produced any documents

from its litigation files.  According to Defendant:

> Electrolux has turned over all the relevant claim and litigation files associated
> with the model product at issue.  Moreover, Electrolux has produced copies of
> the Complaints filed in every lawsuit relating to a 5.7-cubic-foot gas dryer fire
> (over the past ten years), along with the underlying claims files for all such cases
> that Electrolux's Risk Group maintained prior to sending [the files] to Litigation.
> Those claims files contain investigative materials, including expert assessments,
> inspection reports, photographs, and correspondence among Electrolux and the
> claimants (or their attorneys).

(Doc. No. 131 ("7/20/11 Joint Ltr.") 5.)  Electrolux argues that "EIC may obtain the 'substantial

equivalent' of information contained in Electrolux's [l]itigation [f]iles by simply reviewing the

docket sheets for the matters identified by Electrolux and requesting copies of the filings it needs."

(Doc. No. 99 ("3/8/11 Ltr.") 6.)  Finally, Electrolux asserts that the burden of locating, identifying

and logging the information in the litigation files outweighs any possible benefit to EIC, because

most of the information in the litigation files is either protected by the attorney-client privilege or by

confidentiality orders entered in those cases.  (*Id.* at 7-8.)

## II.   <u>Legal Standard & Analysis</u>

Under Federal Rule of Civil Procedure 26(b), upon a finding of good cause, a court may order

discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the

2

action.  Notably, Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader

inquiry at the discovery stage than at the trial stage.  *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92

F.R.D. 371, 375 (D.N.J. 1981).  While relevant information need not be admissible at trial in order to

grant disclosure, the burden remains on the party seeking discovery to "show that the information

sought is relevant to the subject matter of the action and may lead to admissible evidence."  *Caver v.

City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).  However, under Federal Rule of Civil

Procedure 26(b)(2)(C), a court may limit discovery when the burden is likely to outweigh the

benefits.  *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  Specifically, a

discovery request may be denied if this Court finds that there exists a likelihood that the resulting

benefits would be outweighed by the burden or expenses imposed as a consequence of the discovery

after assessing the following factors: (i) the unreasonably cumulative or duplicative effect of the

discovery; (ii) whether "the party seeking discovery has had ample opportunity to obtain the

information by discovery in the action;" and (iii) "the needs of the case, the amount in controversy,

the parties' resources, the importance of the issues at stake in the action, and the importance of the

discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C).

   While Defendant argues that the Court did not order production of litigation files, a review

of this Court's previous Orders does not reveal any such limitation.  Rather, a literal reading of the

Court's previous Orders would indicate that litigation files are included in Plaintiff's discovery

requests.  In addition, the Court is not persuaded by Electrolux's assertion that Plaintiff can obtain

the information from alternative sources, including the various case dockets, because Electrolux did

not provide a list of the case names and docket numbers until after March 25, 2011.  Indeed,

considerable discovery in the litigation files may not be listed on the various case dockets, and

documents from some state court litigations cannot be accessed electronically; thus, the discovery

may only be in Defendant's possession. It is also clear that Plaintiff cannot obtain certain discovery in the method suggested by Defendant.

Nevertheless, the Court finds it necessary to assess whether any limitations on the discovery are now warranted based on the application of Rule 26(b)(2)(C) considerations. After carefully considering the discovery that has been produced to date in connection with the Rule 26(b)(2)(C) factors, including the needs of the case and the importance of the discovery in resolving the issues, the Court finds that Plaintiff is entitled to investigative materials, including expert assessments, inspection reports, photographs and correspondence among Electrolux and the claimants (excluding correspondence to/from attorneys, which is protected as attorney-client privilege). Plaintiff is entitled to this discovery, regardless of whether the information is located in the claims files or the litigation files. Defendant asserts that it provided such discovery to Plaintiff as part of the claims files. However, the Court finds that Defendant's assertion that it produced comprehensive claims files to Plaintiff fails, as it does not appear that the claims files were complete. This was most recently demonstrated by Defendant's correspondence, which was submitted to the Court in conjunction with the Court's *in camera* review of certain e-mail messages. In connection with the *in camera* review, the Court requested five PDF documents that were attached to certain e-mail messages at issue. Defendant only produced three of the five, indicating:

> Pursuant to Chamber's [sic] request on Friday, enclosed please find copies of the attachments contained within the 15 privileged documents that remain in dispute.
>
> . . .
>
> All of these documents were previously produced to plaintiffs in the original claims file production. However, the emails to which they are attached have been withheld on work product grounds as discussed in our previous submissions to the Court.
>
> We are unable to locate the two attachments contained in the emails at Bates No. M20853 and M20855. These documents were unavailable in the original claims file production.

(Def.'s 8/9/11 Ltr. 1.)

4

Therefore, it appears to the Court that certain relevant discovery may not have been contained in the claims files at all or may have been removed or misplaced. This is particularly noteworthy as Electrolux provided in the joint proposed final pretrial order that it contemplates filing motions *in limine* to preclude Plaintiff from introducing evidence of other similar incidents based on an assertion that there is insufficient proof to demonstrate substantial similarity with the facts and circumstances of this matter. This would not be equitable if the discovery is incomplete.

## III.    Conclusion

Based on a careful consideration of the Rule 26(b)(2)(C) factors, and for good cause shown, the Court ORDERS that Defendant must produce the following non-privileged discovery from the litigation files to the extent that the discovery was not previously produced with the claims files: investigative materials, including expert assessments, inspection reports and photographs. By **August 29, 2011**, the parties shall meet and confer regarding the specific discovery that was not provided with the claims files.[1] Defendant shall produce the required discovery by **September 16, 2011**.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] The exact discovery produced from the claims files may not be clear to counsel for Defendant based on the change of counsel late in the case. Therefore, counsel must meet and confer to ensure that discovery from the litigation files is not duplicative of the discovery from the claims files and that Plaintiff has been provided with the ordered discovery. The Court has not issued a Report and Recommendation regarding its assessment of Defendant's compliance with its discovery obligations due to certain outstanding discovery-related issues, including the privilege log issue. However, the Court notes that it has been extremely encouraged by the cooperation between Plaintiff's counsel and Defendant's new counsel. As the Court stated during the telephone status conference on the record on August 3, 2011, counsel exemplified both the intent and spirit of the meet and confer process by narrowing its privilege disputes from over 200 items to just 15. The Court is confident that counsel can meet and confer regarding the discovery from Defendant's litigation files and expeditiously bring this remaining discovery issue to conclusion.