**CMK CARROLLMCNULTYKULL** LLC
COUNSELLORS AT LAW

120 Mountain View Boulevard
Post Office Box 650
Basking Ridge, New Jersey 07920

908 848 6300 PHONE
908 848 6310 FAX

570 Lexington Avenue
8th Floor
New York, New York 10022

212 252 0004 PHONE
212 252 0444 FAX

*Nicholas A. Vytell, Esq.*
*Direct Dial 908.848.1231*
*nvytell@cmk.com*

April 23, 2013

**VIA FACSIMILE AND REGULAR MAIL**
Hon. Lorna G. Schofield, U.S.D.J.
U.S. District Court Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1106
New York, NY 10007

      RE:    *Oleg Cassini, Inc., v. Electrolux Home Products, Inc.*
               United States District Court for the Southern District of New York
               Civil Action No. 11-01237(LGS)(JCF)

Dear Judge Schofield:

      We, along with the law firm of Reppert Kelly, LLC, represent Plaintiff, Oleg Cassini, Inc. ("Plaintiff" or "OCI"), in the above-referenced action. In accordance with Your Honor's Order dated April 3, 2013 [Doc. 30], as amended [Doc. 38], we submit this joint status letter in conjunction with counsel for Defendant, Electrolux Home Products, Inc. ("Defendant" or "Electrolux").

**I.**    **STATEMENT OF CASE**

      This action arises out of a fire in 2008 that resulted when a dryer manufactured by Defendant suddenly malfunctioned damaging Plaintiff's home and destroying numerous invaluable personal effects and memorabilia that belonged to renowned fashion designer Oleg Cassini. Plaintiff had suffered a prior fire as a result of a faulty dryer manufactured by Defendant in 2004, which claim was settled by Defendant's insurance carrier.

      Plaintiff contends that Defendant's dryer was defectively designed and/or manufactured and that Defendant failed to provide proper warnings. Plaintiff further contends that Defendant negligently and/or intentionally sold, and failed to recall, the defective dryer notwithstanding knowledge of the substantial and significant fire risk it posed to the public, including Plaintiff. Plaintiff has asserted various claims for products liability, breach of warranty, and violation of the New York consumer protection laws. A true and accurate copy of Plaintiff's Complaint is attached hereto as **Exhibit A**.



The primary factual disputes in resolving Plaintiff's claims are the exact nature of the defect in Defendant's product, Defendant's knowledge of same, and the proper measure of Plaintiff's damages.

## II.   JURISDICTION & VENUE

This matter is appropriately before this Court based on diversity jurisdiction in accordance with 28 U.S.C. § 1332. Plaintiff is a New York corporation with its principal place of business in New York. Defendant is a Delaware corporation with its principal place of business in Charlotte, North Carolina. The amount in controversy exceeds $75,000.00, as Plaintiff's damages for property destroyed in the fire is approximately $500,000.00, exclusive of interest, costs, attorneys' fees, or punitive damages. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391, as Defendant operates and is subject to suit within this District and the property at issue belongs to Plaintiff, which maintains offices within this District.

## III.   MOTION PRACTICE

Plaintiff previously filed a motion to compel discovery from Defendant that was granted, in part, by Order dated February 7, 2013 [Doc. 27].

Defendant has recently filed a motion to quash a subpoena served by Plaintiff on Michael Hopkins, Esq., which is currently pending before Judge James C. Francis, IV, U.S.M.J. Mr. Hopkins was counsel for the plaintiff in a separate action filed against Electrolux arising out of a dryer fire. Plaintiff believes that the documents in Mr. Hopkins' possession are relevant to the claims in this action.

The parties have conferred and are attempting to reach a resolution regarding the scope of the subpoena and the terms of an acceptable Protective Order that will allow Mr. Hopkins to respond. The parties intend to request a short period of time from Judge Francis in order to resolve this dispute.

## IV.   DISCOVERY

The parties have traded written discovery and documents. As noted, Plaintiff's motion to compel discovery was granted, in part, by Order dated February 7, 2013 [Doc. 27]. That Order required the production of certain documents and supplemental interrogatory responses by Defendant. In addition, the Order indicated that discovery regarding other dryers manufactured by Defendant (and bearing a different model number than the dryer at issue) could be obtained by service of an affidavit of an expert regarding the particular elements at issue. Plaintiff has recently served an affidavit from its expert engineer requesting supplemental discovery responses in accordance with the Court's Order. In addition, Plaintiff has requested that Defendant provide more complete responses and documents in response to discovery demands that were previously ordered by the Court.

Defendant has also recently issued a deficiency letter and is awaiting Plaintiff's response.



The parties have conferred regarding the above-referenced discovery disputes. Defendant intends to provide a formal response to Plaintiff's deficiency letter and supplemental discovery responses on or before April 25, 2013. Plaintiff has recently received Defendant's letter outlining purported deficiencies and will provide a formal response and supplemental responses, if necessary, on or before May 3, 2013.

The deposition of Plaintiff has been completed. Plaintiff requires Defendant's supplemental discovery responses in order to serve deposition notices on Defendant including, without limitation, an appropriate Rule 30(b)(6) notice.

## V. DAMAGE COMPUTATION

Plaintiff seeks compensatory damages of approximately $495,000 for the property damage caused as a result of the fire. An itemization of the damages and supporting documentation has been produced to Defendant, and will be provided to the Court upon request. In addition, Plaintiff seeks its attorneys' fees, costs, expenses, and punitive and statutory damages.

## VI. PROCEDURAL POSTURE

A copy of the Court's Revised Scheduling Order [Doc. 28] is attached hereto as **Exhibit B**. Pursuant to the Court's Order, factual discovery is currently set to be completed by May 17, 2013. In light of the multiple discovery disputes, the parties anticipate that a short adjournment of that deadline may be necessary to complete the deposition of Defendant's representatives.

## VII. SETTLEMENT

The parties previously participated in a private mediation to no avail. Plaintiff remains open to a reasonable settlement of this case. To date, no settlement offer has been received from Defendant. Accordingly, we do not believe a settlement conference would be productive at this time.

## VIII. OTHER INFORMATION

None at this time.



Hon. Lorna G. Schofield, U.S.D.J.
April 23, 2013
Page 4 of 4

    We greatly appreciate Your Honor's continued attention and consideration of this matter. Should Your Honor require any additional information, please do not hesitate to contact us. Thank you very much.

                Respectfully Submitted,

                CARROLL, MCNULTY & KULL LLC

                Nicholas A. Vytell

Enclosures

cc    John P. Freedenberg, Esq. (via email only)
      Ellen H. Greiper, Esq. (via email only)
      J. Vincent Reppert, Esq. (via email only)

# EXHIBIT A

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| OLEG CASSINI, INC., | Civil Action No. |
| Plaintiff, | |
| -vs- | COMPLAINT AND JURY DEMAND |
| ELECTROLUX HOME PRODUCTS, INC., | |
| Defendant. | (ECF Case) |

Plaintiff Oleg Cassini, Inc. ("OCI" or "Plaintiff"), by and through its attorneys of record, and for its cause of action against Defendant Electrolux Home Products, Inc. ("Electrolux", "Defendant" or the "Company") by way of Complaint, alleges, and states as follows:

## PARTIES

1. At all times relevant hereto, OCI, was, and is, a corporation organized, existing and operating under the laws of the State of New York, with its principal place of operation in the State of New York.

2. OCI has offices located at 1370 Broadway in the City of New York, State of New York.

3. At all times relevant hereto, Defendant was, and is, a corporation organized, existing and operating under the laws of the State of Delaware, with its principal place of operation in the State of Ohio.

4. Defendant is, upon information and belief, in the business of designing, manufacturing, assembling, selling, distributing and/or otherwise placing into the stream of commerce household appliances and appliances for professional use, including their components

and parts, selling more than 40 million products to customers in more than 150 markets every year, under a variety of brand names, including, but not limited to, "Frigidaire".

5.  Defendant sells and advertises its products throughout the United States including New York.

6.  At all times relevant hereto, OCI was, and is, the owner of a property consisting of over forty (40) acres on Long Island's North Shore with several large buildings including the main house, carriage house, large garage and office complex, several barns and accessory buildings as well as other buildings located at 313 McCouns Lane, Oyster Bay Cove, New York 11771 (the "Premises") and certain property contained therein, including, but not limited to, cabinetry, furniture, appliances, fine and unique artwork, one-of-a-kind historical sketches, original artwork, artifacts, fixtures, irreplaceable memorabilia, items on the Premises and other improvements (collectively the "Property").

7.  The main house building (where the damages resulting from the fire described below occurred), was built circa 1901 by one of the founding families of Tiffany's, and contains many unique architectural details and craftsmanship. The construction of the main house building is brick, stone, cement, wire lath plaster; an extremely fire resistant type of construction. A true photograph of the main house building is attached hereto as Exhibit A.

## JURISDICTION AND VENUE

8.  The court has jurisdiction over the parties to this action.

9.  The court has jurisdiction over the subject matter of this action pursuant to the provisions of 28 U.S.C. § 1332 in that this action is between citizens of different states and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

10. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

11. In or about 2004 OCI purchased a Frigidaire Gallery Supreme Series GSEQ642AS under-the-counter dryer (the "Product") that was designed, manufactured, assembled, sold, distributed and/or otherwise placed into the stream of commerce by Defendant.

12. At the time the Product was designed, manufactured, assembled, sold, distributed and/or otherwise placed into the stream of commerce by Electrolux, the Product was in a defective condition, which defect rendered it unreasonably dangerous to persons and property.

13. The unreasonably dangerous and defective condition(s) of the Product and/or its components existed at the time it left the hands of Electrolux.

14. At all relevant times, up to and including August 3, 2008 the Product was used by Plaintiff for the purpose and in the manner for which it was designed and intended.

15. On or about Sunday, August 3, 2008, a fire ignited inside the Product causing substantial damage and destruction to the Premises.

16. The fire was caused by the dangerous and defective Product and/or its components.

17. At the time of the fire, the Product and/or its components had not been substantially altered from the condition they were in at the time they left the hands of Electrolux.

18. The fire resulted in substantial and significant damage to several rooms of the main house which included smoke and water damage along with the destruction of irreplaceable and important Property.

19. Damages were also incurred during the course of fighting the fire.

20. Immediately upon learning of the fire caused by the defective Product, OCI contacted Electrolux and informed it of the substantial and significant damages sustained as a direct result of the defective Product.

21. Electrolux repeatedly acknowledged its negligence and advised OCI that it would reimburse OCI for all damages sustained.

22. Despite Electrolux's repeated promises to reimburse OCI for the damages sustained, Electrolux failed to do so.

23. As a direct and proximate result of the Defendant's dangerous and defective Product and/or its components, the subject fire occurred and caused substantial damage to the Property and Premises of OCI.

## COUNT I
### *(Strict Liability)*

24. Plaintiff repeats the Facts Common to All Counts as if set forth more fully herein.

25. The subject fire and resulting damage to the Property and Premises were directly and proximately caused by the improperly, defectively and unreasonably dangerous design and/or manufacture of the Product and/or its components, which were distributed and sold by Electrolux, and which created a severely dangerous condition in that the Product and/or its components posed an unreasonable risk of harm to persons and the OCI Property.

26. Electrolux failed to timely and adequately warn OCI of the dangers associated with, and inherent in, the Product.

27. Plaintiff had purchased the same model under-the-counter Frigidaire dryer that resulted in a fire at the main house on the Premises in or about 2004.

28. The dryer involved in the 2004 fire was approximately one year old.

29. Electrolux adjusted the claim arising from the 2004 fire and paid Plaintiff for the damages in connection therewith. The fire in 2004 was less devastating than the August 2008 fire.

30. Plaintiff was assured that the defect was corrected and that Plaintiff could safely repurchase another under-the-counter Frigidaire of the same model so as to fit in the same space.

31. Based upon these representations, and in reliance therewith, Plaintiff repurchased the same Frigidaire under-the-counter model to its detriment.

32. This same model resulted in the within fire on or about Sunday, August 3, 2008.

33. Defendant falsely represented that all defects with this model had been corrected.

34. Defendant knew that said representations and omissions were false and misleading at the time they were made and/or concealed.

35. Plaintiff relied on the false and misleading representations and omissions made by the Defendant to its detriment.

36. Unbeknownst to the Plaintiff, Defendant was aware of several fires associated with this under-the-counter model dryer.

37. Defendant was conducting studies in foreign countries to determine the source of the dryer fires yet intentionally concealed this information from the purchasing public including OCI.

38. Defendant negligently and/or intentionally failed to warn the Plaintiff or to recall this model dryer notwithstanding the known inherent risk to life and property.

39. The Company has previously acknowledged that there were prior problems with this particular model of dryer and that there was an inherent risk of fire associated with such Product, yet it continued to market the product as safe.

40. As a direct and proximate result of the Defendant's actions, the dangerous and defective Product and/or its components caused a fire which resulted in substantial and irreplaceable damage to the main house on the Premises and the Property.

41. The Defendant acted recklessly and with wanton disregard for persons violated through affirmative material misrepresentations and omissions regarding the Product, including but not limited to the following:

(a) At the time the Product was designed, manufactured, distributed, placed in the stream of commerce and sold by Electrolux, the Product was in a defective condition which rendered it unreasonably dangerous to persons and property. Electrolux knowingly concealed said information from the Plaintiff.

(b) Defendant was aware of several fires associated with and/or caused by the Product and Defendant knowingly concealed said information from the Plaintiff.

(c) Defendant affirmatively represented to the Plaintiff that the Product was safe and fit for its intended use when it knew that it was unreasonably dangerous and not fit for its intended use.

(d) Failed to have proper thermostat controls such that it failed to shut off when the unit overheated.

42. As a result of Electrolux's failure to warn and/or the dangerously, improperly and defectively designed and/or manufactured Product and/or its components, which were designed, manufactured, distributed, sold or otherwise placed into the stream of commerce by Electrolux, Defendant is strictly liable to OCI under the applicable statutory and common laws.

43. The Company demonstrated a complete and utter lack of indifference to the severe risk of harm that its defective Product posed to its consumers.

44. Defendant knowingly put a dangerous and defective product into the stream of commerce.

45. The activities associated with Electrolux's placement of the defective product into the stream of commerce given its knowledge of its inherent problems and defects constitutes egregious, outrageous and reprehensible conduct.

46. The public as well as the Plaintiff has been harmed and placed at risk due to this reckless conduct.

47. A public wrong would be vindicated by the award of punitive damages against Defendant.

48. OCI has incurred significant costs, expenses and losses as a consequence of Defendant's egregious and unlawful conduct.

**WHEREFORE**, Plaintiff, OCI, demands judgment against Defendant Electrolux for damages and punitive damages, together with pre-judgment and post-judgment interest, attorney's fees, the costs of suit, and such other relief as this Court may order and deem just and equitable.

## COUNT II
*(Negligence)*

49. Plaintiff repeats the Facts Common to All Counts and the allegations contained in the First Count as if set forth more fully herein.

50. Electrolux owed OCI a duty to provide it with a Product and/or that its components that were safe and that such Product would not cause harm to it or its Property, and to timely and adequately warn OCI of the existence of any dangers associated with the Product.

51. Electrolux breached its duty to OCI by providing it with an unreasonably dangerous and defective Product and/or its components, and by failing to timely and adequately warn OCI of the existence of any dangers associated with the Product, which caused damage to its Property.

52. The fire and resulting damage and destruction to the OCI Property was directly and proximately caused by the negligence, recklessness, carelessness and/or negligent acts and/or omissions of Electrolux, its agents, servants and/or employees, in failing to warn of the Product's dangers and/or its failure to properly design, manufacture, distribute, sell, install, inspect, maintain and/or test the Product and/or its components, prior to placing same into the stream of commerce for purchase.

53. As a direct and proximate result of the foregoing negligent acts and/or omissions, the Product and/or its components was dangerously defective and caused the subject fire and resulting damage to OCI.

**WHEREFORE**, Plaintiff, OCI, demands judgment against Defendant Electrolux for damages, together with pre-judgment and post-judgment interest, attorney's fees, the costs of suit, and such other relief as this Court may order and deem just and equitable.

### COUNT III
*(Breach of Express and/or Implied Warranty)*

54. Plaintiff repeats the Facts Common to All Counts and the allegations contained in the First and Second Counts as if set forth more fully herein.

55. At all times relevant hereto, Defendant Electrolux impliedly and expressly warranted that the Product and/or its components were of good and merchantable quality, fit for their particular purpose and free from defects.

56. At all times relevant hereto, Defendant Electrolux dangerously, improperly and/or defectively designed and/or manufactured the Product and/or its components, which created a dangerous condition that exposed OCI and its Property to an unreasonable risk of harm.

57. Defendant was fully aware of the dangers associated with this model but nevertheless elected not to warn the Plaintiff of the dangers associated with this Product.

58. Defendant took no action to recall this Product despite having knowledge of numerous claims of fire resulting therefrom.

59. The first Electrolux/Frigidaire authorized person, (Above All Appliance Repair), who appeared on behalf of the Defendant shortly after the fire occurred in order to inspect the defective Product noted that Plaintiff had sustained "the worst dryer fire" he had seen in his forty-five (45) years in the business; that the dryer was properly installed and vented; and that the dryer was burned beyond anything he had ever seen. A true photograph of the burnt out dryer is attached hereto as Exhibit B.

60. As a result of its actions, Electrolux has breached its express and implied warranties described herein, including, but not limited to, its warranties of merchantability and fitness for a particular purpose.

61. As a direct and proximate result of Defendant Electrolux's breach of the expressed and implied warranties described herein, OCI has suffered damages.

**WHEREFORE**, Plaintiff, OCI, demands judgment against Defendant Electrolux for damages, together with pre-judgment and post-judgment interest, attorney's fees, the costs of suit, and such other relief as this Court may order and deem just and equitable.

### COUNT IV
*(Violation of the New York Consumer Protection From Deceptive Acts and Practices Statute)*

62. Plaintiff repeats the Facts Common to All Counts and the allegations contained in the First, Second, Third and Fourth Counts as if set forth more fully herein.

63. The Defendant violated the New York Consumer Protection From Deceptive Practices Statute, New York General Business Law §349 (the "Statute") in its dealings with the

Plaintiff and the consuming public through affirmative material misrepresentations and omissions regarding the Product, including but not limited to the following:

a. At the time the Product was designed, manufactured, distributed, placed in the stream of commerce and sold by Electrolux, the Product was in a defective condition which rendered it unreasonably dangerous to persons and property. Electrolux knowingly concealed said information from the Plaintiff and consumers.

b. Defendant was aware of several fires associated with and/or caused by the Product and Defendant knowingly concealed said information from the Plaintiff and consumers.

c. Defendant affirmatively represented to the Plaintiff that the Product was safe and fit for its intended use when it knew that it was unreasonably dangerous and not fit for its intended use.

64. Defendant knew that said representations and omissions were false and misleading at the time they were made and/or concealed.

65. The misrepresentations and omissions of the Defendant were deceptive and directed at the Plaintiff, a consumer.

66. The misrepresentations and omissions of the Defendant were materially misleading to Plaintiff and other consumers.

67. As a result of the above deceptive acts and omissions on the part of the Defendant, Electrolux has violated the Statute.

**WHEREFORE,** Plaintiff demands judgment against Electrolux for damages, along with treble damages and attorneys' fees pursuant to the Statute, together with pre-judgment and post-judgment interest, costs of suit and such other relief as this Court may order just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by a jury.

Dated: New York, New York
February 22, 2011

                REPPERT KELLY, LLC

By: _____
Christopher P. Kelly, Esq. (CK-0195)
J. Vincent Reppert, Esq. (JR-1984)
120 Mountain View Boulevard
Post Office Box 509
Basking Ridge, New Jersey 07920
(908) 605-2120
ckelly@reppertkelly.com
jvreppert@reppertkelly.com

570 Lexington Ave., 8th Floor
New York, New York 10022
(212) 490-0988

Co-Counsel for Plaintiff
Sean T. Burns, Esq.
CARROLL, MCNULTY & KULL, LLC
570 Lexington Ave., 8th Floor
New York, New York 10022
(646) 625-4000
sburns@cmk.com



# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
OLEG CASSINI, INC.,                  :    CIVIL AC. NO. 11-1237(AJN)(JCF)
                                     :
            Plaintiff,               :
                                     :    **REVISED SCHEDULING ORDER**
         v.                          :
                                     :    USDS SDNY
ELECTROLUX HOME PRODUCTS, INC.,      :    DOCUMENT
                                     :    ELECTRONICALLY FILED
            Defendant.               :    DOC #:
------------------------------------------------------------x   DATE FILED: 3/4/13

This matter having been brought before the Court on the application of Plaintiff, Oleg Cassini, Inc., for an Order amending the Scheduling Order in this action and the Defendant having consented to the requested extension, it is hereby ORDERED as follows:

1. All fact discovery shall be completed by May 17, 2013.

2. Plaintiff shall produce its expert report(s) and related materials by May 31, 2013.

3. Defendant shall produce its expert report(s) and related materials by June 21, 2013.

4. All expert discovery shall be completed by July 19, 2013.

5. The pretrial order shall be submitted by August 23, 2013 unless any dispositive motion is filed by that date. If such a motion is filed, the pretrial order shall be due thirty days after the motion is decided.

SO ORDERED.

_____
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       March 4, 2013