# Exhibit A

```
UNITED STATES DISTRICT COURT              ECF
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - :
OLEG CASSINI, INC.                       : 11 Civ. 1237 (AJN) (JCF)
                                         :
              Plaintiff,                  :
                                         :        MEMORANDUM
                                         :        AND  ORDER
                                         :
       - against -                       :
                                         :
ELECTROLUX HOME PRODUCTS, INC.,          :
                                         :
              Defendant.                  :
- - - - - - - - - - - - - - - - - - - :
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

Oleg Cassini, Inc. ("Oleg Cassini") brings this action against Electrolux Home Products, Inc. ("Electrolux") asserting various claims for products liability, breach of warranty, and violation of the New York consumer protection laws.  The plaintiff alleges that a fire at its property in 2008 started when a dryer designed and manufactured by the defendant malfunctioned.  The plaintiff now moves to compel the defendant's production of documents and response to interrogatories related to accidents and safety tests involving dryers manufactured by the defendant.  For the reasons set forth below, the plaintiff's motion is granted in part and denied in part.

Background

On August 3, 2008, a fire caused significant damage to several rooms of the plaintiff's property. (Complaint ("Compl."), ¶¶ 15, 18).  The plaintiff alleges that the fire originated from an under-the-counter dryer, a Frigidaire Gallery Supreme Series GSEQ642AS (the "Product"), that was designed, manufactured, and assembled by

the defendant.  (Compl., ¶¶ 11, 15).  It further claims that the Product was dangerous and defective, and that the defendant failed to provide timely and adequate warning of the dangers associated with the Product.  (Compl., ¶¶ 16, 26).

The plaintiff had suffered a prior fire in 2004 caused by a dryer manufactured by the defendant.  (Compl., ¶ 27).  The defendant's insurance carrier settled the claim arising from that incident, which was less destructive than the 2008 fire.  (Compl., ¶ 29; Declaration Nicholas A. Vytell dated Dec. 18, 2012 ("Vytell Decl."), ¶ 4).

The plaintiff now moves pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order compelling the defendant to produce information related to accidents and safety tests involving dryers designed and manufactured by the defendant.  The plaintiff primarily seeks (1) information regarding other dryer models that had experienced fires, and (2) information related to safety testing performed by the defendant, studies with respect to the causation of dryer fires, prior complaints and litigation arising out of dryer fires, and the sales figure for dryers sold since 2000.  The plaintiff also requests that the defendant produce color photographs from its inspection of the property after the fire, its Rule 26 Disclosures,[1] and interrogatory responses.

---

[1] The defendant produced its Rule 26 Disclosures on January 14, 2013.  (Docket no. 24).

2

Discussion

A.   Legal Standard

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."   Fed. R. Civ. P. 26(b)(1).   "Although not unlimited, relevance, for the purpose of discovery, is an extremely broad concept."   Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004); see also Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).   It "'encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'"   Schoolcraft v. City of New York, No. 10 Civ. 6005, 2012 WL 2161596, at *12 (S.D.N.Y. June 14, 2012) (quoting Oppenheimer Fund, Inc., 437 U.S. at 351).   "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   Fed. R. Civ. P. 26(b)(1).   The burden of demonstrating relevance is on the party seeking discovery.   See, e.g., King County, Washington v. IKB Deutsche Industriebank AG, No. 09 Civ. 8387, 2012 WL 3553775, at *1 (S.D.N.Y. Aug. 17, 2012).

Once relevance has been shown, it is up to the responding party to justify curtailing discovery.   Condit, 225 F.R.D. at 106. "[T]he court must limit the frequency or extent of discovery" where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample

opportunity to obtain the information by discovery in the
action; or

(iii) the burden or expense of the proposed discovery
outweighs its likely benefit, considering the needs of
the case, the amount in controversy, the parties'
resources, the importance of the issues at stake in the
action, and the importance of the discovery in resolving
the issues.

Fed. R. Civ. P. 26(b)(2)(C). "General and conclusory objections as
to relevance, overbreadth, or burden are insufficient to exclude
discovery of requested information." Melendez v. Greiner, No. 01
Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003).
"'Instead, the objecting party must show specifically how, despite
the broad and liberal construction afforded the federal discovery
rules, each request is not relevant or how each question is overly
broad, burdensome or oppressive.'" Tourtelotte v. Anvil Place
Master Tenant, LLC, No. 3:11CV1454, 2012 WL 5471855, at *1 (D.
Conn. Nov. 9, 2012) (quoting In re Priceline.com Inc. Securities
Litigation, 233 F.R.D. 83, 85 (D. Conn. 2005)).

     B.   Similar Models: Interrogatories 6, 9; Request 24

     In the context of discovery, "different models of a product
will be relevant if they share with the accident-causing model
those characteristics pertinent to the legal issues raised in the
litigation." Fine v. Facet Aerospace Products Co., 133 F.R.D. 439,
441 (S.D.N.Y. 1990); accord Cheng Chen v. Cincinnati Inc., No. 06
CV 3057, 2007 WL 1029193, at *1 (E.D.N.Y. March 30, 2007). Indeed,
"discovery of similar, if not identical, models is routinely
permitted in product liability cases." Culligan v. Yamaha Motor
Corp., USA, 110 F.R.D. 122, 126 (S.D.N.Y. 1986). Nonetheless, "it

is frequently difficult to judge which of a manufacturer's products are sufficiently similar to the allegedly defective product to be subject to discovery." Fine, 133 F.R.D. at 441; accord State Farm Fire and Casualty Co. v. Black & Decker, Inc., Nos. Civ. A. 02-1154, Civ. A. 02-1584, 2003 WL 103016, at *4 (E.D. La. Jan. 9, 2003).

While "the party seeking discovery need not prove its case on the merits in order to obtain disclosure[,] [i]t must [] make some threshold showing of relevance before the opposing party is obligated to open to discovery a variety of designs not directly at issue in the litigation." Fine, 133 F.R.D. at 443. Thus, "where there has been no suggestion that other models share pertinent characteristics with the products at issue, discovery relating to those models will be disallowed. Id. at 442. The dispute between the parties here thus boils down to a question of whether the other dryer models are "similar" to the Product in a way that is "pertinent to the legal issues raised in the litigation." Id. at 441.

The plaintiff has failed to submit any evidence whatsoever to suggest that other models produced by the defendant shared similar characteristics or components. Such a showing could have been made, for example, through an affidavit of an expert in mechanical engineering. Accordingly, the plaintiff's request for an order compelling production of information about models other than the model involved in the 2008 fire is denied. This ruling is without prejudice to the plaintiff's demonstrating in the future that other

models share pertinent characteristics with the Product.

      C.    <u>Sales, Revenue, and Profit: Interrogatory 3</u>

The plaintiff seeks the identity of "all persons with knowledge of Defendant's sales, revenues and profits from the sales of all under the counter dryers from the year 2000 to the present." (Vytell Decl., ¶ 19). The defendant contends this request should be "limited in time or scope." (Affirmation of Ellen H. Greiper dated Jan. 16, 2013 ("Greiper Aff."), ¶ 6). For the reasons discussed above, only information relating to the Product need be produced at this time.

      D.    <u>Prior Accidents: Interrogatories 6, 13, 16; Requests 1, 2, 3, 12, 13, 14, 15, 23</u>

The Second Circuit has held that evidence of prior accidents similar to the accident at issue "would unquestionably be relevant, if not central to [the plaintiff's] case." <u>Stagl v. Delta Airlines, Inc.</u>, 52 F.3d 463, 474 (2d Cir. 1995) (overturning order denying plaintiff's motion to compel production of reports of prior similar accidents). The court held that the denial "unduly limited" the plaintiff's ability to establish an element of the plaintiff's case. <u>Id.</u> The court recognized that an accident record "would be directly germane to establishing the degree of risk generated" by the defendant's conduct and "proof of causation." <u>Id.</u>

Here, the plaintiff requests materials related to similar accidents caused by dryers manufactured by the defendant. They are relevant to the degree of risk associated with the Product, as well as to whether the defendant had notice of that risk and what, if

any, actions the defendant took to protect the safety of the purchasers of the Product. See, e.g., Fletcher v. Atex, Inc., 156 F.R.D. 45, 47-49 (S.D.N.Y. 1994) (information concerning complaints of repetitive stress injury resulting from prolonged use of computer keyboards was relevant to defendant's duty to investigate degree of risk associated with product). Furthermore, access to this information -- in sole possession of the defendant -- may be the primary way the plaintiff can establish causation if the 2008 fire destroyed relevant components of the Product. See, e.g., Stagl, 52 F.3d at 474 (history of prior accidents would "demonstrate beyond peradventure" that accident at issue was foreseeable consequence of defendant's alleged negligence). Accordingly, the defendant shall produce the requested information related to prior accidents, complaints, and litigation to the extent that they relate to fires caused by under-the-counter dryers manufactured by the defendant.

> E.    Other Information: Interrogatory 12; Requests 4, 5, 9, 16, 28

The plaintiff also requests other relevant documents, such as the photographs of the scene taken by agents of the defendants and the reports produced by them, and the documents cited in the defendant's Rule 26 Disclosures supporting its defense. The defendant contends that it has produced these documents, but the plaintiff denies this. The defendant shall produce the requested documents to the extent they are related to the Product or explain its inability to do so.

For example, Request 5 seeks "[a] complete and true copy of

the entire claim and/or investigative file retained by Defendant or on Defendant's behalf by any claims adjusting service concerning the 2008 dryer fire which occurred on the Oleg Cassini property." (Vytell Decl., ¶ 35). The defendant contends that it has provided the claims file as well as the photographs taken. (Greiper. Aff., ¶ 18). The plaintiff argues that the defendant did not produce reports of Tom Bajzek, Raymond Negron, and Jonathan P. Derow, who were hired to investigate the fire. (Reply Declaration of Nicholas A. Vytell dated Jan. 23, 2013, ¶ 26). If the defendant possesses such reports, it shall produce them; otherwise, the defendant shall submit an affidavit explaining why they are not in its possession.

Conclusion

Oleg Cassini's motion to compel (Docket no. 20) is granted in part and denied in part to the extent indicated above. Electrolux shall respond to the plaintiff's discovery requests as set forth in this order by February 28, 2013.


SO ORDERED.


JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          February 7, 2013

8

Copies mailed this date:

Timothy Boyd Parlin, Esq.
Nicholas A. Vytell, Esq.
Carroll, McNulty & Kull L.L.C.
120 Mountain View Boulevard
Basking Ridge, NJ 07920

Christopher P. Kelly, Esq.
Reppert Kelly & Satriale, LLC
120 Mountain View Boulevard
Basking Ridge, NJ 07920

John P. Freedenberg, Esq.
Goldberg Segella LLP
665 Main Street, Suite 400
Buffalo, New York 14203

Marianne Arcieri, Esq.
Goldberg Segalla LLP
11 Martine Avenue, Suite 750
White Plains, NY 16060

# Exhibit B

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

OLEG CASSINI, INC.,

Plaintiff,

vs.

ELECTROLUX HOME PRODUCTS, INC.

Defendant

11-CV-1237 (JCF)(EHG)

**DEFENDANT'S
RESPONSES TO
PLAINTIFF'S DISCOVERY
DEMANDS**

------------------------------------------------------------

Defendant, Electrolux Home Products, Inc. ("Defendant"), by and through its counsel, hereby responds to Plaintiff's Discovery Demands as follows:

Sales, Revenue and Profit:

1.      Sean Hayes is the person with knowledge of Defendant's sales, revenue and profits from the sales of all under the counter dryers from the year 2000 to present.

Prior Accidents

2.      Attached, as Exhibit A, are the claim reports, photographs and abstracts of prior claims as they relate to fires of under the counter dryers manufactured by the Defendant.

Claim File 2008 Fire

3.      Attached is the claim file (Exhibit B) and photographs (Exhibit C) relating to the 2008 fire. The Affidavit of Ellen H. Greiper attesting to the fact that no investigation reports were created is also attached.

Dated: February 28, 2013

GOLDBERG SEGALLA LLP

BY: _____

ELLEN GREIPER [EG-4027]
100 Garden City Plaza – Suite 225
Garden City, NY 11530-3203
Telephone:  516-281-9800
Facsimile:  516-281-9801
egreiper@goldbergsegalla.com

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------

OLEG CASSINI, INC.,                                    11-CV-1237 (JCF)(EHG)

                              Plaintiff,

vs.                                                    **AFFIDAVIT**

ELECTROLUX HOME PRODUCTS, INC.

                              Defendant

-----------------------------------------------------------

ELLEN H. GREIPER, ESQ., an attorney duly admitted to practice as such in the Courts of the State of New York hereby affirms the following based upon my knowledge of the file materials kept in my office.

1.      I am counsel for Electrolux Home Products, Inc. in the above referenced matter.

2.      I have done a search of the entire file maintained by our office and have found that we have no reports by Tom Bajzek, Raymond Negron, or Jonathan P. Derow.

3.      I have also spoken with personal counsel for Electrolux Home Products, Inc. and they too have conducted a thorough search of their files and no reports were found.

4.      I have communicated with Tom Bajzek, who has also confirmed that no reports were created as a result of the investigation of the 2008 file.

4.      The undersigned has provided the entire contents of the 2008 claim file.

Dated: February 28, 2013

GOLDBERG SEGALLA LLP

BY: _____

ELLEN GREIPER [EG-4027]
100 Garden City Plaza – Suite 225
Garden City, NY 11530-3203
Telephone:  516-281-9800
Facsimile:  516-281-9801
egreiper@goldbergsegalla.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
OLEG CASSINI, INC.,

                    Plaintiff,

    vs.                            11-CV-1237 (JCF)(EHG)

ELECTROLUX HOME PRODUCTS, INC.
                Defendant

--------------------------------------------------------

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within **RESPONSE TO PLAINTIFF'S DISCOVERY DEMANDS** in the above-captioned matter was served upon the following-named persons on the 28th day of February, 2013, via e-mail and overnight mail:

      J. Vincent Reppert, Esq.
      Reppert Kelly, LLC
      120 Mountain View Boulevard
      P.O. Box 509
      Basking Ridge, New Jersey  07920
      Jvreppert@repperkelly.com

      Nicholas A. Vytell, Esq.
      Carroll, McNulty & Kull, LLC
      120 Mountain View Boulevard
      PO Box 650
      Baskin Ridge, NJ 07920
      Nvytell@cmk.com

Dated: February 28, 2013

                           GOLDBERG SEGALLA LLP

                           BY: _____
                             ELLEN GREIPER [EG-4027]
                           100 Garden City Plaza – Suite 225
                           Garden City, NY 11530-3203
                           Telephone:  516-281-9800
                           Facsimile:  516-281-9801
                           egreiper@goldbergsegalla.com

# Exhibit C

## REPPERT KELLY, LLC

### COUNSELORS AT LAW

120 MOUNTAIN VIEW BOULEVARD
POST OFFICE BOX 509
BASKING RIDGE, NEW JERSEY 07920
TELEPHONE:   (908) 605-2120
FACSIMILE:   (908) 605-2121

WRITER'S EMAIL ADDRESS
JVREPPERT@REPPERTKELLY.COM

570 LEXINGTON AVENUE
8TH FLOOR
NEW YORK, NEW YORK 10022
TELEPHONE:   (212) 490-0988
FACSIMILE:   (212) 490-0287
WWW.REPPERTKELLY.COM

March 28, 2013

**VIA EMAIL & REGULAR MAIL**
Michael J. Hopkins, Esq.
Law Office of Robert A. Stutman, P.C.
501 Office Center Drive
Suite 300
Fort Washington, Pennsylvania 19034

> Re:  Oleg Cassini, Inc. v. Electrolux Home Products, Inc. d/b/a Frigidaire
> United States District Court
> Southern District of New York
> Civil Action No.:  11 Civ. 1237 (LGS)(JCF)

Dear Mr. Hopkins:

This firm represents Plaintiff, Oleg Cassini, Inc. in connection with the above-referenced action.  We enclose herewith a Subpoena which is being simultaneously served by Guaranteed Subpoena Service.

Please feel free to contact us for specifics regarding the logistics of the production.  Thank you very much for your courtesy and cooperation in this regard.

Very truly yours,

J. Vincent Reppert

Enclosure
cc:   Ellen H. Greiper, Esq. (via email & regular mail)
     Nicholas A. Vytell, Esq. (via email only)

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | | |
|---|---|---|
| OLEG CASSINI, INC., | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    11-1237(LGS)(JCF) |
| ELECTOLUX HOME PRODUCTS, INC. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Michael J. Hopkins, Esq. Law Office of Robert A. Stutman, P.C.
501 Office Center Drive, Suite 300 Fort Washington, PA 19034

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: Any and all non-privileged portions of your file related to the action captioned "Donegal Mutual Insurance Co. a/s/o Vanessa Schantz v. Electrolux North America", previously pending in the United States District Court for the Middle District of Pennsylvania under Civil Action No. 1:08-2171 including, without limitation, all discovery demands and responses, expert reports and disclosures, and deposition transcripts.

| Place:  Reppert Kelly, LLC | Date and Time: |
|---|---|
| 120 Mountain View Blvd. P.O. Box 509 Basking Ridge, NJ 07920 | 04/15/2013 11:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    03/28/2013

CLERK OF COURT

OR    *J. Vincent Reppert*

_____          _____
*Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
PLAINTIFF, OLEG CASSINI, INC.                                , who issues or requests this subpoena, are:
J. VINCENT REPPERT, ESQ.REPPERT KELLY, LLC
120 MOUNTAIN VIEW BLVD., P.O. BOX 650 BASKING RIDGE, NEW JERSEY 07920
TEL. 908.605.2120 FAX 908.605.2121

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   11-1237(LGS)(JCF)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# Exhibit D

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLEG CASSINI, INC., | Civil Action No. 11-1237(AJN)(JCF) |
| Plaintiff, | |
| v. | **DECLARATION OF** |
| | **JOHN J. LENTINI, CFI, D-ABC** |
| ELECTROLUX HOME PRODUCTS, INC. d/b/a FRIGIDAIRE, | |
| Defendants. | |

JOHN J. LENTINI, CFI, D-ABC, declares under penalty of perjury, as follows:

1.      I am the President and the Principal Investigator for Scientific Fire Analysis, LLC. I am an expert in scientific fire analysis and a true and accurate copy of my curriculum vitae is attached hereto as **Exhibit A**.

2.      I have been retained by counsel for Plaintiff, Oleg Cassini, Inc. ("OCI"), in connection with the above-referenced action arising out of a dryer fire in August 2008. The source of that fire was a Frigidaire Gallery Supreme Series under-the-counter clothes dryer manufactured by Defendant, Electrolux Home Products, Inc. ("Defendant"). Due to the damage caused by the fire, it is difficult to identify the Product's model number; however, upon information and belief, Defendant has previously identified it as model number GSEQ642AS.

3.      Although the investigation into this matter is ongoing, I have identified the following elements and/or components of the dryer as having caused and/or contributed to the fire at issue:

- A single point rear drum bearing assembly;

- An electric heating coil located directly behind the drum;

1

- Lack of any passive guard to prevent contact between the drum assembly and the heating coil; and

- Lack of sufficient warnings regarding potential bearing failure and/or instructions on bearing maintenance.

4.     Upon information and belief, Electrolux manufactures clothes dryers that are sold under their own name, as well as Frigidaire, White-Westinghouse, Imperial, and others. Without having access to the specifications for all electric-dryers manufactured by Electrolux it is impossible to identify the specific model numbers of other dryers having the same defective elements and/or components identified above. Upon information and belief, however, Electrolux used a nearly identical design in most or all of the electric dryers it manufactured from the early-1990's until recently.

5.     In order to fully investigate this matter, including Electrolux's knowledge of the defective elements and/or components, I need to review, and have requested that counsel obtain, records from Electrolux regarding testing, safety notices, recalls, service notices, customer complaints, warranty claims, and, most importantly, documents related to other fires occurring in dryers having the above-referenced elements and/or components.   These documents are extremely important to my ability to fully assess this matter.

6.     In addition, I have been provided with copies of photographs taken by Electrolux in connection with its examination of the dryer involved in this action as well as photographs of the dryer involved in an earlier fire that occurred at the OCI property in 2004. The resolution of these copies is extremely poor. Since Electrolux was the first to investigate both the 2004 and 2008 fires and took photographs of the dryer and its components after each fire, it is critical that I am able to review quality reproductions of those photographs.  It is now nearly universal in fire

2

investigations to save photographs electronically as JPEG's or other similar format. When photographs are produced in JPEG format, significant additional information is stored (over traditional hardcopy productions) that allows the end-user to enlarge or otherwise enhance the photograph without distortion. This allows the end-user to observe a level of detail that is not possible with hardcopy photographs. Accordingly, it is important that Electrolux produce all of its photographs in JPEG or other similar electronic format for my review.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

Executed on April 12, 2013,

Islamorada, Florida

JOHN J. LENTINI, CFI, D-ABC
Declarant

3

# Exhibit A



# Resume of
# John J. Lentini, CFI, D-ABC

### Scientific Fire Analysis, LLC
### 88005 Overseas Highway, #10-134
### Islamorada, FL  33036
### (770) 815-6392   scientific.fire@yahoo.com

## Capabilities

He can investigate fire or explosion scenes, locate the point of origin, and chemically determine the presence of flammable liquids or explosives. He can evaluate the validity of the work of other investigators through review of reports, testimony, photographs and other data. He is familiar with fire and building codes and can determine whether a structure, product, service or installation met applicable code requirements prior to a fire or other loss. He is capable of performing all types of chemical and instrumental analyses, and giving expert testimony as to the results of his investigations and analyses.

## Scientific Fire Analysis Responsibilities

President and Principal Investigator. Conducts preliminary evaluations of customer problems. Conducts, supervises or reviews investigations in the area of fire, arson, explosion, and asphyxiation, including review of chemical analysis issues. Prepares and presents expert testimony. Provides litigation support. Provides training to fire investigators, fire litigators and the public.

## Education

B.A. in the Natural Sciences (Chemistry, Biology, Physics), New College, Sarasota, FL, June 1973.
Postgraduate courses in Chemistry and Criminal Investigation, University of Akron, OH, 1973-74.
Twenty credit hours Graduate Level Chemistry, Georgia State University, Atlanta, GA, 1979-80.

## Training

Short Course in Instrumental Analysis, F.B.I. Academy, Quantico, VA, 1976.
Seminar on Arson and Fraud Investigation, University of Alabama at Birmingham, 1979.
Seminar on Gas Fires and Explosions, University of Alabama at Birmingham, 1980.
33rd, 35th, 37th, 39th, 40th, 42nd and 59th International Association of Arson Investigators Seminars, 1982-91.
Southeast Arson Seminar, University of Georgia, 1979-84, 1996, 2002.
1st, 2nd and 3rd Int'l Symposia on Recent Advances in Arson Analysis and Detection, 1982, 88, 90.
American Academy of Forensic Sciences (AAFS), Annual Meetings, 1988-2011.
National Fire Protection Association (NFPA) Life Safety Code Seminar, Nashville, TN, 1991.
IAAI Electrical Fire Investigation Seminar, Atlanta, GA 1991.
AAFS Workshop on Contemporary Issues of Fire Investigation and Analysis (Panelist) Seattle, WA, 1995.
FBI International Symposium on the Forensic Aspects of Arson Investigations, Fairfax, VA, 1995.
Georgia Fire Investigators Association (GFIA) Seminar on Appliance Fires, Decatur, GA, 1997.
Workshop on Fire Investigations, Forensic Science Society, Harrogate, England, 1997.
Anglo-American Fire Investigation Conference, Brunel University, Uxbridge, England, 1997.
Forensic Fire Engineering and Failure Analysis, Society of Fire Protection Engineers (SFPE), 1998.
International Fire Investigation Conference, Brunel University, Uxbridge, England, 1999.
Fire Litigation Seminar, National Association of Fire Investigators (NAFI)/NFPA, Sarasota, FL, 2000.
Lightning 101, Global Atmospherics, Inc., Atlanta, GA, 2000.
Technical Working Group on Fire and Explosion Investigations, 2nd, 3rd and 4th Annual Symposia, Orlando, FL, 2002-2004.
Fire Dynamics Seminar, NFPA Technical Committee on Fire Investigations, Baltimore, MD, 2003.

**Training (continued)**

First International Symposium on Fire Investigation, Fire Service College, Moreton, England, 2004.
10th International Fire Science & Engineering Conference (Interflam), Edinburgh, Scotland, 2004.
Introduction to Fire Dynamics Simulator and Smokeview, SFPE, Chicago, IL, 2004.
International Fire Investigation Conference, Brunel University, Uxbridge, England, 2005.
The Scientific Method for Fire and Explosion Investigations, CFI Trainer.net, 2006.
Second International Symposium on Fire Investigation, University of Cincinnati, Cincinnati OH, 2006.
Third International Symposium on Fire Investigation, University of Cincinnati, Cincinnati OH, 2008.
Introduction to Fire Dynamics and Modeling, CFI Trainer.net, 2008.
A Ventilation-Focused Approach to the Impact of Building Structures and Systems on Fire
    Development, CFI Trainer.net, 2009.
Post Flashover Fires, CFI Trainer.net, 2009.
Motive, Means and Opportunity: Determining Responsibility in an Arson Case, CFI Trainer.net, 2010.
Fourth International Symposium on Fire Investigation, University of Maryland, Columbia, MD, 2010.
International Association of Arson Investigators Annual Training Conference, Las Vegas, NV, 2011.
Evidence Examination: What Happens at the Lab?, CFI Trainer.net, 2011.
Understanding Fire Through the Candle Experiments, CFI Trainer.net, 2011.
Fifth International Symposium on Fire Investigation, University of Maryland, Columbia, MD, 2012.

**Professional Certifications and Licensure**

He holds certifications from both the International Association of Arson Investigators (IAAI) and the National Association of Fire Investigators (NAFI). He is also a certified Diplomate of the American Board of Criminalistics, with a specialty in Fire Debris Analysis.

He holds Florida private investigator's license number C 2600083. Florida has reciprocal license agreements with the following states: CA, GA, LA, NC, OK, TN, VA.

**Experience**

**Applied Technical Services, Inc.** 1978-2006
Manager, Fire Investigations. Authored over 3,000 technical reports. Supervised two fire investigators and an electrical engineer. Served as project manager for major fire investigations. Conducted site inspections, chemical analyses, designed and conducted physical experiments to re-create fire scenarios. Provided training, consulting and expert witness testimony.

**Metallurgical Engineers of Atlanta** May-December, 1977
Fire scene inspection. Chemical analysis of fire debris. Quantitative chemical and physical analysis on all types of metal. Radiographic inspection of fittings and welds.

**State of Georgia Crime Laboratory** August 1974 - May 1977
Qualitative and quantitative analysis of all types of physical evidence associated with violent and/or property crimes, and testifying to the results of such analyses. Responding statewide to conduct field investigations for law enforcement agencies. Instruction of law enforcement officers in the collection and preservation of physical evidence.

**Courtroom Experience**

Since 1975, he has given expert testimony in over two hundred cases in civil and criminal court in several states and in the Federal Courts. He has testified for both Plaintiffs and Defendants, and has twice served as a neutral expert hired to advise the court. A schedule of testimony provided since 2000, both in trial and in depositions, is available upon request.

## Professional Associations

Member, American Academy of Forensic Sciences President's Panel on Scientific Integrity, 2009.
Vice Chair, ASTM Committee E30 on Forensic Sciences, elected 1995, re-elected 1997 and 2005.
Chair, ASTM Committee E30 on Forensic Sciences, elected 1999, re-elected 2001 and 2003.
Chair, ASTM Subcommittee E 30.01 on Criminalistics, 1991-1995.
Director, American Board of Criminalistics (ABC), elected 1993, re-elected 1996.
Chair, ABC Proficiency Administration Committee, 1993-1999.
Fellow of the American Academy of Forensic Sciences (AAFS) 1995-present. (Member since 1988)
Chair, AAFS Criminalistics Section Nominating Committee, 1999-2007.
Member, Editorial Board, *Journal of Forensic Sciences*, 2003-present.
Peer Reviewer, *Forensic Science International*, 2006-present.
Member, National Fire Protection Association (NFPA) Technical Committee 921 on Fire
     Investigations, 1996-present. (Representing ASTM Committee E30 on Forensic Sciences)
Member, NFPA Technical Committee 1033 on Fire Investigator Professional Qualifications, 2012-present.
Member, Scientific Working Group on Fire and Explosion Investigations (SWGFEX), 1997-present.
Planning Panel Member, U. S. Dept. of Justice, NIJ Technical Working Group on Fire
     Investigations, 1997-2000.
Peer Reviewer, U. S. Dept. of Justice, NIJ-Office of Science & Technology, 2002, 2007-present.
Member of the National Association of Fire Investigators (NAFI), 1996-present.
Member of the International Association of Arson Investigators (IAAI), 1978-2001, 2008-present.
Member of the Florida Chapter of the IAAI, 2008-present.
Chair, IAAI Forensic Science Committee, 1988-1991.
Member of the Metro Atlanta Fire Investigators Association, 1978-2007.  President, 1981.
Member of the American Chemical Society, 1978-present.

## Publications

### Books

*Scientific Protocols for Fire Investigation*, First Edition, 2006,
     Second Edition, 2012, CRC Press, Boca Raton, FL.

### Book Chapters

*Encyclopedia of Forensic Sciences, 2ⁿᵈ Edition* contributor of three entries ("Evidence Collection at Fire
     Scenes;" " Fire Scene Inspection Methodology;" "Fire Patterns and Their Interpretation") edited by Jay
     Siegel, Pekka Saukko and Max Houck, Academic Press (Elsevier), London, 2013.
"Fire Scene Investigation and Laboratory Analysis of Fire Debris," Chapter 3.5 in *Forensic Science,
     Current Issues, Future Directions,* edited by Douglas Ubelaker, John Wiley & Sons, Hoboken,
     NJ, 2013.
"Analysis of Fire Debris," Chapter 3 in *Fire Chemistry Handbook*, edited by Lawrence Kobilinsky
     John Wiley & Sons, Hoboken, NJ, 2012.
"Fires, Arsons and Explosions," Chapter 39 in *Modern Scientific Evidence: The Law and Science
     of Expert Testimony*, edited by Faigman, Kaye, Saks and Sanders, (2011 Editor: Erin Murphy) West
     Publishing Co., St. Paul, MN, 1997, (Previous revisions: 2001, 2007.)
"Basic Fire Science," Chapter 3 and "Fire Patterns," Chapter 4 in *Fire Investigator Principles and Practice
     to NFPA 921 and 1033. 3rd Edition*. IAFC, IAAI, NFPA and Jones and Bartlett, publishers, 2011. (both
     chapters co-authored with Jeff Spaulding.)
*Wiley Encyclopedia of Forensic Science*, contributor of five entries ("Arson Investigation:
     Misconceptions and Mythology;" " Fire: Chemistry of;" "Fire: Dynamics and Pattern Production;" "Fire:
     Scene Investigation;" "Fire Debris: Laboratory Analysis of") and section editor for Fire and Explosives
     entries, edited by Allan Jamieson and Andre Moenssens, Wiley & Sons, West Sussex, UK, 2009.
"Forensic Arson Investigation," McGraw-Hill *Yearbook of Science and Technology*, 2003.

## Standards

> *NFPA 921, Guide for Fire and Explosion Investigations*, NFPA, Quincy, MA, Contributor to the 1995, 1998, 2001, 2004, 2008 and 2011 editions as principal committee member.
>
> *Fire and Arson Scene Evidence: A Guide for Public Safety Personnel*, National Institute of Justice Office of Justice Programs, USDOJ Publication Number NCJ 181584, Contributor to the document as a member of the Editorial Board.
>
> "Standard Test Method for Flammable or Combustible Liquid Residues in Extracts from Samples of Fire Debris by Gas Chromatography," ASTM E 1387-90. Principal Author as Task Group Coordinator.
>
> "Guidelines for Laboratories Performing Chemical and Instrumental Analysis of Fire Debris Samples," Principal author as Co-Chair of IAAI Forensic Science Committee, June 1988.

## Peer Reviewed Publications

> "Forensic Science Standards: Where They Come From and How They Are Used," *Forensic Science Policy and Management: An International Journal*, Vol. 1, No. 1, February 2009.
>
> "Persistence of Floor Coating Solvents," *J. Forensic Sciences*, Vol. 46, No. 6, November 2001.
>
> "The Petroleum-Laced Background," (co-authored with Julia Dolan and Cheryl Cherry), *J. Forensic Sciences*, Vol. 45, No. 5, September 2000.
>
> "A Calculated Arson," *The Fire and Arson Investigator*, Vol. 49, No. 3, April 1999.
>
> "Differentiation of Asphalt and Smoke Condensates from Liquid Petroleum Distillates Using GC/MS," *J. Forensic Sciences*, Vol. 43, No. 1, January 1998.
>
> "Comparison of the Eluting Efficiency of Carbon Disulfide with Diethyl Ether: The Case for Laboratory Safety," (co-authored with Dr. Andrew T. Armstrong), *J. Forensic Sciences*, Vol. 42, No. 2, March 1997.
>
> "An Improved Method of Obtaining Ion Profiles From Ignitable Liquid Residue Samples," *FBI International Symposium on the Forensic Aspects of Arson Investigations*, Fairfax, VA, August 1, 1995.
>
> "ASTM Standards for Forensic Sciences," *J. Forensic Sciences*, Vol. 40, No. 1, January 1995
>
> "Behavior of Glass at Elevated Temperature," *J. Forensic Sciences*, Vol. 37, No. 5, September 1992.
>
> "Baseline Characteristics of Residential Structures Which Have Burned to Completion: The Oakland Experience," (co-authored with David M. Smith, C.F.I. and Dr. Richard W. Henderson, C.F.I.), *Fire Technology*, Vol. 28, No. 3, August 1992.

## Editorial-Reviewed Publications

> "Totality Of The Evidence" Or Contextual Bias: Where Do You Draw The Line? *Proceedings of the 5th Int'l Symposium on Fire Investigations Science and Technology* (ISFI), NAFI, Sarasota, FL, 2012.
>
> "The Evolution of Fire Investigation and Its Impact on Arson Cases," *Criminal Justice*, American Bar Association, Vol. 27, No. 1, Spring 2012
>
> "Ignitable Liquid Residue Source Elimination by Molecular Weight Estimation," *Proceedings of the American Academy of Forensic Sciences*, AAFS, Colorado Springs, CO, 2102
>
> "Arson probes: Instinct giving way to modern science," *Journal of Insurance Fraud in America*, Vol. 2, No. 1, Coalition Against Insurance Fraud, Washington, DC, 2011.
>
> "'Progress' in Fire Investigation: Moving from Witchcraft and Folklore to the Misuse of Models and the Abuse of Science," *Proceedings of the 4th International Symposium on Fire Investigations Science and Technology* (ISFI), NAFI, Sarasota, FL, 2010.
>
> "Toward a More Scientific Determination: Minimizing Expectation Bias in Fire Investigations," *Proceedings of the 3rd International Symposium on Fire Investigations Science and Technology* (ISFI), NAFI, Sarasota, FL, 2008.
>
> "The Standard of Care in Fire Investigation," *Canadian Association of Fire Investigators Journal*, Spring 2007.

**Editorial-Reviewed Publications (continued)**

"Report on the Peer Review of the Expert Testimony in the Cases of *State of Texas v. Cameron Todd Willingham* and *State of Texas v. Ernest Ray Willis*." (Co-authored with Douglas J. Carpenter, Daniel L. Churchward, David M. Smith and Michael A. McKenzie), Available at www.innocenceproject.org.

"The Mythology of Arson Investigation," *Proceedings of the 2nd International Symposium on Fire Investigations Science and Technology* (ISFI), NAFI, Sarasota, FL, 2006.

"What You Don't Know Can Hurt You: How Do You Know Your Lab Has It Right?" *The Fire and Arson Investigator,* Vol. 53, No. 3, April, 2003.

"Unconventional Wisdom: The Lessons of Oakland," *The Fire and Arson Investigator,* Vol. 43, No. 4, June 1993.

"The Lime Street Fire: Another Perspective," *The Fire and Arson Investigator,* Vol. 43, No. 1, Sept. 1992.

"Melted Steel: How Important?" (co-authored with J. Finis McCarver, P.E.), *The National Fire and Arson Report,* Vol. 10, No. 4, August 1992.

"The Behavior of Flammable and Combustible Liquids," (co-authored with Laurel V. Waters), *The Fire and Arson Investigator,* Vol. 42, No. 1, September 1991.

"Appliance Fires: Determining Responsibility," (co-authored with R.I. Underwood, P.E.), The *National Fire and Arson Report,* Vol. 7, No. 2, April 1989.

**Selected Presentations (1996-Present)**

"Scientific Protocols for Fire Investigation," Oregon Chapter IAAI, January 29-February 1, 2013, Grants Pass, OR.

"Totality Of The Evidence" Or Contextual Bias: Where Do You Draw The Line? 5th International Symposium on Fire Investigations Science and Technology (ISFI), October 15, 2012, Columbia, MD

"Successful Challenges to BS (Bad Science) in Bogus Arson Cases," New York State Bar Association, Forensics and the Law, October 12, 2012, New York, NY

"Challenges to Accurate Fire Cause Determinations," Forensics: Science Policies to Increase Confidence, briefing for congressional staffers sponsored by ACS, September 26, 2012, Washington, DC

"Fire and Innocence: Using Good Science to Overcome Witchcraft," American Chemical Society, Division of Chemistry and the Law, August 20, 2012, Philadelphia, PA

"Arson Investigation and Litigation," 2012 Innocence Network Conference, UMKC School of Law, March 31, 2012 Kansas City, MO.

"Progress in the Investigation of Fire Scene Evidence," New Mexico State Bar CLE, March 30, 2012 Albuquerque, NM.

"Ignitable Liquid Residue Source Elimination by Molecular Weight Estimation," American Academy of Forensic Sciences (AAFS) Criminalistics Section, February 24, 2012, Atlanta, GA.

"Scientific Protocols for Fire Investigation," Arizona Chapter IAAI, July 13-15, 2011, Prescott, AZ.

"Fire and Science," "The Mythology of Arson Investigation," "Sources of Error in Fire Investigation," Pennsylvania Association of Arson Investigators, June 6 and 7, 2011, State College, PA.

"The Questionable Validity of Fire Origin Determination," ABA Criminal Justice Section, 2nd Annual Prescription for Criminal Justice Forensics, Fordham University School of Law June 3, 2011, New York, NY.

"'Progress' In Fire Investigation: Moving from Witchcraft and Folklore to the Misuse of Models and the Abuse of Science," 4th International Symposium on Fire Investigations Science and Technology, (ISFI) September 28, 2010, Columbia, MD.

"Rising From the Ashes -- What We Have Learned From the Cameron Todd Willingham Case," National Institute of Justice (NIJ) Annual Conference, June 16, 2010, Arlington, VA.

**Selected Presentations (continued)**

"Fire Investigation Reviews: How It Looks From The 'Other' Side" 61st Annual Training Course, International Association of Arson Investigators, May 18, 2010, Orlando, FL.

"Evaluating Arson Evidence: Avoiding Wrongful Convictions," Joint Judicial and Senior Manager's Spring Conference, The Role of the Court in an Age of Developing Science and Technology, May 7, 2010, Washington, D.C.

"Post conviction Strategies in Arson Cases," NACDL's Litigating Non-DNA Post-Conviction Innocence Cases Training Program, April 15, 2010, Atlanta, GA.

"Avoiding Wrongful Convictions: Proving the Corpus Delicti," AAFS Jurisprudence Section, February 26, 2010, Seattle, WA.

"Meeting the Challenge of the NRC Report: Producing Meaningful Mandatory Standards for Forensic Science," AAFS, Criminalistics Section, February 24, 2010, Seattle, WA.

"Minimizing Expectation Bias in Fire Investigations," Workshop # 18, AAFS, February 23, 2010, Seattle, WA.

"Fire Investigation in the 21st Century," AOUSC Sixth National Seminar on Forensic Evidence and the Law, January 7, 2010, San Diego, CA.

"It's All About the Science: Defense of a Large Fire Loss," Property Loss Research Bureau 2009 Large Loss Conference, November 3, 2009, Tampa FL.

"Myths and Misconceptions of Fire Investigation," "Fire Investigation in the 21st Century," 64th Annual Florida Arson Symposium, October 19, 2009, Orlando, FL.

"Forensics Under Fire-Case in Point," TCCA Actual Innocence Conference, Center for American and International Law, August 18, 2009, Plano, TX.

"Fire Investigation in the 21st Century," Ontario Fire College, May 14, 2009, Gravenhurst, Ontario.

"Forensic Science in the 21st Century: The National Academy of Sciences Report and Beyond," Sandra Day O'Connor College of Law at the University of Arizona, April 4, 2009, Tempe, AZ.

"The State of the Art in Fire Investigation," Inaugural Lecture Series, Centre for Forensic Science and Medicine, University of Toronto Medical School, February 27, 2009, Toronto, Ontario.

"Watching Paint Dry, Testing Spontaneous Ignition Hypotheses, " AAFS Criminalistics Section February 20, 2009, Denver, CO.

"Forensic Science Standards: Where They Come From and How They Are Used," Workshop # 18, AAFS, February 17, 2009, Denver, CO.

"Origin: A Fire Investigator's Most Important Hypothesis," Canadian National Advanced Fire, Arson and Explosion Investigation Training Program, October 28, 2008, Toronto, Ontario.

"Evaluating Arson Cases: Avoiding Wrongful Prosecutions and Convictions," 63rd Annual Short Course for Prosecuting Attorneys, Northwestern University School of Law, July 22, 2008, Chicago, IL.

"Toward a More Scientific Determination: Minimizing Expectation Bias in Fire Investigations," 3rd ISFI, May 20, 2008, Cincinnati, OH.

"The Mythology of Arson Investigation," 59th Annual Training Course, International Association of Arson Investigators, April 30, 2008, Denver, CO.

"Sources of Error in Fire Investigation," AAFS Criminalistics Section, February 21, 2008, Washington, DC.

"Evaluating Arson Cases: Avoiding Wrongful Prosecutions and Convictions,"62nd Annual Short Course for Prosecuting Attorneys, Northwestern University School of Law, July 24, 2007, Chicago, IL.

"The State of the Art in Fire Investigation," National Academy of Sciences, Committee on Identifying the Needs of the Forensic Sciences Community, April 23, 2007, Washington, D.C.

"Critical Evaluation of Arson Charges," California Attorneys for Criminal Justice, California Public Defenders Association Capital Case Defense Seminar, February 17, 2007, Monterey, CA.

**Selected Presentations (continued)**

"The Mythology of Arson Investigation," 2nd ISFI, June 27, 2006, Cincinnati, OH.

"Critical Evaluation of Arson Charges," Third National Seminar on Forensic Evidence and the Criminal Law, Administrative Office of the U. S. Courts, January 28, 2006, San Antonio, TX.

"Sources of Error in Fire Investigation," Canadian National Advanced Fire, Arson And Explosion Investigation Training Program, October 25, 2005, Toronto, Ontario.

"NFPA 921, Design and Development," Live, Learn & Pass It On, Training Conference, Gardiner Associates, Brunel University, June 29, 2005, Uxbridge, England.

"Distinguishing Fact from Fantasy in Arson Investigations," Capital Cases: Third Seminar Series, Illinois Supreme Court Committee on Capital Cases, May 13, 2005, Chicago, IL.

"Laboratory Analysis of Fire Debris: Why It's Important, How It Works, and How to Evaluate a Lab," Insurance Committee for Arson Control, 15th National Training Seminar, February 3, 2004, Sandestin, FL.

"Misadventures in Fire Investigations: Common Features, Common Errors, and How to Spot a Dog," AAFS, Interdisciplinary Session, February 20, 2004, Dallas, TX.

"Bogus Opinion Evidence: Exposing It Without DNA," AAFS, Plenary Session, February 18, 2004, Dallas, TX.

"Measurement, Certification, Accreditation," 30th Annual FBI Symposium on Crime Laboratory Development, Sponsored by the FBI Laboratory. September 25, 2002, St. Louis, MO.

"Standards Development for Fire Investigations," Southeastern Arson Seminar, Sponsored by the Georgia State Fire Marshal and the Georgia Fire Investigators Association. August 8, 2001, Brunswick, GA.

"Understanding the Opposing Expert," Southeastern Arson Seminar, Sponsored by the Georgia State Fire Marshal and the Georgia Fire Investigators Association. August 8, 2001, Brunswick, GA.

"Consensus Standards: A Priority for Forensic Science," Crime Laboratory Improvement Program (CLIP) Summit, Sponsored by the U. S. Justice Department. July 14, 2000, Washington, DC.

"The Role of Experts in Fire Litigation," Anglo-American Fire Investigation Conference, Gardiner Associates, Brunel University, June 30, 1999, Uxbridge, England.

"Accreditation, Certification and Standardization in the Forensic Sciences," AAFS Interdisciplinary Session, February 18, 1999, Orlando, FL.

"A Calculated Arson," Anglo-American Fire Investigation Conference, Gardiner Associates, Brunel University, June 15, 1997, Uxbridge, England.

"Misleading Evidence or Misreading Evidence?" Joint Meeting of the Forensic Science Society and the California Association of Criminalists, June 11, 1997, Harrogate, England.

"Forensic Science Standards: How to Write Them," AAFS, February 22, 1997, New York, NY.

"Differentiation of Asphalt and Smoke Condensates from Liquid Petroleum Products Using GC-MS,"AAFS Criminalistics Section, February 22, 1996, Nashville, TN.

## Selected Media Appearances

"Incendiary, The Willingham Case," a 2011 documentary produced by Steve Mims and Joe Bailey, Jr. Available from iTunes.

"Death by Fire," a *Frontline* documentary about the Willingham case. First aired October 19, 2010. Produced by Jessie Deeter. Available at pbs.org/wgbh/pages/frontline

"Burned," an *ABC News 20/20* episode about wrongful arson prosecutions. Produced by Tom Berman. Season 30, Episode 18. First aired May 7, 2010. Available at abc.go.com

"When Forensics Fail," a *National Geographic* documentary about the Willis case. First aired October 18, 2007. Available at video.msnbc.msn.com

## Awards

American Academy of Forensic Sciences, Criminalistics Section Special Meritorious Service Award, 2008.

Boy Scouts of America Silver Beaver Award, Atlanta Area Council, 2004.

ASTM Award of Merit, 2001.

ASTM E30 Forensic Sciences Award, 1996.

# Exhibit E


**CMK CARROLL**MC**NULTY**KULL** LLC
COUNSELLORS AT LAW

120 Mountain View Boulevard          570 Lexington Avenue
Post Office Box 650                  8th Floor
Basking Ridge, New Jersey 07920      New York, New York 10022

908 848 6300 PHONE                   212 252 0004 PHONE
908 848 6310 FAX                     212 252 0444 FAX

*Nicholas A. Vytell, Esq.*
*Direct Dial 908.848.1231*
*nvytell@cmk.com*

April 12, 2013

**VIA EMAIL & REGULAR MAIL**
Ellen H. Greiper, Esq.
Goldberg Segalla, LLP
220 Old County Road, Suite 210
Mineola, New York 11501-4293
egreiper@goldbergsegalla.com

Re:     *Oleg Cassini, Inc. v. Electrolux Home Products, Inc. d/b/a Frigidaire*
        United States District Court for the Southern District of New York
        Civil Action No.: 11 Civ. 1237 (LGS)(JCF)

Dear Ms. Greiper:

As you know, we represent Plaintiff, Oleg Cassini, Inc. ("Plaintiff" or "OCI"), in the above-referenced action. We are in receipt of Defendant, Electrolux Home Products, Inc.'s ("Defendant" or "Electrolux"), Supplemental Discovery Responses as required by the Court's Order. It is clear that your client has made little attempt to comply with the Court's Order and, instead, has elected to continue its efforts to avoid disclosure of relevant discovery. Please accept this letter as our last attempt to resolve the outstanding discovery disputes.

We set forth each of the deficiencies below and, again, implore your client to provide full and complete responses without the need for further judicial intervention. In addition, in accordance with the Court's Order, we include herewith the Declaration of John J. Lentini, CFI, D-ABC, identifying the specific components and/or elements in the dryer at issue that are relevant to this action. Accordingly, we renew our request that Defendant identify all other dryer models manufactured with these components and/or elements and provide responses that include these additional model numbers.

**Interrogatory Deficiencies**

1.      **Interrogatory 6:    Identify all persons with knowledge of all studies commissioned abroad and in the United States regarding safety testing or causation of dryer fires originating from units manufactured by the defendant.** Although the Court's Order limited Defendant's obligation to respond to the model number involved in the 2008 fire, the Court, nevertheless, required Defendant to respond to this demand. Notwithstanding the Court's Order, Defendant has still failed to provide any response. Your client is in violation of the Court's Order. Kindly provide a response immediately. Moreover, as you have now been

 **CARROLL MCNULTY KULL** LLC
COUNSELLORS AT LAW

Ellen H. Greiper, Esq.
April 12, 2013
Page 2 of 7

provided with a declaration identifying the shared similar characteristics and/or components in which Plaintiff is interested, Defendant's response should include all other model numbers with similar characteristics and/or components.  This should include all other electric dryers manufactured by Electrolux with the identified characteristics and/or components and should not be limited to the model number involved in the 2008 fire or under the counter dryer models.

2.     **Interrogatory 9:    Identify all documents reflecting all safety testing performed on the under the counter model dryers at issue, i.e. including those involved in the first and second fire.**  Although the Court's Order limited Defendant's obligation to respond to the model number involved in the 2008 fire, the Court, nevertheless, required Defendant to respond to this demand.  Notwithstanding the Court's Order, Defendant has still failed to provide any response.  Your client is in violation of the Court's Order.  Kindly provide a response immediately.  Moreover, as you have now been provided with a declaration identifying the shared similar characteristics and/or components in which Plaintiff is interested, Defendant's response should include all other model numbers with similar characteristics and/or components. This should include all other electric dryers manufactured by Electrolux with the identified characteristics and/or components and should not be limited to the model number involved in the 2008 fire or under the counter dryer models.

3.     **Interrogatory 12:    With respect to any third-party examination of Defendant's under the counter model dryer involved in the first fire, please identify: a) their address and contact information; b) all communications with any parties identified herein; c) the dates on which any and all communications and inspections took place; and d) all documents that refer or relate thereto.**  Notwithstanding the Court's Order requiring a response to this demand, Defendant has still failed to provide any response.  Your client is in violation of the Court's Order.  Kindly provide a response immediately.  If Defendant maintains that business records have been produced in lieu of a response, kindly identify them with specificity as required by Fed.R.Civ.P. 33(d).

4.     **Interrogatory 13:    State the identities and addresses of all experts and consultants used by Defendant to review and/or establish the safety of its under the counter dryers in any litigation, action or proceeding regarding the safety of its dryers.**  Notwithstanding the Court's Order requiring a response to this demand, Defendant has still identified only Carl King and has failed to provide any supplemental response.  The Court's Order did not limit Defendant's obligation to respond only to the model number at issue in the 2008 fire.  Your client is in violation of the Court's Order.  Kindly provide a response immediately.  Moreover, as you have now been provided with a declaration identifying the shared similar characteristics and/or components in which Plaintiff is interested, Defendant's response should include all other model numbers with similar characteristics and/or components. This should include all other electric dryers manufactured by Electrolux with the identified characteristics and/or components and should not be limited to the model number involved in the 2008 fire or under the counter dryer models.  If Defendant maintains that business records have been produced in lieu of a response, kindly identify them with specificity as required by Fed.R.Civ.P. 33(d).



5.    **Interrogatory 16: Please identify the names of all parties involved in any form of litigation or correspondence with Defendant relating to any product defect or damages arising out of a dryer fire from the period of January 1994 to the present.** Notwithstanding the Court's Order requiring a response to this demand, Defendant has still identified only those incidents involving the model number involved in the 2008 fire. The Court's Order did not limit Defendant's obligation to respond only to the model number at issue in the 2008 fire. Your client is in violation of the Court's Order. Kindly provide a response immediately. Moreover, as you have now been provided with a declaration identifying the shared similar characteristics and/or components in which Plaintiff is interested, Defendant's response should include all other model numbers with similar characteristics and/or components. Your client is in violation of the Court's Order. Kindly provide a response immediately. This should include all other electric dryers manufactured by Electrolux with the identified characteristics and/or components and should not be limited to the model number involved in the 2008 fire or under the counter dryer models. If Defendant maintains that business records have been produced in lieu of a response, kindly identify them with specificity as required by Fed.R.Civ.P. 33(d).

## Document Request Deficiencies

6.    **Request 1: A complete and true copy of any and all contracts or agreements entered into between Defendant and any other party to investigate and/or review the source of dryer fires on Defendant's behalf.** In response to the Court's Order requiring a response to this demand, Defendant purports to attach "all claim reports, photographs and abstracts of prior claims as they relate to fires involving under the counter dryers manufactured by the Defendant" as Exhibit A. This Exhibit of unmarked documents contains partial abstracts of four (4) claim files pertaining to Isabel Steiger, Liddy Pierre Louis, Lorraine Diblase and Kathleen Skowyra. It is incredulous that Electrolux purports that it has knowledge of only four prior dryer fires.

The Court's Order did not limit Defendant's obligation to respond only to the model number at issue in the 2008 fire or under-the-counter models. Moreover, as you have now been provided with a declaration identifying the shared similar characteristics and/or components in which Plaintiff is interested, Defendant's response should include all other model numbers with similar characteristics and/or components. This should include all other electric dryers manufactured by Electrolux with the identified characteristics and/or components and should not be limited to the model number involved in the 2008 fire or under the counter dryer models. Your client is in violation of the Court's Order. Kindly provide a response immediately.

The Exhibit A production is further deficient in that only portions of the claim files were produced. All expert reports, inspection reports, claims notes, photographs of the dryers and findings were **not provided,** despite clear references to the existence of these documents within the documents that were produced. Your client is in violation of the Court's Order. We, therefore, renew our demand for the full files related to these claims as set forth below:

 **CARROLL MCNULTY KULL** LLC
COUNSELLORS AT LAW

Ellen H. Greiper, Esq.
April 12, 2013
Page 4 of 7

    a) Kathleen Skowyr Claim: The records provided indicate that a "destructive exam was requested" and that Richard Splaine conducted an inspection on 6/30/09. Moreover, the records contain one invoice (others missing) from Splaine indicating 8 hours for a fire scene reconstruction and documentation along with a consultation with the fire marshal on 2/12/09. Furthermore, an email from Splaine to Haney dated 2/12/09 states that he will forward a description of the fire scene and CD containing photographs. Nevertheless, no inspection report, notes, or photographs were produced. These documents are required by the Court's Order and must be produced.

    b) Isabelle Steiger Claim: The documents produced reference photographs of the dryer and an investigator's report. Nevertheless, these documents were not produced. These documents are required by the Court's Order and must be produced.

    c) Lydie Pierri Louis: The documents produced are clearly incomplete. By way of example, there is a fax from Barbara Round of Electrolux dated 2/24/04 indicating 8 pages are attached. However, the documents that follow include a signature page for a letter from Antonio Posey with nothing else to indicate the contents of the fax. Kindly provide the full file related to this claim.

    d) Lorraine Diblase: The documents produced indicate that Electrolux retained NEFCO investigator, Richard O'Neill and that there was a fire scene investigation. The documents also indicate that Helen Haney's written instructions to NEFCO were "as is the usual practice, forward a summary, the photos and your billing to me by email." Nevertheless, no photographs, summary, or other investigative notes have been produced. These documents are required by the Court's Order and must be produced.

7.    **Request 2: A complete and true copy of any and all contracts or agreements entered into between Defendant and any other party hired to investigate the source of dryer fires as to units manufactured by Defendant or on Defendant's behalf.** See deficiencies noted with respect to Request 1, above.

8.    **Request 3: A complete and true copy of all memorandums, studies, reports and other related investigative materials addressing the source of dryer fires performed on Defendant's behalf.** See deficiencies noted with respect to Request 1, above. Moreover, it is particularly troubling that Defendant has still not produced any documents related to the testing conducted at the Lulea University of Technology and authored by Fredrik Kogerfelt and Emelie Svensson which was ordered by the Court.

9.    **Request 4: A complete and true copy of the entire claim and/or investigative file retained by Defendant or on Defendant's behalf by any claims adjusting service concerning the 2004 dryer fire which occurred on the Oleg Cassini property.** The Court's Order required, in part, the production of all documents responsive to this demand or an affidavit explaining why the requested documents are not in your client's possession. We have previously identified exactly those documents that were missing from Defendant's production. Notwithstanding the foregoing, Defendant has failed to provide any supplemental documents or

 **CMK** CARROLLMCNULTYKULL LLC
COUNSELLORS AT LAW

Ellen H. Greiper, Esq.
April 12, 2013
Page 5 of 7

an affidavit in conformity with the Court's Order.

We, therefore, renew our request for the production of the complete file as required by the Court's Order. To prevent any confusion, we, again, advise that this should include: i) all notes, ii) all inspection reports and related correspondence; and iii) all photographs. As you know, the Crawford & Company adjuster report clearly states "[e]nclosed for your review and analysis are the photographs obtained of this loss site in question....Please note that ***Mr. Pauk and Mr. Beckham have conducted an extensive scene investigation along with a product safety analysis, and their report will be forwarded to your [Ms. Levy's] attention.***" (Defendant 00032). This same adjuster states that his office conducted an examination at the Cassini Estate on May 12, 2004 and was "assisted by Terry Beckham of Pyrtech, Inc., their senior investigator and by Fred Paul[sic Pauk], the Product Safety Manager for Electrolux." (Defendant 00031).

It is clear that the foregoing documents have not been produced. If Defendant contends that they do have any such documents, an affidavit explaining why it is not in possession of same must be produced.

10.     **Request 5: A complete and true copy of the entire claim and/or investigative file retained by Defendant or on Defendant's behalf by any claims adjusting service concerning the 2008 dryer fire which occurred on the Oleg Cassini property.** The Court's Order required, in part, the production of all documents responsive to this demand or an affidavit explaining why the requested documents are not in your client's possession. Counsel has provided an affidavit indicating that no reports were created by Tom Bajzek, Raymond Negron, or Jonathan P. Derow as a result of the 2008 fire. While we find this revelation surprising in light of the fact that Electrolux sent each of these individuals to the OCI property to inspect the damage, we accept your representation that Defendant does not intend to rely upon these individuals or any such reports in connection with this action. We, of course, reserve the right to depose these individuals as fact witnesses regarding their inspection of the fire scene and dryer.

In addition, Defendant has produced at Exhibit C photographs purportedly related to the 2008 fire. First, as set for in the Declaration of Mr. Lentini, and as we have requested on multiple occasions, it is necessary that all photographs produced in connection with this action be produced in JPEG or other similar electronic format. It is apparent that many of the photographs produced by Defendant in this litigation have been reproduced from an electronic database maintained by Defendant and/or its agents and representatives. The ability to review these photographs in a usable format is imperative to Plaintiff's case, and there is absolutely no basis for withholding same. Accordingly, we hereby request that all photographs be produced in the foregoing format. We will, of course, similarly produce any photographs that Plaintiff or our experts may produce in this action in electronic format.

Finally, Defendant has failed to identify when the foregoing photographs were taken and by whom they were taken. In fact, it appears that the photographs produced at Exhibit C do not even relate to the 2008 fire, and, instead, are from your client's investigation of the 2004 fire. However, without the benefit of knowing when and by whom these photographs were taken, we cannot further clarify this discrepancy. Accordingly, we hereby demand that Defendant provide



the foregoing information immediately.

11.     **Request 9:   Copies of all photographs in Defendant's possession of the exterior and interior of Plaintiff's property and an indication of the date on which all photographs were taken and by whom.**  The Court's Order required, in part, the production of all documents responsive to this demand or an affidavit explaining why the requested documents are not in your client's possession.  As set forth above, the photographs attached as Exhibit C do not have any dates or indication as to when or by whom they were taken.  The same is true for the photographs produced in opposition to Plaintiff's motion to compel discovery.  Without this information, it is impossible to determine whether Defendant has fully complied with the Court's Order.  Nevertheless, it is apparent that not all photographs taken by Tom Bajzek, Raymond Negron, and Jonathan P. Derow, all of whom Plaintiff and/or Plaintiff's representatives observed taking pictures at the property.  Moreover, it appears that Defendant has improperly identified the photographs attached at Exhibit C as relating to the 2008 fire, when they are from the 2004 claim.  Accordingly, we hereby demand that all photographs in Defendant's care, custody, or control be produced immediately in JPEG or other similar electronic format.  Moreover, we request that each photograph be identified as to the date taken, the source of the photograph and the custodian of same.

12.     **Request 23:  Copies of all claim books or other type of entries maintained to record all notices, notes and memoranda kept in the daily course of business concerning fires an/or malfunctions arising out of the use of dryers manufactured by Defendant.**  Notwithstanding the Court's Order requiring a response to this demand, Defendant has still failed to provide any supplemental response.  The Court's Order did not limit Defendant's obligation to respond only to the model number at issue in the 2008 fire or under-the-counter models.  Moreover, as you have now been provided with a declaration identifying the shared similar characteristics and/or components in which Plaintiff is interested, Defendant's response should include all other model numbers with similar characteristics and/or components.  This should include all other electric dryers manufactured by Electrolux with the identified characteristics and/or components and should not be limited to the model number involved in the 2008 fire or under the counter dryer models.  Your client is in violation of the Court's Order.  Kindly provide a response immediately

13.     **Initial Disclosures:**  As you know, and as set forth in our reply to the motion to compel, Defendant's late Initial Disclosures identified numerous documents on which it intends to rely, but which have not been produced.  These included, among others, the following documents: Photographs taken of fire scene after the fire; Photographs taken of fire scene artifacts after the fire; Photographs taken of items contained in fire damaged structure following fire; Documents maintained regarding the structure where the fire at issue occurred; All product literature, plans, drawings, specifications, invoices and sales documents relating to the subject product; *All documents evidencing compliance with applicable standards*; *All documents evidencing quality control for the subject product*; *Documents reflecting testing of the subject product and any exemplar products, relative to claims to be asserted by plaintiff*; and Photographs and diagrams of the subject product and its components as designed and manufactured. (*emphasis added*).  The Court's Order required production of these documents or



**CMK** CARROLL MCNULTY KULL LLC
COUNSELLORS AT LAW

Ellen H. Greiper, Esq.
April 12, 2013
Page 7 of 7

an explanation of Defendant's inability to do so.    Notwithstanding the foregoing, no supplemental response has been provided.   Your client is in violation of the Court's Order. Kindly provide a response immediately.

Finally, in addition to its incomplete responses, the documents Defendant has produced are not in any particular order, are missing pages, and include duplicative documents clearly designed to cause undue burden and expense for Plaintiff. Defendant's productions are not Bates stamped and do not include any reference as to the particular request to which the documents are purportedly responsive in violation of Fed.R.Civ.P. 33(d). It is evident that Defendant stores many of the documents electronically and can easily access and organize them in a meaningful way so as to respond to the discovery requests.[1] Accordingly, we again request that the above-referenced deficiencies be responded to *fully*, *individually*, and, where responsive documents are being produced, *with Bates stamped documents identified with respect to a particular demand*.

As you know, the foregoing documents are long overdue. We, therefore, demand that Defendant's supplemental responses be produced within ten (10) days hereof. If we do not receive Defendant's responses, we will immediately move for an Order for sanctions and other appropriate relief.

Please be guided accordingly.

Kind Regards,

CARROLL MCNULTY & KULL LLC

Nicholas A. Vytell

Enclosures

cc     John P. Freedenberg, Esq. (*via email only*)
       J. Vincent Reppert, Esq. (*via email only*)

---

[1] A number of the documents produced have were maintained by "STARS" which has apparently maintained records in connection with the fires at issue on its database. Moreover, the photographs are electronically stored on esi-website.com Job#27656A Roll#46742 - TMB - 10/10/08.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLEG CASSINI, INC., | Civil Action No. 11-1237(AJN)(JCF) |
| Plaintiff, | |
| v. | **DECLARATION OF**<br>**JOHN J. LENTINI, CFI, D-ABC** |
| ELECTROLUX HOME PRODUCTS, INC. d/b/a FRIGIDAIRE, | |
| Defendants. | |

JOHN J. LENTINI, CFI, D-ABC, declares under penalty of perjury, as follows:

1.       I am the President and the Principal Investigator for Scientific Fire Analysis, LLC. I am an expert in scientific fire analysis and a true and accurate copy of my curriculum vitae is attached hereto as **Exhibit A**.

2.       I have been retained by counsel for Plaintiff, Oleg Cassini, Inc. ("OCI"), in connection with the above-referenced action arising out of a dryer fire in August 2008. The source of that fire was a Frigidaire Gallery Supreme Series under-the-counter clothes dryer manufactured by Defendant, Electrolux Home Products, Inc. ("Defendant"). Due to the damage caused by the fire, it is difficult to identify the Product's model number; however, upon information and belief, Defendant has previously identified it as model number GSEQ642AS.

3.       Although the investigation into this matter is ongoing, I have identified the following elements and/or components of the dryer as having caused and/or contributed to the fire at issue:

- A single point rear drum bearing assembly;

- An electric heating coil located directly behind the drum;

1

- Lack of any passive guard to prevent contact between the drum assembly and the heating coil; and

- Lack of sufficient warnings regarding potential bearing failure and/or instructions on bearing maintenance.

4.      Upon information and belief, Electrolux manufactures clothes dryers that are sold under their own name, as well as Frigidaire, White-Westinghouse, Imperial, and others. Without having access to the specifications for all electric-dryers manufactured by Electrolux it is impossible to identify the specific model numbers of other dryers having the same defective elements and/or components identified above. Upon information and belief, however, Electrolux used a nearly identical design in most or all of the electric dryers it manufactured from the early-1990's until recently.

5.      In order to fully investigate this matter, including Electrolux's knowledge of the defective elements and/or components, I need to review, and have requested that counsel obtain, records from Electrolux regarding testing, safety notices, recalls, service notices, customer complaints, warranty claims, and, most importantly, documents related to other fires occurring in dryers having the above-referenced elements and/or components. These documents are extremely important to my ability to fully assess this matter.

6.      In addition, I have been provided with copies of photographs taken by Electrolux in connection with its examination of the dryer involved in this action as well as photographs of the dryer involved in an earlier fire that occurred at the OCI property in 2004. The resolution of these copies is extremely poor. Since Electrolux was the first to investigate both the 2004 and 2008 fires and took photographs of the dryer and its components after each fire, it is critical that I am able to review quality reproductions of those photographs. It is now nearly universal in fire

2

investigations to save photographs electronically as JPEG's or other similar format. When photographs are produced in JPEG format, significant additional information is stored (over traditional hardcopy productions) that allows the end-user to enlarge or otherwise enhance the photograph without distortion. This allows the end-user to observe a level of detail that is not possible with hardcopy photographs. Accordingly, it is important that Electrolux produce all of its photographs in JPEG or other similar electronic format for my review.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

Executed on April 12, 2013,

Islamorada, Florida

_____
JOHN J. LENTINI, CFI, D-ABC
Declarant

3

# Exhibit A



**Resume of**
**John J. Lentini, CFI, D-ABC**

**Scientific Fire Analysis, LLC**
**88005 Overseas Highway, #10-134**
**Islamorada, FL  33036**
**(770) 815-6392   scientific.fire@yahoo.com**

## Capabilities

He can investigate fire or explosion scenes, locate the point of origin, and chemically determine the presence of flammable liquids or explosives. He can evaluate the validity of the work of other investigators through review of reports, testimony, photographs and other data. He is familiar with fire and building codes and can determine whether a structure, product, service or installation met applicable code requirements prior to a fire or other loss. He is capable of performing all types of chemical and instrumental analyses, and giving expert testimony as to the results of his investigations and analyses.

## Scientific Fire Analysis Responsibilities

President and Principal Investigator. Conducts preliminary evaluations of customer problems. Conducts, supervises or reviews investigations in the area of fire, arson, explosion, and asphyxiation, including review of chemical analysis issues. Prepares and presents expert testimony. Provides litigation support. Provides training to fire investigators, fire litigators and the public.

## Education

B.A. in the Natural Sciences (Chemistry, Biology, Physics), New College, Sarasota, FL, June 1973.
Postgraduate courses in Chemistry and Criminal Investigation, University of Akron, OH, 1973-74.
Twenty credit hours Graduate Level Chemistry, Georgia State University, Atlanta, GA, 1979-80.

## Training

Short Course in Instrumental Analysis, F.B.I. Academy, Quantico, VA, 1976.
Seminar on Arson and Fraud Investigation, University of Alabama at Birmingham, 1979.
Seminar on Gas Fires and Explosions, University of Alabama at Birmingham, 1980.
33rd, 35th, 37th, 39th, 40th, 42nd and 59th International Association of Arson Investigators Seminars, 1982-91.
Southeast Arson Seminar, University of Georgia, 1979-84, 1996, 2002.
1st, 2nd and 3rd Int'l Symposia on Recent Advances in Arson Analysis and Detection, 1982, 88, 90.
American Academy of Forensic Sciences (AAFS), Annual Meetings, 1988-2011.
National Fire Protection Association (NFPA) Life Safety Code Seminar, Nashville, TN, 1991.
IAAI Electrical Fire Investigation Seminar, Atlanta, GA 1991.
AAFS Workshop on Contemporary Issues of Fire Investigation and Analysis (Panelist) Seattle, WA, 1995.
FBI International Symposium on the Forensic Aspects of Arson Investigations, Fairfax, VA, 1995.
Georgia Fire Investigators Association (GFIA) Seminar on Appliance Fires, Decatur, GA, 1997.
Workshop on Fire Investigations, Forensic Science Society, Harrogate, England, 1997.
Anglo-American Fire Investigation Conference, Brunel University, Uxbridge, England, 1997.
Forensic Fire Engineering and Failure Analysis, Society of Fire Protection Engineers (SFPE), 1998.
International Fire Investigation Conference, Brunel University, Uxbridge, England, 1999.
Fire Litigation Seminar, National Association of Fire Investigators (NAFI)/NFPA, Sarasota, FL, 2000.
Lightning 101, Global Atmospherics, Inc., Atlanta, GA, 2000.
Technical Working Group on Fire and Explosion Investigations, 2nd, 3rd and 4th Annual Symposia, Orlando, FL, 2002-2004.
Fire Dynamics Seminar, NFPA Technical Committee on Fire Investigations, Baltimore, MD, 2003.

**Training (continued)**

First International Symposium on Fire Investigation, Fire Service College, Moreton, England, 2004.
10th International Fire Science & Engineering Conference (Interflam), Edinburgh, Scotland, 2004.
Introduction to Fire Dynamics Simulator and Smokeview, SFPE, Chicago, IL, 2004.
International Fire Investigation Conference, Brunel University, Uxbridge, England, 2005.
The Scientific Method for Fire and Explosion Investigations, CFI Trainer.net, 2006.
Second International Symposium on Fire Investigation, University of Cincinnati, Cincinnati OH, 2006.
Third International Symposium on Fire Investigation, University of Cincinnati, Cincinnati OH, 2008.
Introduction to Fire Dynamics and Modeling, CFI Trainer.net, 2008.
A Ventilation-Focused Approach to the Impact of Building Structures and Systems on Fire
    Development, CFI Trainer.net, 2009.
Post Flashover Fires, CFI Trainer.net, 2009.
Motive, Means and Opportunity: Determining Responsibility in an Arson Case, CFI Trainer.net, 2010.
Fourth International Symposium on Fire Investigation, University of Maryland, Columbia, MD, 2010.
International Association of Arson Investigators Annual Training Conference, Las Vegas, NV, 2011.
Evidence Examination: What Happens at the Lab?, CFI Trainer.net, 2011.
Understanding Fire Through the Candle Experiments, CFI Trainer.net, 2011.
Fifth International Symposium on Fire Investigation, University of Maryland, Columbia, MD, 2012.

**Professional Certifications and Licensure**

He holds certifications from both the International Association of Arson Investigators (IAAI) and the National Association of Fire Investigators (NAFI). He is also a certified Diplomate of the American Board of Criminalistics, with a specialty in Fire Debris Analysis.

He holds Florida private investigator's license number C 2600083. Florida has reciprocal license agreements with the following states: CA, GA, LA, NC, OK, TN, VA.

**Experience**

**Applied Technical Services, Inc.** 1978-2006
Manager, Fire Investigations. Authored over 3,000 technical reports. Supervised two fire investigators and an electrical engineer. Served as project manager for major fire investigations. Conducted site inspections, chemical analyses, designed and conducted physical experiments to re-create fire scenarios. Provided training, consulting and expert witness testimony.

**Metallurgical Engineers of Atlanta** May-December, 1977
Fire scene inspection. Chemical analysis of fire debris. Quantitative chemical and physical analysis on all types of metal. Radiographic inspection of fittings and welds.

**State of Georgia Crime Laboratory** August 1974 - May 1977
Qualitative and quantitative analysis of all types of physical evidence associated with violent and/or property crimes, and testifying to the results of such analyses. Responding statewide to conduct field investigations for law enforcement agencies. Instruction of law enforcement officers in the collection and preservation of physical evidence.

**Courtroom Experience**

Since 1975, he has given expert testimony in over two hundred cases in civil and criminal court in several states and in the Federal Courts. He has testified for both Plaintiffs and Defendants, and has twice served as a neutral expert hired to advise the court. A schedule of testimony provided since 2000, both in trial and in depositions, is available upon request.

## Professional Associations

Member, American Academy of Forensic Sciences President's Panel on Scientific Integrity, 2009.
Vice Chair, ASTM Committee E30 on Forensic Sciences, elected 1995, re-elected 1997 and 2005.
Chair, ASTM Committee E30 on Forensic Sciences, elected 1999, re-elected 2001 and 2003.
Chair, ASTM Subcommittee E 30.01 on Criminalistics, 1991-1995.
Director, American Board of Criminalistics (ABC), elected 1993, re-elected 1996.
Chair, ABC Proficiency Administration Committee, 1993-1999.
Fellow of the American Academy of Forensic Sciences (AAFS) 1995-present. (Member since 1988)
Chair, AAFS Criminalistics Section Nominating Committee, 1999-2007.
Member, Editorial Board, *Journal of Forensic Sciences*, 2003-present.
Peer Reviewer, *Forensic Science International*, 2006-present.
Member, National Fire Protection Association (NFPA) Technical Committee 921 on Fire
    Investigations, 1996-present. (Representing ASTM Committee E30 on Forensic Sciences)
Member, NFPA Technical Committee 1033 on Fire Investigator Professional Qualifications, 2012-present.
Member, Scientific Working Group on Fire and Explosion Investigations (SWGFEX), 1997-present.
Planning Panel Member, U. S. Dept. of Justice, NIJ Technical Working Group on Fire
    Investigations, 1997-2000.
Peer Reviewer, U. S. Dept. of Justice, NIJ-Office of Science & Technology, 2002, 2007-present.
Member of the National Association of Fire Investigators (NAFI), 1996-present.
Member of the International Association of Arson Investigators (IAAI), 1978-2001, 2008-present.
Member of the Florida Chapter of the IAAI, 2008-present.
Chair, IAAI Forensic Science Committee, 1988-1991.
Member of the Metro Atlanta Fire Investigators Association, 1978-2007.  President, 1981.
Member of the American Chemical Society, 1978-present.

## Publications

## Books

*Scientific Protocols for Fire Investigation*, First Edition, 2006,
    Second Edition, 2012, CRC Press, Boca Raton, FL

## Book Chapters

*Encyclopedia of Forensic Sciences, 2nd Edition* contributor of three entries ("Evidence Collection at Fire
    Scenes;" " Fire Scene Inspection Methodology;" "Fire Patterns and Their Interpretation") edited by Jay
    Siegel, Pekka Saukko and Max Houck, Academic Press (Elsevier), London, 2013.
"Fire Scene Investigation and Laboratory Analysis of Fire Debris," Chapter 3.5 in *Forensic Science,
    Current Issues, Future Directions,* edited by Douglas Ubelaker, John Wiley & Sons, Hoboken,
    NJ, 2013.
"Analysis of Fire Debris," Chapter 3 in *Fire Chemistry Handbook*, edited by Lawrence Kobilinsky
    John Wiley & Sons, Hoboken, NJ, 2012.
"Fires, Arsons and Explosions," Chapter 39 in *Modern Scientific Evidence: The Law and Science
    of Expert Testimony*, edited by Faigman, Kaye, Saks and Sanders, (2011 Editor: Erin Murphy) West
    Publishing Co., St. Paul, MN, 1997, (Previous revisions: 2001, 2007.)
"Basic Fire Science," Chapter 3 and "Fire Patterns," Chapter 4 in *Fire Investigator Principles and Practice
    to NFPA 921 and 1033. 3rd Edition*. IAFC, IAAI, NFPA and Jones and Bartlett, publishers, 2011. (both
    chapters co-authored with Jeff Spaulding.)
*Wiley Encyclopedia of Forensic Science,* contributor of five entries ("Arson Investigation:
    Misconceptions and Mythology;" " Fire: Chemistry of;" "Fire: Dynamics and Pattern Production;" "Fire:
    Scene Investigation;" "Fire Debris: Laboratory Analysis of") and section editor for Fire and Explosives
    entries, edited by Allan Jamieson and Andre Moenssens, Wiley & Sons, West Sussex, UK, 2009.
"Forensic Arson Investigation." McGraw-Hill *Yearbook of Science and Technology*, 2003.

## Standards

NFPA 921, Guide for Fire and Explosion Investigations, NFPA, Quincy, MA, Contributor to the
  1995, 1998, 2001, 2004, 2008 and 2011 editions as principal committee member.
Fire and Arson Scene Evidence: A Guide for Public Safety Personnel, National Institute of Justice
  Office of Justice Programs, USDOJ Publication Number NCJ 181584, Contributor to the
  document as a member of the Editorial Board.
"Standard Test Method for Flammable or Combustible Liquid Residues in Extracts from Samples
  of Fire Debris by Gas Chromatography," ASTM E 1387-90. Principal Author as Task Group Coordinator.
"Guidelines for Laboratories Performing Chemical and Instrumental Analysis of Fire Debris
  Samples," Principal author as Co-Chair of IAAI Forensic Science Committee, June 1988.

## Peer Reviewed Publications

"Forensic Science Standards: Where They Come From and How They Are Used, " Forensic Science
  Policy and Management: An International Journal, Vol. 1, No. 1, February 2009.
"Persistence of Floor Coating Solvents," J. Forensic Sciences, Vol. 46, No. 6, November 2001.
"The Petroleum-Laced Background,"(co-authored with Julia Dolan and Cheryl Cherry),
  J. Forensic Sciences, Vol. 45, No. 5, September 2000.
"A Calculated Arson," The Fire and Arson Investigator, Vol. 49, No. 3, April 1999.
"Differentiation of Asphalt and Smoke Condensates from Liquid Petroleum Distillates Using
  GC/MS," J. Forensic Sciences, Vol. 43, No. 1, January 1998.
"Comparison of the Eluting Efficiency of Carbon Disulfide with Diethyl Ether: The Case for
  Laboratory Safety," (co-authored with Dr. Andrew T. Armstrong), J. Forensic Sciences, Vol. 42,
  No. 2, March 1997.
"An Improved Method of Obtaining Ion Profiles From Ignitable Liquid Residue Samples,"
  FBI International Symposium on the Forensic Aspects of Arson Investigations, Fairfax, VA,
  August 1, 1995.
"ASTM Standards for Forensic Sciences, " J. Forensic Sciences, Vol. 40, No. 1, January 1995
"Behavior of Glass at Elevated Temperature," J. Forensic Sciences, Vol. 37, No. 5, September 1992.
"Baseline Characteristics of Residential Structures Which Have Burned to Completion: The
  Oakland Experience," (co-authored with David M. Smith, C.F.I. and Dr. Richard W. Henderson,
  C.F.I.), Fire Technology, Vol. 28, No. 3, August 1992.

## Editorial-Reviewed Publications

"Totality Of The Evidence" Or Contextual Bias: Where Do You Draw The Line? Proceedings of the 5th
  Int'l Symposium on Fire Investigations Science and Technology (ISFI), NAFI, Sarasota, FL, 2012.
"The Evolution of Fire Investigation and Its Impact on Arson Cases," Criminal Justice, American
  Bar Association, Vol. 27, No. 1, Spring 2012
"Ignitable Liquid Residue Source Elimination by Molecular Weight Estimation," Proceedings of
  the American Academy of Forensic Sciences, AAFS, Colorado Springs, CO, 2102
"Arson probes: Instinct giving way to modern science," Journal of Insurance Fraud in America,
  Vol. 2, No. 1, Coalition Against Insurance Fraud, Washington, DC, 2011.
"'Progress' in Fire Investigation: Moving from Witchcraft and Folklore to the Misuse of Models and
  the Abuse of Science," Proceedings of the 4th International Symposium on Fire Investigations
  Science and Technology (ISFI), NAFI, Sarasota, FL, 2010.
"Toward a More Scientific Determination: Minimizing Expectation Bias in Fire Investigations,"
  Proceedings of the 3rd International Symposium on Fire Investigations Science and Technology
  (ISFI), NAFI, Sarasota, FL, 2008.
"The Standard of Care in Fire Investigation," Canadian Association of Fire Investigators Journal,
  Spring 2007.

**Editorial-Reviewed Publications (continued)**

"Report on the Peer Review of the Expert Testimony in the Cases of *State of Texas v. Cameron Todd Willingham* and *State of Texas v. Ernest Ray Willis,*" (Co-authored with Douglas J. Carpenter, Daniel L. Churchward, David M. Smith and Michael A. McKenzie), Available at www.innocenceproject.org.

"The Mythology of Arson Investigation," *Proceedings of the 2nd International Symposium on Fire Investigations Science and Technology* (ISFI), NAFI, Sarasota, FL, 2006.

"What You Don't Know Can Hurt You: How Do You Know Your Lab Has It Right?" *The Fire and Arson Investigator,* Vol. 53, No. 3, April, 2003.

"Unconventional Wisdom: The Lessons of Oakland," *The Fire and Arson Investigator,* Vol. 43, No. 4, June 1993.

"The Lime Street Fire: Another Perspective," *The Fire and Arson Investigator,* Vol. 43, No. 1, Sept. 1992.

"Melted Steel: How Important?" (co-authored with J. Finis McCarver, P.E.), *The National Fire and Arson Report,* Vol. 10, No. 4, August 1992.

"The Behavior of Flammable and Combustible Liquids," (co-authored with Laurel V. Waters), *The Fire and Arson Investigator,* Vol. 42, No. 1, September 1991.

"Appliance Fires: Determining Responsibility," (co-authored with R.I. Underwood, P.E.), The *National Fire and Arson Report,* Vol. 7, No. 2, April 1989.

**Selected Presentations (1996-Present)**

"Scientific Protocols for Fire Investigation," Oregon Chapter IAAI, January 29-February 1, 2013, Grants Pass, OR.

"Totality Of The Evidence" Or Contextual Bias: Where Do You Draw The Line? 5th International Symposium on Fire Investigations Science and Technology (ISFI), October 15, 2012, Columbia, MD

"Successful Challenges to BS (Bad Science) in Bogus Arson Cases," New York State Bar Association, Forensics and the Law, October 12, 2012, New York, NY

"Challenges to Accurate Fire Cause Determinations," Forensics: Science Policies to Increase Confidence, briefing for congressional staffers sponsored by ACS, September 26, 2012, Washington, DC

"Fire and Innocence: Using Good Science to Overcome Witchcraft," American Chemical Society, Division of Chemistry and the Law, August 20, 2012, Philadelphia, PA

"Arson Investigation and Litigation," 2012 Innocence Network Conference, UMKC School of Law, March 31, 2012 Kansas City, MO.

"Progress in the Investigation of Fire Scene Evidence," New Mexico State Bar CLE, March 30, 2012 Albuquerque, NM.

"Ignitable Liquid Residue Source Elimination by Molecular Weight Estimation," American Academy of Forensic Sciences (AAFS) Criminalistics Section, February 24, 2012, Atlanta, GA.

"Scientific Protocols for Fire Investigation," Arizona Chapter IAAI, July 13-15, 2011, Prescott, AZ.

"Fire and Science," "The Mythology of Arson Investigation," "Sources of Error in Fire Investigation," Pennsylvania Association of Arson Investigators, June 6 and 7, 2011, State College, PA.

"The Questionable Validity of Fire Origin Determination," ABA Criminal Justice Section, 2nd Annual Prescription for Criminal Justice Forensics, Fordham University School of Law June 3, 2011, New York, NY.

"'Progress' In Fire Investigation: Moving from Witchcraft and Folklore to the Misuse of Models and the Abuse of Science," 4th International Symposium on Fire Investigations Science and Technology, (ISFI) September 28, 2010, Columbia, MD.

"Rising From the Ashes – What We Have Learned From the Cameron Todd Willingham Case," National Institute of Justice (NIJ) Annual Conference, June 16, 2010, Arlington, VA.

**Selected Presentations (continued)**

"Fire Investigation Reviews: How It Looks From The 'Other' Side" 61st Annual Training Course,
    International Association of Arson Investigators, May 18, 2010, Orlando, FL.

"Evaluating Arson Evidence: Avoiding Wrongful Convictions," Joint Judicial and Senior Manager's
    Spring Conference, The Role of the Court in an Age of Developing Science and Technology, May 7,
    2010, Washington, D.C.

"Post conviction Strategies in Arson Cases," NACDL's Litigating Non-DNA Post-Conviction Innocence
    Cases Training Program, April 15, 2010, Atlanta, GA.

"Avoiding Wrongful Convictions: Proving the Corpus Delicti," AAFS Jurisprudence Section,
    February 26, 2010, Seattle, WA.

"Meeting the Challenge of the NRC Report: Producing Meaningful Mandatory Standards for Forensic
    Science," AAFS, Criminalistics Section, February 24, 2010, Seattle, WA.

"Minimizing Expectation Bias in Fire Investigations," Workshop # 18, AAFS, February 23, 2010,
    Seattle, WA.

"Fire Investigation in the 21st Century," AOUSC Sixth National Seminar on Forensic Evidence and the
    Law, January 7, 2010, San Diego, CA.

"It's All About the Science: Defense of a Large Fire Loss," Property Loss Research Bureau 2009 Large
    Loss Conference, November 3, 2009, Tampa FL.

"Myths and Misconceptions of Fire Investigation," "Fire Investigation in the 21st Century," 64th Annual
    Florida Arson Symposium, October 19, 2009, Orlando, FL.

"Forensics Under Fire-Case in Point," TCCA Actual Innocence Conference, Center for American and
    International Law, August 18, 2009, Plano, TX.

"Fire Investigation in the 21st Century," Ontario Fire College, May 14, 2009, Gravenhurst, Ontario.

"Forensic Science in the 21st Century: The National Academy of Sciences Report and Beyond,"
    Sandra Day O'Connor College of Law at the University of Arizona, April 4, 2009, Tempe, AZ.

"The State of the Art in Fire Investigation," Inaugural Lecture Series, Centre for Forensic Science and
    Medicine, University of Toronto Medical School, February 27, 2009, Toronto, Ontario.

"Watching Paint Dry, Testing Spontaneous Ignition Hypotheses, " AAFS Criminalistics Section
    February 20, 2009, Denver, CO.

"Forensic Science Standards: Where They Come From and How They Are Used," Workshop # 18,
    AAFS, February 17, 2009, Denver, CO.

"Origin: A Fire Investigator's Most Important Hypothesis," Canadian National Advanced Fire, Arson
    and Explosion Investigation Training Program, October 28, 2008, Toronto, Ontario.

"Evaluating Arson Cases: Avoiding Wrongful Prosecutions and Convictions," 63rd Annual Short Course
    for Prosecuting Attorneys, Northwestern University School of Law, July 22, 2008, Chicago, IL.

"Toward a More Scientific Determination: Minimizing Expectation Bias in Fire Investigations," 3rd
    ISFI, May 20, 2008, Cincinnati, OH.

"The Mythology of Arson Investigation," 59th Annual Training Course, International Association of
    Arson Investigators, April 30, 2008, Denver, CO.

"Sources of Error in Fire Investigation," AAFS Criminalistics Section, February 21, 2008, Washington, DC.

"Evaluating Arson Cases: Avoiding Wrongful Prosecutions and Convictions," 62nd Annual Short Course
    for Prosecuting Attorneys, Northwestern University School of Law, July 24, 2007, Chicago, IL.

"The State of the Art in Fire Investigation," National Academy of Sciences, Committee on Identifying
    the Needs of the Forensic Sciences Community, April 23, 2007, Washington, D.C.

"Critical Evaluation of Arson Charges," California Attorneys for Criminal Justice, California Public
    Defenders Association Capital Case Defense Seminar, February 17, 2007, Monterey, CA.

Case 1:11-cv-01237-LGS-JCF   Document 44-1   Filed 05/29/13   Page 52 of 52

## Selected Presentations (continued)

"The Mythology of Arson Investigation," 2nd ISFI, June 27, 2006, Cincinnati, OH.

"Critical Evaluation of Arson Charges," Third National Seminar on Forensic Evidence and the Criminal Law, Administrative Office of the U. S. Courts, January 28, 2006, San Antonio, TX.

"Sources of Error in Fire Investigation," Canadian National Advanced Fire, Arson And Explosion Investigation Training Program, October 25, 2005, Toronto, Ontario.

"NFPA 921, Design and Development," Live, Learn & Pass It On, Training Conference, Gardiner Associates, Brunel University, June 29, 2005, Uxbridge, England.

"Distinguishing Fact from Fantasy in Arson Investigations," Capital Cases: Third Seminar Series, Illinois Supreme Court Committee on Capital Cases, May 13, 2005, Chicago, IL.

"Laboratory Analysis of Fire Debris: Why It's Important, How It Works, and How to Evaluate a Lab," Insurance Committee for Arson Control, 15th National Training Seminar, February 3, 2004, Sandestin, FL.

"Misadventures in Fire Investigations: Common Features, Common Errors, and How to Spot a Dog," AAFS, Interdisciplinary Session, February 20, 2004, Dallas, TX.

"Bogus Opinion Evidence: Exposing It Without DNA," AAFS, Plenary Session, February 18, 2004, Dallas, TX.

"Measurement, Certification, Accreditation," 30th Annual FBI Symposium on Crime Laboratory Development, Sponsored by the FBI Laboratory. September 25, 2002, St. Louis, MO.

"Standards Development for Fire Investigations," Southeastern Arson Seminar, Sponsored by the Georgia State Fire Marshal and the Georgia Fire Investigators Association. August 8, 2001, Brunswick, GA.

"Understanding the Opposing Expert," Southeastern Arson Seminar, Sponsored by the Georgia State Fire Marshal and the Georgia Fire Investigators Association. August 8, 2001, Brunswick, GA.

"Consensus Standards: A Priority for Forensic Science," Crime Laboratory Improvement Program (CLIP) Summit, Sponsored by the U. S. Justice Department. July 14, 2000, Washington, DC.

"The Role of Experts in Fire Litigation," Anglo-American Fire Investigation Conference, Gardiner Associates, Brunel University, June 30, 1999, Uxbridge, England.

"Accreditation, Certification and Standardization in the Forensic Sciences," AAFS Interdisciplinary Session, February 18, 1999, Orlando, FL.

"A Calculated Arson," Anglo-American Fire Investigation Conference, Gardiner Associates, Brunel University, June 15, 1997, Uxbridge, England.

"Misleading Evidence or Misreading Evidence?" Joint Meeting of the Forensic Science Society and the California Association of Criminalists, June 11, 1997, Harrogate, England.

"Forensic Science Standards: How to Write Them," AAFS, February 22, 1997, New York, NY.

"Differentiation of Asphalt and Smoke Condensates from Liquid Petroleum Products Using GC-MS," AAFS Criminalistics Section, February 22, 1996, Nashville, TN.

## Selected Media Appearances

"Incendiary, The Willingham Case," a 2011 documentary produced by Steve Mims and Joe Bailey, Jr. Available from iTunes.

"Death by Fire," a *Frontline* documentary about the Willingham case. First aired October 19, 2010. Produced by Jessie Deeter. Available at pbs.org/wgbh/pages/frontline

"Burned," an *ABC News 20/20* episode about wrongful arson prosecutions. Produced by Tom Berman. Season 30, Episode 18. First aired May 7, 2010. Available at abc.go.com

"When Forensics Fail," a *National Geographic* documentary about the Willis case. First aired October 18, 2007. Available at video.msnbc.msn.com

## Awards

American Academy of Forensic Sciences, Criminalistics Section Special Meritorious Service Award, 2008.

Boy Scouts of America Silver Beaver Award, Atlanta Area Council, 2004.

ASTM Award of Merit, 2001.

ASTM E30 Forensic Sciences Award, 1996.