IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

OLEG CASSINI, INC.,

     Plaintiff,

vs.                                                                  11-CV-1237(AJN)(JCF)

ELECTROLUX HOME PRODUCTS, INC.,

     Defendant.

**ELECTROLUX HOME PRODUCTS, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS**

**I.  INTRODUCTION**

Plaintiff has placed Electrolux in what is essentially a Catch-22 situation.  First, Plaintiff claims Electrolux should be sanctioned for the failure to produce documents responsive to Plaintiff's overly broad definition of relevancy in this case.  Then, Plaintiff claims Electrolux should be sanctioned for producing too many documents in trying to faithfully meet Plaintiff's demands.  Moreover, Plaintiff expects Electrolux to be able to label and produce documents within hours, despite the volume of production.  One thing is clear from Plaintiff's recent spate of filings, Plaintiff will never be happy with discovery in this case no matter what Electrolux does to comply with its discovery obligations.

Here, Electrolux has produced all of the documents requested by Plaintiff within a reasonable amount of time of Plaintiff's provision of information regarding the component at issue and the entry of the Court's protective order.  It did take time to gather, prepare and label the documents, which occurred mere days after entry of the order.  Moreover, Electrolux originally complied with this Court's February 7, 2013 order compelling discovery limited to the dryer model at

issue, but expanded its response after the Plaintiff provided the information requested by both Electrolux and the Court.  Finally, any delay in discovery is occasioned by Plaintiff, who waited one year to object to Electrolux's responses to its original discovery, failed to provide any information on the component or defect at issue so that Electrolux could provide relevant responses until a little more than a month before the discovery deadline, and served additional and incredibly broad discovery requests only thirty-one days prior to the discovery deadline.  Thus, Plaintiff cannot now claim that it was prejudiced by any delay in production by Electrolux considering its dilatory act in waiting until the close of discovery to raise these issues.  For these reasons, Plaintiff's motion for sanctions, or in the alternative, motion to compel should be denied.

## II. FACTUAL BACKGROUND

### A.  <u>Plaintiff's Fire and Spoliation of Evidence</u>

On August 3, 2008, a fire occurred at the residence owned by the estate of Oleg Cassini. The fire allegedly involved an Electrolux free-standing under-the-counter electric dryer manufactured sometime between 2002 and 2004.  In extinguishing the fire, the fire department pulled the dryer onto the front lawn of the residence and took the dryer apart.  Plaintiff contacted Electrolux, who sent a claims adjuster to investigate the scene and retained an engineer to inspect the dryer.  The engineer was not available to inspect the dryer until several weeks after the fire.

Prior to Electrolux's engineer inspecting the dryer, Plaintiff did nothing to attempt to preserve the evidence at issue in this case.  The dryer sat in pieces on the front lawn in full exposure to the elements.  In fact, the drum and cabinet of the dryer was full of fallen leaves when the engineer inspected it.  The load that had been in the dryer when it was involved in the fire was not retained.  Nor was the transition venting that connected the dryer to the wall.  For

these reasons, the cause of the fire was undetermined and Electrolux denied any liability for the damages resulting from the fire.

## B. First Lawsuit

In 2009, Plaintiff filed an action asserting the same claims against Electrolux at issue in this case in the United States District Court for the Eastern District of New York.  While the Plaintiff served an initial set of interrogatories and requests for production, to which Electrolux responded, Plaintiff sought no depositions or other discovery during the discovery period.  The initial requests sought information regarding the dryer model at issue, including an identity of a person with sales information, changes made to the model, and safety testing.  Nevertheless, the remainder of the discovery requests, without any justification or limitation, asked for information and documents on all dryers manufactured by Electrolux.  There was no attempt to limit the discovery in time to dryers manufactured around the same time as the dryer at issue in this case, to dryers containing the same component at issue, or even to electric dryers.  Electrolux appropriately objected to the scope of these requests and then, for many of the overly broad requests, agreed to provide information limited to the dryer model at issue.

After the discovery deadline passed, Plaintiff requested additional time for discovery. The court denied Plaintiff's request.  Plaintiff, in turn, dismissed that case and refiled the same claims in this Court, which is the above-captioned matter.

## C. Second Lawsuit

Plaintiff filed the above-captioned matter against Electrolux on February 22, 2011, and served identical initial discovery requests on Electrolux thereafter.  At no point in the complaint or the initial disclosures did Plaintiff provide a defect theory, identify a component at issue, or identify any expert who could provide any insight into the Plaintiff's theory on the cause of the

fire.  As a result, Electrolux had no method of determining what other dryer models may be at issue and relevant in this case.

The component at issue in the dryer and the defect theory of the Plaintiff is critical to determining the appropriate scope of discovery.  Electrolux has been manufacturing dryers for over forty years and, in turn, has produced and distributed millions of dryers.  If discovery in this case were to encompass every dryer model Electrolux has ever manufactured without limitation, the amount of responsive documents, the time to collect these documents, and the amount of money required to review these documents would far outweigh the importance of the issues in this case, the relevance of the documents, and the amount of damages at issue.  Electrolux manufactures a variety of dryers including free-standing electric dryers, free-standing gas dryers, gas laundry centers, and electric laundry centers.  The dryers contain hundreds of different components, some of which are common to every dryer model, i.e., door hinges, screws, exhaust ducts, and air intakes.  Some of these components are different between the gas and electric, i.e., heating element, heater pan, drum design.  Finally, some of the components change often with the model of the dryer, i.e., the control panel of the dryer.  Thus, the component at issue allows Electrolux to determine dryer models that are similarly designed and which may be of relevance in discovery.  *See Fine v. Facet Aerospace Products Co.,* 133 F.R.D. 439, 441 (S.D.N.Y. 1990)(holding that discovery of "different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation").

Electrolux provided responses to the initial discovery requests that were identical to the responses provided in the first lawsuit.  Again, Plaintiff held off on pursuing any further discovery for a significant period of time.  One year passed before Plaintiff made any objection

to any of Electrolux's discovery responses and Plaintiff raised these issues only when the original discovery deadline set by the Court was looming.  In fact, Plaintiff only began pursuing further discovery in this matter when Electrolux, noting the upcoming discovery deadline, began requesting depositions in this case.

### D.  Order on Motion to Compel and Electrolux's Compliance

On December 18, 2012, Plaintiff moved to compel Electrolux to produce information regarding (1) other dryer models that had experienced fires, and (2) safety testing, causation studies, and prior complaints and litigation arising out of other dryer fires, and (3) sales figures for dryer sold since 2000.  Additionally, Plaintiff sought color photos of the property inspection and interrogatory responses.

The Court ruled on Plaintiff's motion to compel on February 7, 2013.  *See ECF Docket No. 27.*  In reviewing the scope of Plaintiff's requests, the Court agreed with Electrolux that the requests were overbroad and that "[t]he plaintiff has failed to submit any evidence whatsoever to suggest that other models produced by the defendant shared similar characteristics or components."  Accordingly, the Court denied plaintiff's request for compulsion of information about dryer models other than the model involved in the 2008 fire.  Nevertheless, the Court held that its ruling was without prejudice and the plaintiff could raise the issue in the future if plaintiff is prepared to make the required demonstration that the other dryer models share the same pertinent characteristics with the dryer model at issue.  The remainder of the order compelled Electrolux to provide (1) the identity of the person with knowledge of Electrolux's sales, revenues, and profits for the dryer model at issue; (2) information relating to prior accidents regarding the dryer model at issue; and (3) any reports by Tom Bajzek, Raymond Negron and

Jonathan P. Derow or, if the reports do not exist, an affidavit explaining why Electrolux has no such reports.  The production of this information was required by February 28, 2013.

On February 28, 2013, Electrolux complied with the Court's order.  Specifically, Electrolux provided (1) the identity of the person with knowledge regarding the sales, revenue, and profits for the dryer model at issue; (2) claim files containing all information in Electrolux's possession regarding other accidents for the dryer model at issue; and (3) an affidavit explaining that Electrolux had reviewed all of its records and was unable to locate any reports by Tom Bajzek, Raymond Negron or Jonathan P. Derow or any other information outside of the claim file that had previously been produced.  Electrolux timely and appropriately complied with the Court's Order.

### E.  Plaintiff's Objections to Electrolux's Compliant Production and Subpoena on Michael Hopkins

On April 12, 2013, Plaintiff sent Electrolux a letter complaining about the production in response to the order to compel.  Specifically, Plaintiff complained that Electrolux limited the production to the dryer model at issue. For the first time, Plaintiff identified the alleged component parts at issue and provided an affidavit of an engineer that the component parts at issue are common to electric free-standing dryers manufactured by Electrolux.  Even though this is the first time Plaintiff provided such support for its position - and the Court even noted the lack of such evidence in its opinion - Plaintiff accused Electrolux of violating the Court's order compelling production of further responses.

Electrolux, in response, pointed out to Plaintiff that it was in compliance with the Court's order by providing the requested information limited to the dryer model at issue.  However, in light of the information recently provided by the Plaintiff, Electrolux was willing to discuss producing more documents related to free-standing electric dryers, within reason.

Additionally, on or about March 28, 2013, Plaintiff served a subpoena on Michael Hopkins of Stutman Law seeking production of his case file for the matter of *Donegal Mut. Ins. Co. a/s/o Vanessa Schantz v. Electrolux Home Products, Inc.*  In *Schantz*, the parties had entered into a mutual protective order to protect trade secret information produced in discovery.  A majority of the documents produced by Electrolux in that case were produced under the protective order.  To comply with the terms of the subpoena, Mr. Hopkins would be forced to violate the protective order between the parties.

Electrolux informed Mr. Hopkins that it would file a motion to quash and requested he refrain from producing anything in response to the subpoena until the motion to quash was resolved.  Eventually, Electrolux resolved the matter with Plaintiff by agreeing to produce its discovery responses, production of documents and deposition transcripts from the *Schantz* matter in this case upon the entry of a protective order.

### F.  Electrolux's Recent Production of Documents

After negotiating a protective order, the parties submitted an agreed protective order to the Court.  The Court entered the protective order on May 17, 2013.  Electrolux immediately gathered the *Schantz* production and began processing and bates-labeling it.

Additionally, Plaintiff served a third set of requests for production seeking a wide variety of documents including document retention policies, claims information, warranty data, internal communications, and more.  Many of these documents contain confidential trade secret information that would require the entry of a protective order.  Upon the Court's entry of the protective order, Electrolux began gathering, processing and bates-labeling these documents as well.  Because of the broadness of Plaintiff's requests, a large number of responsive documents

were identified.  These documents took a significant amount of time to gather, prepare and bates-label for production.

On May 28, 2013, Plaintiff emailed Electrolux and requested a status on the production. Electrolux responded that it was in the process of being bates-labeled and would be produced as soon as the process was finished.  The following day, Plaintiff filed the underlying motion for sanctions and to compel production.

On Monday, June 3, 2013, Electrolux produced over 160,000 pages of documents.  These documents include (1) readily available claim files for electric free-standing dryers, which are responsive to the first set of requests for production following the affidavit provided by Plaintiff in April explaining the relevant scope; (2) the *Schantz* documents; and (3) documents responsive to Plaintiff's third set of requests for production.  Because of the size of the production, it took until the evening of Friday, May 31, 2013 to electronically bates-label.  To help Plaintiff in locating particular sets of responsive documents, Electrolux provided a general index pointing out where in the production categories of documents were located.  Further, Electrolux has now produced the remainder of the responsive documents and the written responses to Plaintiff's third set of interrogatories and requests for production.

On June 10, 2013, Plaintiff filed an additional declaration now complaining that Electrolux produced too many documents, despite the fact that Plaintiff has repeatedly attempted to broaden the scope of discovery throughout this process.

Electrolux made repeated good faith attempts to comply with its discovery obligations in this case.  It has provided relevant documents within the relevant bounds and then even broadened its production upon the insistence of Plaintiff.  For these reasons, Plaintiff's motion for sanctions and to compel should be denied.

### III. LAW AND ANALYSIS

When the alleged discovery violation of non-production of evidence is at issue, the party moving for sanctions must establish:  "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim and defense.  *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002). Where the non-production is actually a delayed production, "the harm caused by delay in production is a relevant factor in determining sanctions, if a court determines that sanctions are warranted."  *Pure Power Boot Camp v. Warrior Fitness Boot Camp,* 587 F.Supp.2d 548, 567 (S.D.N.Y. 2008).  Nevertheless, the ultimate production of the documents prior to trial weighs in favor of not imposing sanctions.  *See Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 169-70 (S.D.N.Y. 2004)(requiring full disclosure of relevant documents as opposed to sanction where party delayed in making production); *Phoenix Four, Inc. v. Strategic Resources Corp.*, Case No. 05 Civ. 4837 (HB), 2006 WL 1409413 at *3 (S.D.N.Y. May 23, 2006)(no adverse inference sanction warranted where party came forward with evidence even after close of discovery).  Further, any harm to the moving party is mitigated if the production is made well before the trial date.  *See L-3 Commons Corp. v. OSI Sys., Inc.*, Case No. 02-Civ. 9144 (PAC), 2006 WL 988143, at *15 (S.D.N.Y. April 13, 2006) (holding that the moving party had not shown prejudice from belated production of documents were trial date afforded parties enough time to review the production and prepare for trial).

Here, Electrolux denies that its production is belated.  It produced the documents compelled by the Court in its February 7, 2013 order at the time set by the Court.  These documents were

limited to the dryer model at issue in accordance with the Court's order. When Plaintiff finally came forward with the identity of a component at issue, Electrolux was able to identify which other models would be relevant and gather the materials responsive to these requests. Many of these documents were trade secret and required the entry of a protective order to be produced. Once a protective order was entered, Electrolux produced the documents, amounting to more than 160,000 pages, in about two weeks after the entry of the order. Moreover, to simplify the production, Electrolux provided a general index directing Plaintiff to the categories of documents produced. The production, thus, was not delayed, but was within a reasonable amount of time considering the size and the date of the entry of the protective order.

Electrolux's responses to the third set of requests for production and interrogatories have been served contemporaneously with this response. Additionally, the majority of the documents responsive to the requests for production are included in the 160,000 pages of documents previously produced. Plaintiff cannot claim it was harmed by delay. It served these requests very close in time to the close of discovery and could not have expected to receive responses to its broad and burdensome requests in less than the thirty days provided by the Federal Rules of Civil Procedure. Discovery was extended an additional month and a half. Electrolux produced its written responses to the requests more than fifteen days prior to the new discovery deadline in this case. Considering the lateness of Plaintiff's service of requests and the extension of the discovery deadline, Plaintiff is actually afforded additional time during the discovery period and prior to trial to review the responses.

Finally, Plaintiff most recently complains that Electrolux has produced too many documents. It appears that regardless of Electrolux's actions, Plaintiff will never be happy with discovery in this case. Considering the breadth of Plaintiff's discovery requests and its definition of the

relevant scope, Plaintiff cannot now complain that a large quantity of documents were produced in response.  Electrolux even took an additional step of providing an index designating where categories of documents could be found.  Plaintiff's motion is no more than a ploy to extend discovery, much like it tried to do in the previous litigation, so that it can continue this case on its own timetable.  Plaintiff has the documents it seeks and its motion should be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for sanction or, in the alternative, motion to compel.


Dated: June 14, 2013

<div style="margin-left:30%">

GOLDBERG SEGALLA LLP

By     _s/John P. Freedenberg_
John P. Freedenberg
665 Main Street, Suite 400
Buffalo, New York 14203
(716) 566-5400
jfreedenberg@goldbergsegalla.com

Ellen H. Greiper
100 Garden City Plaza, Suite 225
Garden City, New York 11530
(516) 281-9800
egreiper@goldbergsegalla.com

*Attorneys for Defendant Electrolux Home Products, Inc.*

</div>

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

OLEG CASSINI, INC.,

     Plaintiff,

vs.                                  11-CV-1237(AJN)(JCF)

ELECTROLUX HOME PRODUCTS, INC.,

     Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2013, I filed the foregoing Response to Plaintiff's

Motion for Sanctions via the Court's CM/ECF system, which would thereby notify the following

CM/ECF participant:

**CARROLL MCNULTY & KULL LLC**
Nicholas A. Vytell, Esq.
120 Mountain View Boulevard
Post Office Box 509
Basking Ridge, New Jersey 07920
nvytell@cmk.com

GOLDBERG SEGALLA LLP

By     *s/John P. Freedenberg*
        John P. Freedenberg
        665 Main Street, Suite 400
        Buffalo, New York 14203
        (716) 566-5400
        jfreedenberg@goldbergsegalla.com