```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
OLEG CASSINI, INC.                    : 11 Civ. 1237 (LGS) (JCF)
                                      :
            Plaintiff,                :      MEMORANDUM
                                      :      AND   ORDER
                                      :
     - against -                      :
                                      :
ELECTROLUX HOME PRODUCTS, INC.,       :
                                      :
            Defendant.                :
- - - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

In this action, Oleg Cassini, Inc. ("Oleg Cassini") alleges that in 2008 a fire at its property started when a dryer designed and manufactured by Electrolux Home Products, Inc. ("Electrolux") malfunctioned.  Consequently, the plaintiff asserts various claims for products liability, breach of warranty, and violation of the New York consumer protection laws.  Oleg Cassini now moves for sanctions against Electrolux, contending that the defendant has failed to produce relevant discovery materials and disobeyed a previous discovery order.  In the alternative, Oleg Cassini asks for an order compelling production of the missing materials.  For the reasons set forth below, the plaintiff's motion is granted in part.

Background

On August 3, 2008, a fire caused significant damage to several rooms of the plaintiff's property.  (Complaint ("Compl."), ¶¶ 15, 18).  The plaintiff alleges that the fire originated from an under-the-counter dryer designed, manufactured, and assembled by the

defendant (the "Product"). (Compl., ¶¶ 11, 15). The plaintiff further claims that the Product was dangerous and defective and that the defendant failed to provide timely and adequate warning of the dangers associated with it. (Compl., ¶¶ 16, 26).

Resolving an earlier discovery dispute, I denied the plaintiff's motion to compel production of "information about [dryer] models other than the model involved in the 2008 fire" without prejudice to the plaintiff's future demonstration "that other models share pertinent characteristics with the Product," and suggested that "[s]uch a showing could [] be[] made . . . through an affidavit of an expert in mechanical engineering." Oleg Cassini v. Electrolux Home Products, Inc., No. 11 Civ. 1237, 2013 WL 466198, at *3 (S.D.N.Y. Feb. 7, 2013) (the "February 7 Order"). I further required the defendant to provide the identity of persons with knowledge of its sales, revenues, and profits from the sale of the model from 2000 until the present, subject to the same caveat noted above. Id. In addition, I granted the plaintiff's motion to compel interrogatory responses and production of documents "related to prior accidents, complaints, and litigation to the extent that they relate to fires caused by under-the-counter dryers manufactured by the defendant," id., and required production of the reports of fire investigators Tom Bajzek, Raymond Negron, and Jonathan P. Debrow or submission of an affidavit from the defendant "explaining why [such reports] are not in its possession," id. at *4.

Purporting to comply with the February 7 Order, Electrolux

provided supplemental responses, including approximately 300 documents and an affidavit asserting that no reports or other documents by Mr. Bajzek, Mr. Negron, or Mr. Debrow existed. (Declaration of Nicholas A. Vytell dated May 29, 2013 ("1st Vytell Decl."), ¶ 7; Defendant's Responses to Plaintiff's Discovery Demands dated Feb. 28, 2013, attached as part of Exh. B to 1st Vytell Decl.; Affidavit of Ellen H. Grepier dated Feb. 28, 2013 "Grepier Aff."), attached as part of Exh. B to 1st Vytell Decl.).

After reviewing Electrolux's supplemental production, Oleg Cassini identified "a number of other actions [against the defendants] involving dryer fires" that had not been disclosed, including <u>Donegal Mutual Insurance Co. a/s/o Vanessa Schantz v. Electrolux North America</u>, No. 1:08-cv-2171 (M.D. Pa. Dec. 3, 2008) (the "<u>Schantz</u> Action"). (1st Vytell Decl., ¶ 9). Oleg Cassini served a subpoena on counsel for the plaintiff in the <u>Schantz</u> action seeking "all discovery demands and responses, expert reports and disclosures, and deposition transcripts" from the case. (Subpoena dated March 28, 2013, attached as part of Exh. C to 1st Vytell Decl.). Electrolux moved to quash, but ultimately agreed that it would produce all of the documents from the <u>Schantz</u> action and withdraw its motion to quash if the subpoena was withdrawn. (E-mail chain of April 25, 2013 ("April 25 E-mail Chain"), attached as Exh. G to 1st Vytell Decl.; Memo. Endorsement dated April 29, 2013).

Meanwhile, the plaintiff procured the report of engineer John J. Lentini, which outlined specific aspects of the Product that he

3

believed contributed to the fire, and provided it to the defendant along with a letter complaining about deficiencies in Electrolux's supplemental production. (Letter of Nicholas A. Vytell dated April 12, 2013 ("Vytell Letter"), attached as Exh. E to 1st Vytell Decl.; Declaration of John J. Lentini dated April 12, 2013 ("Lentini Decl."), attached to Vytell Letter). Soon thereafter, Oleg Cassini propounded its Third Set of Interrogatories and Third Requests for Production of Documents, which were "focused on discovery of the particular issues identified" in the Lentini Declaration. (1st Vytell Decl., ¶ 14; Plaintiff, Oleg Cassini, Inc.'s, Third Set of Interrogatories to Defendant, attached as part of Exh. F to 1st Vytell Decl.; Plaintiff, Oleg Cassini, Inc.'s, Third Request for Production of Documents, attached as part of Exh. F to 1st Vytell Decl.). I entered a protective order governing the handling of confidential materials on May 13, 2013. (Stipulation and Protective Order dated May 13, 2013).

    Electrolux produced no further documents in May. On May 29, 2013, Oleg Cassini filed this motion seeking sanctions against Electrolux, arguing that the defendant had (1) "failed entirely to respond" to the Third Set of Interrogatories and Third Request for Production of Documents (Memorandum of Law in Support of Plaintiff's Motion for Sanctions or, in the Alternative to Compel Discovery ("Pl. Memo.") at 3); (2) "reneged on th[e] express agreement" to produce documents from the Schantz action (Pl. Memo. at 3); (3) "made minimal effort to comply" with the February 7 Order (Pl. Memo. at 4); and (4) "failed to provide any discovery

related to other electric dryer models with similar characteristics and/or components identified" in the Lentini Declaration (Pl. Memo. at 4).

Electrolux's opposition was due on June 5, 2013. (Declaration of Nicholas A. Vytell dated June 10, 2013 ("2nd Vytell Decl."), ¶ 3); Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 6.1. No opposition was filed. Instead, on June 6, 2013, the plaintiff received from Electrolux a hard drive containing approximately 162,000 documents, indexed into fifteen "general categories," accompanied by a letter dated June 3, 2013, asking Oleg Cassini to withdraw this motion in light of the "comprehensive disclosure[] and the effort undertaken to compile and produce" the documents. (2nd Vytell Decl., ¶¶ 4, 9; Letter from John P. Freedenberg dated June 3, 2013, attached as Exh. A to 2nd Vytell Decl.). On June 10, 2013, Oleg Cassini filed a declaration of counsel charging that the production was still incomplete, noting that, although it had not reviewed all of the documents recently produced, Electrolux had not provided written responses to the Third Set of Interrogatories or Third Request for Production of Documents, and "despite numerous assurances, . . . ha[d] not produced electronic copies of the photographs from the scene of the fire." (2nd Vytell Decl., ¶ 7).

Electrolux responded to plaintiff's counsel's second declaration on June 14, 2013, asserting that its June 3, 2013, production included (1) "readily available claim files for electric free-standing dryers, which are responsive to the first set of

5

requests for production" in light of the Lentini Declaration; (2) the Schantz documents; and (3) "documents responsive to [the] [p]laintiff's third set of requests for production." (Electrolux Home Products, Inc.'s Response to Plaintiff's Motion for Sanctions ("Def. Memo.") at 8). Subsequent to the June 3 production, Electrolux reportedly "produced the remainder of the responsive documents and the written responses to [the] [p]laintiff's third set of interrogatories and requests for production." (Def. Memo. at 8).

Oleg Cassini seeks three alternative types of sanctions for discovery abuses:

> (1) a terminating sanction, striking Electrolux's answer (1st Vytell Decl., ¶¶ 26-29; 2nd Vytell Decl., ¶ 11);
>
> (2) entry of an order "deeming it established that [] there were numerous other instances in which electric dryers manufactured by [Electrolux] malfunctioned due to a failure of the rear drum bearing assembly[,] [that] these failures resulted in fires and/or a significant hazard of fire[,] and [] [that Electrolux] was aware of this malfunction and the risks presented at the time it sold the dryer at issue to [Oleg Cassini]" (1st Vytell Decl., ¶ 26; 2nd Vytell Decl., ¶ 12); or
>
> (3) an award of monetary sanctions against Electrolux in the amount of $15,500, including attorneys' fees, to cover the costs of reviewing the recently produced documents, and an additional $5,400 in attorneys' fees incurred in making this motion (2nd Vytell Decl., ¶ 13).

In addition, Oleg Cassini asks that, if Electrolux's recent discovery is allowed, I extend the fact discovery deadline from July 1, 2013, to September 1, 2013. (2nd Vytell Decl., ¶ 13).

Discussion

    A.   Legal Standards

"Provided that there is a clearly articulated order of the

6

court requiring specific discovery," Rule 37(b) of the Federal Rules of Civil Procedure gives district courts authority to impose sanctions for noncompliance with such an order.  Daval Steel Products, a Division of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991).  The party requesting sanctions has the initial burden of demonstrating that the production is insufficient.  See, e.g., Benitez v. Straley, No. 01 Civ. 0181, 2008 WL 400894, at *1 (S.D.N.Y. Feb. 14, 2008) (denying sanctions because the movant "had not met his burden of explaining why the discovery provided . . . was insufficient").  However, once a party's disobedience is established, the court has broad discretion to impose sanctions tailored to the offensive conduct. Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 135, 140 (2d Cir. 2007).  These can include deeming certain disputed questions of fact as established, prohibiting the introduction of certain evidence, and outright dismissal.  Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979).  In determining the appropriate sanction, courts consider "'(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance,'" Agiwal v. Mid Island Mortgage Corp., 555 F.3d 298, 302-03 (2d Cir. 2009) (second alteration in original) (quoting Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)), as well as the extent to which

7

the prevailing party has been and will be prejudiced by the defaulting party's noncompliance, see Anthropologie, Inc. v. Forever 21, Inc., No. 07 Civ. 7873, 2009 WL 690126, at *3 (S.D.N.Y. March 13, 2009). "The mildest [sanction] is an order to reimburse the opposing party for expenses caused by the failure to cooperate." Cine Forty-Second Street Theatre Corp., 602 F.2d at 1066. This sanction must be imposed unless the noncompliant party shows that its failure was substantially justified or that an award of expenses would be unjust. Fed. R. Civ. Proc. 37(b)(2)(C); Mugavero v. Arms Acres, Inc., 680 F. Supp. 2d 544, 574 (S.D.N.Y. 2010).

In addition, Rule 37(a) requires that, when a motion to compel is granted or disclosure or discovery is provided after such a motion is filed, the court order the party "whose conduct necessitated the motion," its attorney, or both "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the conduct was substantially justified or the award would be unjust. Fed. R. Civ. P. 37(a)(5)(A); Underdog Trucking, LLC v. Verizon Services Corp., 273 F.R.D. 372, 377 (S.D.N.Y. 2011).

    B.    <u>Motion to Compel</u>

Electrolux represents that it has produced all relevant documents and provided written responses to the plaintiff's Third Set of Interrogatories and Third Request for Production of Documents. (Def. Memo. at 8, 10). Therefore, the motion to compel is moot unless and until Oleg Cassini identifies specific

shortcomings.

    C.    <u>Motion for Sanctions</u>

Although Electrolux has completed its production of documents and provided written responses to the plaintiff's interrogatories and requests for production, its responses were untimely and occurred only after Oleg Cassini brought this motion. In addition, Electrolux did not comply fully with the February 7 Order.

    1.    <u>Interrogatories and Requests for Production</u>

Oleg Cassini propounded its Third Set of Interrogatories and Third Request for Production of Documents on April 16, 2013. (Letter of Nicholas A. Vytell dated April 16, 2013, attached as part of Exh. F to 1st Vytell Decl.). Pursuant to Rules 33(b)(2) and 34(b)(2)(A), Electrolux had 30 days to respond. However, responses were not provided until early June. (Def. Memo. at 8, 10).

    2.    <u>Documents from Schantz Action</u>

By April 25, 2013, the defendant had agreed to produce these documents, and a protective order governing the handling of confidential material was entered on May 14, 2013. However, Electrolux failed to produce these documents until June 3, 2013, after the plaintiff had filed this motion.

    3.    <u>Compliance with February 7 Order</u>

Plaintiff's counsel's initial declaration in support of its motion asserts that Electrolux had not complied with the February 7 Order because it had (1) failed to provide any discovery related to the inspections of Mr. Bajzek, Mr. Negron, and Mr. Derow, (2)

9

failed to provide digital copies of photographs of the scene of the 2008 fire, and (3) failed to produce discovery related to under-the-counter dryer models other than the specific model involved in the 2008 fire. (1st Vytell Decl., ¶ 28).

As noted above, the February 7 Order required the defendant to produce the reports of the three identified investigators or to "submit an affidavit explaining why they are not in its possession." Oleg Cassini, 2013 WL 466198, at *4. Electrolux submitted such an affidavit on February 28, 2013. (Grepier Aff.).

The February 7 Order ordered production of the photographs taken of the scene of the fire, Oleg Cassini, 2013 WL 466198, at *4, which the defendant produced (Lentini Decl., ¶ 6). The fact that they were not produced in digital form -- the form apparently preferred by Oleg Cassini -- does not mean that Electrolux failed to comply with the order.

Finally, the February 7 Order charged Electrolux with production of information about prior accidents, complaints, and litigation related to fires caused by under-the-counter dryers manufactured by the defendant other than the model at issue in this case. Oleg Cassini, 2013 WL 466198, at *3. Electrolux's submission demonstrates that it does not understand what the February 7 Order required. Repeatedly, it asserts that the February 7 Order "compell[ed] discovery limited to the dryer model at issue." (Def. Memo. at 1-2, 5, 6, 9-10). While it is correct that, as a general matter, the February 7 Order did not compel discovery of material related to all other dryer models that had

10

experienced fires, that order made it equally clear that "the defendant shall produce the requested information related to prior accidents, complaints, and litigation to the extent that they relate to <u>fires caused by under-the-counter dryers manufactures by the defendant</u>." <u>Oleg Cassini</u>, 2013 WL 466198, at *3 (emphasis added). This directive was not "limited to the dryer model at issue." Thus, Electrolux's initial production in response to the February 7 Order was deficient.[1]

    4.    <u>Sanctions</u>

Because Electrolux did not provide written responses or produce requested documents until after this motion was filed, I am required to grant Oleg Cassini the reasonable expenses it incurred in making this motion, including attorneys' fees, unless Electrolux can demonstrate that its conduct was substantially justified or other circumstances make the award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). The defendant has not done so.

Electrolux provides no reason for its delayed responses to the

---

[1] To the extent Oleg Cassini believes that failure to produce discovery related to the Lentini Declaration is a violation of the February 7 Order, it is mistaken. The February 7 Order denied Oleg Cassini's motion to compel discovery regarding other dryer models that had experienced fires because it had not submitted evidence that other dryer models manufactured by Electrolux shared similar characteristics or components with the dryer model involved in the 2008 fire. <u>Oleg Cassini</u>, 2013 WL 466198, at *3. I suggested that such evidence could be provided "through an affidavit of an expert in mechanical engineering." <u>Id</u>. I did not order Electrolux to produce discovery requested in relation to such a hypothetical affidavit. To be sure, Oleg Cassini procured the Lentini Declaration in response to the February 7 Order's suggestion, but that does not mean that responses related to the Lentini Declaration should be incorporated into the relief directed by the February 7 Order.

Third Set of Interrogatories and Third Request for Production of Documents.  As to the production of documents in response to the request for production, Electrolux's explanation boils down to the excuse that there were over 160,000 documents and that they were produced "about two weeks after the entry of the [protective] order." (Def. Memo. at 7-8, 10).  However, Electrolux admits that it did not even begin "gathering, processing and bates-labeling these document" until after the protective order was entered. (Def. Memo. at 7).  It does not explain why collection and preparation of these documents was not begun sooner -- for example, at the time the requests for production were served on April 16, 2013, or when the parties reached an agreement regarding production of the Schantz documents on April 25, 2013.  Electrolux has not justified its untimely production.

Furthermore, Electrolux failed to timely produce information regarding prior accidents, complaints, and litigation related to fires caused by under-the-counter dryers manufactured by the defendant other than the model at issue in this case, which is a violation of the February 7 Order.  Rule 37(b)(2) contemplates a similar monetary sanction, subject to the same exceptions, as Rule 37(a)(5)(A).   Fed. R. Civ. P. 37(b)(2)(C).   Electrolux's explanation -- that the Februray 7 Order "compell[ed] discovery limited to the dryer model at issue" (Def. Memo. at 1-2) -- is incorrect and is not substantial justification for its failure.

The plaintiff asserts that the costs associated with bringing this motion amount to $5,400.  (2nd Vytell Decl., ¶ 13).  However,

12

it provides no supporting documentation that would allow me to determine whether such expenses are reasonable. Therefore, the plaintiff must provide documentation, including contemporaneous time records, to support its claimed expenses within one week of the date of this order.

Rule 37(b)(2)(A) allows the imposition of other, more draconian sanctions for failure to comply with a court order. However, further sanctions -- such as the costs of processing and reviewing the recently produced documents, deeming certain facts established, or striking Electrolux's answer -- are not warranted at this time. First, there has been no showing that Electrolux's failure to comply with the February 7 Order was willful or in bad faith. Although one section of that order required discovery pertaining to under-the-counter dryers other than the one at issue, a different section limited certain discovery to that pertaining only to the Product. As I have noted, Electrolux's misunderstanding was not substantially justified -- a more careful reading of the order would have corrected it -- but there is no evidence that it was willful. Oleg Cassini asserts that Electrolux "has engaged in similar tactics in other actions" (1st Vytell Decl., ¶ 2), but provides no support for this statement. Moreover, Electrolux had not previously been warned of the consequences of noncompliance. Additionally, I find that the monetary sanctions I am imposing, although not large, will deter similar conduct by Electrolux in the future.

The plaintiff's request for an extension of the fact discovery

13

deadline is denied. The problem Oleg Cassini complains of -- the expedited review of the produced documents -- is partly of its own making. The plaintiff did not serve its Third Requests for Production of Documents until April 16, 2013 (1st Vytell Decl., ¶ 14). At the time they were served, the deadline for fact discovery was May 17, 2013. (Revised Scheduling Order dated March 4, 2013). Accordingly, Electrolux's responses were not due until one day before the close of discovery. Fed. R. Civ. P. 34(b)(2)(A). To be sure, the parties requested and received a third (and final) extension of the fact discovery deadline to July 1, 2013 (Revised Scheduling Order dated May 13, 2013); however, there was no guarantee that the request would be granted, see <u>Soroof Trading Development Corp. v. GE Microgen, Inc.</u>, 283 F.R.D. 142, 148 n.4 (S.D.N.Y. 2012) (noting court's interest in ensuring that parties abide by deadlines it sets). In any case, Oleg Cassini is now apparently in possession of all relevant discovery materials, the vast majority of which it received on June 6, 2013, weeks before the scheduled close of fact discovery. Given the length of time this action has been pending, it is not appropriate to extend, yet again, the discovery schedule.

<u>Conclusion</u>

Oleg Cassini's motion for sanctions, or in the alternative to compel (Docket no. 43) is granted to the extent that it shall be awarded costs, including attorneys' fees, incurred in connection with this motion. To facilitate the calculation, Oleg Cassini shall produce documentation supporting the expenses and attorneys'

14

fees within one week of the date of this order.

                              SO ORDERED.

                              */s/ James C. Francis IV*
                              JAMES C. FRANCIS IV
                              UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
            June 19, 2013

Copies mailed this date:

Timothy B. Parlin, Esq.
Nicholas A. Vytell, Esq.
Carroll, McNulty & Kull L.L.C.
120 Mountain View Boulevard
Basking Ridge, NJ 07920

Christopher P. Kelly, Esq.
Reppert Kelly & Satriale, LLC
120 Mountain View Boulevard
Basking Ridge, NJ 07920

John P. Freedenberg, Esq.
Goldberg Segella LLP
665 Main Street, Suite 400
Buffalo, New York 14203

Marianne Arcieri, Esq.
Goldberg Segalla LLP
11 Martine Avenue, Suite 750
White Plains, NY 16060