UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
OLEG CASSINI, INC.                   :   11 Civ. 1237 (LGS) (JCF)
                                     :
             Plaintiff,              :        MEMORANDUM
                                     :        AND  ORDER
       - against -                   :
                                     :
ELECTROLUX HOME PRODUCTS, INC.,      :
                                     :
             Defendant.              :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

        The opinion of a highly qualified expert witness using a well-
accepted methodology is nevertheless unreliable, and therefore
inadmissible, if the expert fails to explain how her opinion
follows logically from the application of the methodology to the
specific facts of the case.   In this product liability action,
defendant Electrolux Home Products, Inc. ("Electrolux") has filed
a motion in limine pursuant to Rule 702 of the Federal Rules of
Evidence to exclude the expert report submitted by the plaintiff,
Oleg Cassini, Inc. ("Oleg Cassini").   For the reasons that follow,
the motion is granted.

Background

        The factual background of this case has been addressed in
previous opinions.   See Oleg Cassini, Inc. v. Electrolux Home
Products, Inc., No. 11 Civ. 1237, 2013 WL 3056805, at *1-3
(S.D.N.Y. June 19, 2013); Oleg Cassini, Inc. v. Electrolux Home
Products, Inc., No. 11 Civ. 1237, 2013 WL 466198, at *1 (S.D.N.Y.
Feb. 7, 2013).   Briefly, on August 3, 2008, an under-the-counter
dryer manufactured by the defendant allegedly caused a fire at the

plaintiff's property. (Complaint ("Compl."), ¶¶ 11, 15, 18). The plaintiff claims that the dryer was defective, and seeks damages under theories of strict product liability, negligence, breach of warranty, and violations of New York consumer protection laws. (Compl., ¶¶ 12, 16, 40-42, 50-51, 55-57, 60, 63, 67).

The fire resulted in significant property damage, including smoke and water damage; the plaintiff alleges that it destroyed "original sketches, drawings, and artwork by renowned fashion designer Oleg Cassini" that were stored in the basement of the property. (Memorandum of Law in Opposition to Defendant's Motion in Limine to Preclude the Expert Testimony of Phillis Rogoff ("Pl. Memo.") at 1; Compl., ¶ 6). Some two years after the fire, in October, 2010, the plaintiff hired Phillis Rogoff to examine and assess the value of the damaged artwork. (Memorandum in Support of Defendant's Motion in Limine to Preclude Expert Testimony of Phillis Rogoff ("Def. Memo.") at 1). Ms. Rogoff subsequently prepared a report documenting her findings. (Damage/Loss Appraisal Prepared October 22, 2010 ("Expert Report")).

A.  <u>Plaintiff's Expert</u>

According to an affidavit, sworn certification, and curriculum vitae included as part of the Expert Report, Ms. Rogoff is a professional appraiser "specializing in . . . fine and decorative art" who has been "actively involved in valuing property of the kind described in this appraisal for a period of twenty-seven years." (Expert Report at 3-4, 162-63). Ms. Rogoff recently clarified that while she has been "involved in the art industry for

over thirty (30) years in various capacities including as an artist, art dealer and appraiser," she has been "actively involved in valuing property of the kind described in the appraisal for a period of approximately seventeen (17) years." (Declaration of Phillis Rogoff dated Feb. 20, 2014 ("Rogoff Decl."), ¶¶ 2, 3, 6).

Ms. Rogoff graduated from Cornell University with a Bachelor of Fine Arts, and obtained a Masters degree in Industrial Design from Syracuse University. (Expert Report at 162; Rogoff Decl., ¶ 6). She also took classes at the Rhode Island School of Design and completed "Certified Appraisal Studies Courses" from New York University.[1] (Expert Report at 162; Rogoff Decl., ¶ 6; Deposition of Phillis Rogoff dated Sept. 26, 2013 ("Rogoff Dep."), attached as Exh. 4 to Def. Memo., at 6-7). Ms. Rogoff "subscribe[s] to the Code of Ethics of the Appraisers Association of America and the Appraisers Society of America," and is an Associate Member of the Appraisers Association of America. (Expert Report at 3, 162; Pl. Memo. at 2; Rogoff Decl., ¶¶ 2, 6). She has also been "licensed and qualified through the Uniform Standards of Professional Appraisal Practices" ("USPAP"). (Expert Report at 162; Rogoff Decl., ¶ 6);

Ms. Rogoff has owned several art galleries during her career, is "well known in the art industry," and has "often [been] referred cases for various insurance carriers to appraise works." (Rogoff Decl., ¶¶ 8-9, 15). While she does not work full time valuing

---

[1] Ms. Rogoff's curriculum vitae does not provide the dates that she obtained these degrees and certificates.

artwork, she has performed "several hundred appraisals over the years," up to and including the assessment done for Oleg Cassini, and "continue[s] to read articles relevant to the appraisal industry." (Rogoff Decl., ¶¶ 11, 13-14). Though not apparent from the Expert Report, Ms. Rogoff has done appraisals "involving members in the fashion industry." (Pl. Memo. at 2; Rogoff Dep. at 24-25). Ms. Rogoff has not published any articles on art appraisal (Rogoff Dep. at 12), but was previously qualified as an expert to value artwork in a case in federal court in Alaska (Rogoff Dep. at 11-12; Rogoff Decl., ¶ 9).

   B.   The Expert Report

   The Expert Report provided to the defendant pursuant to Rule 26 of the Federal Rules of Civil Procedure is the same report prepared by Ms. Rogoff in 2010 prior to commencement of the litigation.   The report is 165 pages long; in addition to the affidavit, sworn certification, and curriculum vitae discussed above, it includes a roughly four-page "appraisal report;" one hundred and fifty pages of photographs of the damaged artwork, a brief "narrative analysis" of the artist, the artwork, and its evaluation; and a disclaimer provision.   (Expert Report at 2).

      1.   Findings

   Ms. Rogoff found that smoke, water, and subsequent exposure to air and mold damaged the artwork so severely that it rendered the "majority" of the pieces unsalvageable; after consulting with three "prominent conservators," she determined that "the cost to restore [the other] items to their original condition outweighs the value

4

of the item[s] [sic]." (Expert Report at 159-60).  The report does not appear to distinguish between the immediate damage caused by the fire and subsequent deterioration during the two years between the fire and Ms. Rogoff's evaluation of the artwork, but notes that measures which may have "lessen[ed] [the] damage" that occurs "over time" were not taken.  (Expert Report at 159).

The total value of the works at the time the appraisal was conducted was $233,360.00, representing "[what] would have been paid for such property by a willing buyer to a willing seller in an open market." (Expert Report at 3, 163).  The report breaks down the values of various items, but provides only minimal description of the pieces being evaluated.  (Expert Report at 5-8; Reply Memorandum in Support of Defendant's Motion in Limine to Preclude Expert Testimony of Phillis Rogoff ("Reply") at 2).  For example, the report identifies the following similar but apparently distinct paintings, some of which are characterized as "art" and others as "fashion creations" or "designs":

> 1.  A group of (16) sixteen original hand painted pieces of art by Oleg Cassini.  Each piece measures 22 ½" high x 14 ½" wide.  $13,600.
>
> . . .
>
> 12.  The items listed in this group were all designed and hand painted by Mr. Casinni [sic].  They are similar in subject as they are all fashion creations.
>     a) A group of (58) fifty-eight designs each measuring 22 ½" high x 14 ½" wide. $46,400.

(Expert Report at 5-6).  The collection, which the report groups into various similar categories, also includes original artwork and fashion sketches of varying sizes, room renderings, photographs of

celebrities, fabric designs, "fashion creations," furniture designs, "original sketches," "pieces created by Mr. Casinni [sic] in Italy," and "press books." (Expert Report at 5-8). None of the other pieces or categories are given any more descriptive detail than the examples provided.

While the report includes one hundred and fifty pages of photographs of the evaluated works (Expert Report at 9-158), the photographs are not labeled, nor are they correlated or indexed in any way to the numbered items in the appraisal report. Ms. Rogoff was unable to match the appraisal report descriptions to the photographs during her deposition. (Rogoff Dep. at 57-59, 62-63).

    2. <u>Methodology</u>

Ms. Rogoff described the methodology used to evaluate the artworks and arrive at their estimated value as follows:

> To establish a loss of value for Mr. Cassini's artwork due to exposure to fire, smoke, soot, water and mold several factors were considered. The notoriety and respect afforded the artist; the current retail price and the marketplace were all taken into account. For the purpose of this report the fashion centers of the world including New York City, Paris, London, and Los Angeles were the primary marketplaces, with the Internet considered as well.
>
> The comparative market data approach was used in establishing a value. The appraised property was compared to the same or similar items offered for sale at the time of the fire at the estate of the late Mr. Casinni [sic]. Both the Income and Cost Approaches were determined to be inappropriate. There is an active retail and secondary market for original designs of this quality and provenance. A blockage discount of 20% was applied since there was a large number of original designs, sketches, fabric repeats, photographs and other artwork.

(Expert Report at 161). Ms. Rogoff clarified in other sections of

the report that the fair market value was "the price that property
would sell for on the open market" as "agreed on between a willing
buyer and a willing seller, with neither being required to act, and
both having reasonable knowledge of the relevant facts" (Expert
Report at 164) (internal quotation marks omitted), and that
determination of this value was "based on comparable items of
property of similar kind, quality and condition as of the date of
[the] appraisal" (Expert Report at 3; Rogoff Decl., ¶ 4).

    During her deposition, defense counsel asked Ms. Rogoff to
expound on the methodology used to assign value to the Cassini
artwork:

> I decided to see what the sketches went for in the
> marketplace.  I knew what sketches by people who were not
> as noted as Mr. Cassini was were currently going for in
> the marketplace. . . . In the marketplace at the current
> time . . . the average person was being paid between 750
> and $1,000 per sketch.

(Rogoff Dep. at 45).   However, the Expert Report included no
information as to how Ms. Rogoff applied the comparative market
data approach to Mr. Cassini's works, including which artists or
sketches were used as comparators and whether the comparison pieces
were sold at auction or by private sale.   During her deposition,
Ms. Rogoff could not remember what sources or comparisons she had
used to assign value to the Cassini pieces (Rogoff Dep. at 55-57)
and testified that, in fact, there is not a "general market for the
type of sketches" at issue, and that she could not think of another
fashion designer "with [Mr. Cassini's] notoriety of his genre, of
his era" (Rogoff Dep. at 53-54).

    During Ms. Rogoff's deposition, defense counsel raised

concerns that he was unable to properly "explore [the] methodology" without the underlying documents supporting the comparative market analysis (the absence of which is discussed in greater detail below). (Rogoff Dep. at 29). Defense counsel made clear, however, that he was "not asking for a new report" but rather "for a reproduction of the file that comprised her work product when she did her work in October of 2010." (Rogoff Dep. at 30).

       3.  <u>Authenticity</u>

Ms. Rogoff asserted in her report that she personally examined the artwork "as well as photographs of the items" in question. (Expert Report at 3, 163). While the plaintiff argues that Ms. Rogoff conducted an "actual inspection of the items" (Pl. Memo. at 3), it became clear during her deposition that at least some of her assessments were conducted relying solely on photographs, without personal examination of items that had already been discarded. (Rogoff Dep. at 68-70, 96-98; Expert Report at 8). Furthermore, some of the photographs included in the report were not taken by Ms. Rogoff but rather by someone associated with the Cassini estate; Ms. Rogoff could not identify which photographs fell into this category. (Rogoff Dep. at 38, 97). Ms. Rogoff later stated that she "personally examined all available property as well as photographs of items damaged." (Rogoff Decl., ¶ 4).

Ms. Rogoff also relied on consultations with other experts to ascribe value to at least some of the items contained in the Expert Report, including the manuscript of Mr. Cassini's biography. (Rogoff Dep. at 65-66; Rogoff Decl., ¶ 20 (stating that she has

"contacts in all different industries in this area which allows
[her] to provide insight" on the value of the various sources and
art mediums at issue)).  The disclaimer included at the end of the
Expert Report notes that "[i]nformation furnished by others" --
including, presumably, the photos provided to her by the estate and
advice provided by other individuals -- "is assumed to be reliable,
but is not guaranteed by the appraiser." (Expert Report at 165).

Additionally, some measure of the artworks' value is
attributable to Ms. Rogoff's belief that many of the pieces were
signed by Oleg Cassini; she apparently made this determination, at
least in part, by analyzing the signatures on the artwork. (Rogoff
Dep. at 71-72, 83-84).  However, the Expert Report's disclaimer
expressly states that Ms. Rogoff made no guarantee of authenticity
or authorship of any of the items she evaluated, and she confirmed
this during her deposition. (Expert Report at 165; Rogoff Dep. at
81-82).

C.  <u>Production of the Report and Underlying Materials</u>

The plaintiff first provided Electrolux with a copy of the
report in late 2010, prior to filing the present action.  (Pl.
Memo. at 1, 4).  Ms. Rogoff was identified as an anticipated expert
witness in the initial Rule 26 disclosures provided in August 2011,
and a bates-stamped copy of her report was given to the defendant
in August 2012. (Pl. Memo. at 4).  On July 15, 2013, the plaintiff
"formally identified" Ms. Rogoff as an expert witness pertaining to
damages to the artwork, and a copy of her October 22, 2010 Expert
Report was disclosed at that time pursuant to Rule 26.  (Def. Memo.

at 1; Pl. Memo. at 4).

The defendants noticed Ms. Rogoff's deposition on September 3, 2013, and asked that she:

> bring all documents reviewed in preparation for the deposition and which were used to refresh the deponent's recollection including, but not limited to, her entire file on this litigated matter; all documents, photographs, videos, standards, notes and data she reviewed and/or relied upon in forming her opinions; all research materials, articles and other written materials reviewed in the formation of her opinions; photographs and literature for all exemplar or comparable works she examined in the course of her evaluation; all documentation of testing performed in the development of her opinions; all notes and drawings made during the development of her opinions; and all billing documents relating to this litigation.

(Expert Deposition Notice dated Sept. 3, 2013, attached as Exh. E to Declaration of Nicholas A. Vytell dated Feb. 21, 2014). Ms. Rogoff relied only on the Expert Report to prepare for the deposition and was unable to bring any of the underlying materials requested by the defendant because all of the "supporting data" she used to conduct her examination and compile the report had been destroyed by flooding after Hurricane Sandy. (Rogoff Decl., ¶ 16; Rogoff Dep. at 12-14, 16-20; Def. Memo. at 3; Pl. Memo. at 4-5). While Ms. Rogoff indicated that digital recovery of her research was unsuccessful (Rogoff Decl., ¶ 16), she stated that she could replace or recreate the original research (Rogoff Dep. at 13, 17), and appears to have provided this recreated "back up research" to the defendant as of February 2014 (Rogoff Decl., ¶ 17; Pl. Memo. at 5).

Legal Standard

Under Rule 702 of the Federal Rules of Evidence, "a witness

10

who is qualified as an expert by knowledge, skill, experience, training, or education" may testify regarding an area of specialized knowledge provided that it "will help the trier of fact to understand the evidence or to determine a fact in issue" and that (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; see also Amorgianos v. National Railroad Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002); Davis v. Carroll, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013).

"[T]he trial judge [has] the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). Performing the role as "gatekeeper" of expert testimony requires the court to conduct a "rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." Amorgianos, 303 F.3d at 259, 267. This gatekeeping role applies "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). However, in such cases "'the reliability inquiry may instead focus upon personal knowledge and experience of the expert.'" Davis, 937 F. Supp. 2d at 412 (quoting Bah v. Nordson Corp., No. 00 Civ. 9060,

2005 WL 1813023, at *7 (S.D.N.Y. Aug. 1, 2005)).

The proponent of expert testimony must establish its reliability and admissibility under this rule by a preponderance of the evidence. United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007). There is a presumption of admissibility of expert evidence, Borawick v. Shay, 68 F.3d 597, 610 (2d Cir. 1995), and "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note; accord Floyd v. City of New York, 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012). However, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos, 303 F.3d at 266.

Discussion

    A.  Ms. Rogoff's Qualifications

Under Daubert and Rule 702 of the Federal Rules of Evidence, the first step in determining the admissibility of expert testimony is determining "whether the expert is qualified to testify." Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009) (citing Zaremba v. General Motors Corp., 360 F.3d 355, 360 (2d Cir. 2004)). "In assessing whether a witness can testify as an expert, courts have liberally construed the expert qualification requirement" and considered both "practical experience and educational background as criteria for qualification" in determining whether "the expert's knowledge of the subject is such that [her] opinion will likely assist the trier

of fact in arriving at the truth." <u>Johnson & Johnson Vision Care,</u> <u>Inc. v. CIBA Vision Corp.</u>, No. 04 Civ. 7369, 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006) (internal citations and quotation marks omitted).

Electrolux claims that Ms. Rogoff is not qualified to serve as an expert witness in the appraisal and evaluation of drawings because she has not maintained an active career doing appraisals. (Def. Memo. at 6).  To support this argument, the defendant notes that Ms. Rogoff does not have a website for her appraisal business, does not advertise, and spends some of her time working at a veterinary clinic.  (Def. Memo. at 6).  This "evidence" is unpersuasive.

Under the standard outlined above, the plaintiff has met its burden in establishing that Ms. Rogoff is qualified to testify as to the value of Mr. Cassini's artwork and sketches.  Ms. Rogoff has had significant training in relevant fields, including her university and graduate degrees and USPAP license.  She is an active member in a professional association, the Appraisers Association of America, and has been involved "in valuing property of the kind described in this appraisal" for the past several decades (Expert Report at 3-4, 162-63), significant experience that is not negated by the lack of an internet presence or the part-time status of her current appraisal practice (Rogoff Decl., ¶¶ 11, 13-14).[2]   Furthermore, Ms. Rogoff testified that she has done

_____

[2]  To the extent the defendant questions Ms. Rogoff's current active engagement in art appraisal, that would go to the weight of her testimony rather than its admissibility.  <u>See, e.g.,</u> <u>Valentin</u>

appraisals "involving members in the fashion industry," experience directly relevant to her anticipated testimony in this case. (Pl. Memo. at 2; Rogoff Dep. at 24-25). The combination of Ms. Rogoff's educational and professional background and her experience conducting appraisals is sufficient to qualify her as an expert in this case. See Davis, 937 F. Supp. 2d at 414; Estate of Mitchell v. Comissioner of Internal Revenue, 101 T.C.M. 1435, at *12-13 (T.C. 2011) (qualifying experts who were members of the American Society of Appraisers, USPAP certified, and had experience valuing American artwork).

   B. Reliability of the Comparative Market Approach

   To be admissible, expert testimony must be deemed "the product of reliable principles and methods" which have been "reliably applied . . . to the facts of the case." Fed. R. Evid. 702; accord Amorgianos, 303 F.3d at 265. The factors typically considered to assess whether testimony is the product of reliable principles or methods include: (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation; and (4) whether a particular technique or theory has gained general acceptance in the

_____

v. New York City, No. 94 CV 3911, 1997 WL 33323099, at *15 (E.D.N.Y. Sept. 9, 1997) ("[W]hile the threshold issue of whether a particular witness qualifies as an expert is one for the judge to determine, it is for the jury to decide what weight should be given to that testimony. Thus, any challenges to an expert's skill, knowledge or credibility go to the weight, not the admissibility of the testimony." (citations omitted)).

relevant scientific community. <u>Amorgianos</u>, 303 F.3d at 266 (internal citations and quotation marks omitted). However, the reliability inquiry is "fluid and will necessarily vary from case to case." <u>Lynch v. Trek Bicycle Corp.</u>, 374 F. App'x 204, 206 (2d Cir. 2010) (internal quotation marks omitted).

While the defendant argues that "it is not possible to determine the reliability of [Ms.] Rogoff's proffered opinions" and that it is "not possible to test [those] opinions" (Def. Memo. at 9), the focus of its motion is on the application of the appraisal method to the facts of this case, rather than the method itself. The defendants do not appear to challenge the comparative market approach allegedly used by Ms. Rogoff, a technique that has been accepted by other courts in art appraisal cases. <u>See</u> <u>Davis</u>, 937 F. Supp. 2d at 415 ("Appraisers . . . rely upon compliance with [ASA and USPAP] standards, among others, to produce expert art appraisal opinions that reflect accepted professional wisdom and methodological rigor. . . . Whether understood as a scientific method under <u>Daubert</u> or as a form of specialized knowledge under <u>Kumho Tire</u>, art appraisal pursuant to these established methodologies might be admissible in federal court under Rule 702."); <u>see also</u> <u>Joseph P. Carroll Ltd. v. Baker</u>, 889 F. Supp. 2d 593, 600-01 (S.D.N.Y. 2012) (describing the market comparison approach); <u>Estate of Mitchell</u>, 101 T.C.M. 1435, at *13-14 (conducting detailed analysis of comparable paintings used by proposed art appraisal experts under comparative market approach).

15

C.   Relevance of Expert Testimony

Electrolux argues that Ms. Rogoff's testimony will not assist the trier of fact because of the lack of supporting facts and data. (Def. Memo. at 9).   However, as noted by the plaintiff, that inquiry relates "primarily to relevance." Daubert, 509 U.S. at 591.  The defendant does not challenge that the artwork's appraisal would be directly relevant to the calculation of damages allegedly resulting from the fire, and that the assistance of an expert may be required to assess its value.   Objections regarding the usefulness of Ms. Rogoff's testimony and allegedly deficient Expert Report are better addressed as an issue of reliable application of accepted methodologies to the facts of this case.

D.   Application of the Methodology

Under Rule 702 of the Federal Rules of Evidence, expert testimony must be "grounded on sufficient facts or data that 'is the product of reliable principles and methods.'" Arista Records, 608 F. Supp. 2d at 422 (quoting Fed. R. Evid. 702).   As noted above, the court must conduct a "rigorous examination of the facts on which the expert relies . . . and how the expert applies the facts and methods to the case at hand." Amorgianos, 303 F.3d at 267.  "The grounds for the expert's opinion merely have to be good, they do not have to be perfect." Graham v. Playtex Products, Inc., 993 F. Supp. 127, 133 (N.D.N.Y. 1998) (internal quotation marks omitted).   Indeed, experts "need not prove beyond a reasonable doubt that their conclusions are correct; they need only establish that they have reasonably applied reliable methods to sufficient

16

facts." <u>Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.</u>, 769 F. Supp. 2d 269, 287-88 (S.D.N.Y. 2011).

In this case, the plaintiff has failed to provide sufficient information to enable the Court to conduct such a rigorous examination.[3] First, the plaintiff has not shown that Ms. Rogoff's expert testimony is based on sufficient facts and data.  She apparently appraised some items that she did not view in person and others, such as the manuscripts and press books, that seemed to be beyond her area of expertise and required consultation with other individuals.  (Rogoff Dep. at 66, 68-69, 96-97).  Additionally, the report does not contain any references to the sources and materials that Ms. Rogoff relied upon in assessing the artwork, nor do her deposition or declaration provide any such comparative data.

More problematically, I have no way of assessing whether Ms. Rogoff's application of the comparative market data approach to those facts was reliable.  The Expert Report includes photos of the destroyed artwork and the values assigned to those works, but lacks any "actual calculations with detailed and complete information elucidating how the expert arrived at the damage figure." <u>Great White Bear, LLC v. Mervyns, LLC</u>, No. 06 Civ. 13358, 2008 WL 2220662, at *4 (S.D.N.Y. May 2, 2008) (excluding report for failure to show "how" and "why" expert arrived at conclusions).  Indeed, the report contains only two terse paragraphs explaining what the

---

[3]  The plaintiff notes that the defendant "has not designated any expert witness to refute the[] values" established by Ms. Rogoff.  (Pl. Memo. at 1).  The defendant does not bear any burden to do so.

market comparison approach is, and fails to explain how Ms. Rogoff applied that approach to the nature and quality of the works she viewed in order to arrive at the dollar values she assigned to each piece.    The report fails to provide sufficient information regarding how Ms. Rogoff compared Mr. Cassini's sketches to other similar works in order to ascertain their value -- whether she looked at auctions or private sales, when comparable sales occurred, and what factors were considered in selecting the comparable works and how those factors were weighed.  See, e.g., Davis, 937 F. Supp. 2d at 417 (rejecting expert testimony that failed to explain how "the full set of [appraisal] factors . . . interact or how much weight each factor is assigned in [the damages] calculus"); Joseph P. Carroll Ltd., 889 F. Supp. 2d at 600 ("In selecting artwork sales for comparison purposes, the [USPAP] provides that an appraiser should use auction sales only, if possible, and consider sales that are as close to the effective date . . . as possible."); Estate of Mitchell, 101 T.C. M. 1435, at *12 ("Experts consider several different criteria in valuing art that are not typically used in general property valuations. These include thematic appeal, period of work, style, overall quality, provenance, condition of artwork and market conditions.").  And while Ms. Rogoff made passing reference to industry appraisal standards, she did not provide any insight into how she applied those standards in this case.

Despite the presumption of admissibility, the plaintiff has failed to establish that Ms. Rogoff's expert testimony and report

18

are reliable under Rule 702 of the Federal Rules of Evidence and
the standards set forth in Daubert and Kumho Tire.[4]

_____

[4] Electrolux alleges that Oleg Cassini did not meet its
obligations under Rule 26 to provide an expert report with "a
complete statement of all opinions the witness will express and the
basis and reasons for them" and "the facts or data considered by
the witness in forming [her opinions]." Fed. R. Civ. P.
26(a)(2)(B); (Def. Memo. at 8).  Oleg Cassini counters that
Electrolux failed to timely object to the report's sufficiency and
that, in any event, it supplemented the report with additional
background information in February 2014 pursuant to Rule 26(e).
(Pl. Memo. at 5, 7-9).

If an expert fails to disclose information as required by Rule
26, it may be excluded at trial unless the failure to disclose "was
substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).
Electrolux did not seek to preclude the Expert Report under Rule
37(c), however, until the end of its reply memorandum.  (Reply at
4-5).  While the Expert Report clearly falls below the standards
contemplated in Rule 26, see Jinghong Song v. Yao Brothers Group
LP, No. 10 Civ. 4157, 2012 WL 1557372, at *1-2 (S.D.N.Y. May 2,
2012) (rejecting expert report that failed to "adequately identify
the 'facts or data' considered by the witness in forming his
opinions"); Loyd v. United States, No. 08 Civ. 9016, 2011 WL
1327043, at *2 n.4 (S.D.N.Y. March 31, 2011) (precluding expert
witness where written report failed to provide "the basis for [the
expert's] opinion" and "the data considered by [the expert] in
forming his opinion"); Great White Bear, LLC, 2008 WL 2220662, at
*3 (expert report must disclose "complete information elucidating
how the expert arrived at the damage figure"); Ferriso v. Conway
Organization, No. 93 Civ. 7962, 1995 WL 580197, at *2 (S.D.N.Y.
Oct. 3, 1995) (giving significant weight to "the formal
requirements of Rule 26" written expert reports), preclusion is a
"harsh sanction" and is not necessarily the appropriate remedy for
failure to meet the Rule 26 requirements.  Sandata Technologies,
Inc. v. Infocrossing, Inc., Nos. 05 Civ. 9546, 06 Civ. 1896, 2007
WL 4157163, at *7 (S.D.N.Y. Nov. 16, 2007); see also Softel, Inc.
v. Dragon Medical & Scientific Communications, Inc., 118 F.3d 995,
961 (2d Cir. 1997).

In any event, because the plaintiff has not provided the
Court, as gatekeeper, with the information necessary to gauge the
reliability of the expert's opinion, it has failed to meet its
burden of demonstrating admissibility under Rule 702 and Kumho
Tire, and I need not consider whether a violation of Rule
26(a)(2)(B) would also preclude admission of Ms. Rogoff's testimony
and report.

Conclusion

      For the reasons discussed, the plaintiff's motion in limine to exclude the testimony of Phillis Rogoff (Docket no. 62) is granted.

               SO ORDERED.

               JAMES C. FRANCIS IV
               UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
      April 15, 2014

Copies mailed this date:

Timothy Boyd Parlin, Esq.
Nicholas A. Vytell, Esq.
Carroll, McNulty & Kull L.L.C.
120 Mountain View Boulevard
Basking Ridge, NJ 07920

Christopher P. Kelly, Esq.
Reppert Kelly & Satriale, LLC
120 Mountain View Boulevard
Basking Ridge, NJ 07920

John P. Freedenberg, Esq.
Goldberg Segella LLP
665 Main Street, Suite 400
Buffalo, New York 14203

Marianne Arcieri, Esq.
Goldberg Segalla LLP
11 Martine Avenue, Suite 750
White Plains, NY 16060